UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA - TAMPA DIVISION

CASE NO. 8:22-cv-00581-WFJ-AEP

HOLLY J. FRAZETTA, HEIDI L. FRAZETTA, and FRAZETTA PROPERTIES, LLC,

    *Plaintiffs,*

v.

VANGUARD PRODUCTIONS, LLC and JESSE DAVID SPURLOCK,

    *Defendants.*

_____/

# DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT WITH MEMORANDUM OF LAW

Leigh M. Williams, Esq.
1701 W. Kansas Ave.
Midland, TX 79701
E-mail: mcmillan.esq@gmail.com
Tel. No.: 210 209-3030
*Attorney for J. David Spurlock and Vanguard Productions, LLC*

## TABLE OF CONTENTS        Page

I. INTRODUCTION - DEFENDANTS' BACKGROUND ………………………… 1

II. PROCEDURAL HISTORY…………………………………………………… 3

III. STATEMENT OF UNDISPUTED FACTS…………………………………… 4

IV. LEGAL STANDARD ON SUMMARY JUDGMENT ………………………… 4

V. *FRAZETTA BOOK COVER ART – THE DEFINITIVE REFERENCE* …………… 5

VI. COPYRIGHT INFRINGEMENT CLAIMS …………………………………… 6

    A. ESTABLISHING COPYRIGHT INFRINGEMENT …………………… 6

    B. PLAINTIFFS' INFRINGEMENT CLAIMS ………………………………. 7

        i. DIRECT COPYRIGHT INFRINGEMENT ………………………… 7

        ii. SECONDARY LIABILITY FOR INFRINGEMENT………………… 7

    C. FAIR USE DEFENSE ………………………………………………… 8

        i. FAIR USE ON SUMMARY JUDGMENT ………………………… 9

        ii. ANALYSIS OF THE "FAIR USE" FACTORS …………………… 10

            a. FACTOR 1: PURPOSE AND CHARACTER …………………… 11

            B. FACTOR 2: NATURE OF PLAINTIFF'S WORK ……………. 13

            C. FACTOR 3: AMOUNT AND SUBSTANTIALITY USED ……… 14

            D. FACTOR 4: EFFECT ON POTENTIAL MARKET VALUE …… 15

        iii. CONSIDERATION OF ALL FAIR USE FACTORS ……………… 16

VII. CONCLUSION ……………………………………………………………… 18

## I. INTRODUCTION – DEFENDANTS' BACKGROUND

1. Plaintiffs' verified complaint, identifying VANGUARD PRODUCTIONS, LLC ("VANGUARD") as a "vanity publisher," is a gross misstatement that reflects poorly on Plaintiffs' knowledge of the art and illustration publishing world in which Frank Frazetta and VANGUARD are so well-known.

2. VANGUARD is an award-winning publisher of fifty-plus books, including numerous biographies of artists and illustrators whose work in graphic novels, comics, and book illustration made a tremendous impact. Seven of VANGUARD titles focus on the art of Frank Frazetta, as a painter in the fantasy genre, for which he is best known, as well as other phases of his career as artist and illustrator of comics, books, feature-length films, television programs, magazine covers, and movie posters.

3. VANGUARD's titles have been awarded honors such as the Rondo Awards, The New York Times, IPPY Awards, Entertainment Weekly, Eisner Awards, the Hugo Awards, Locus Awards, The Society of Illustrators, and other professional industry and media associations including National Public Radio, Time Out New York, Library Journal, Publishers Weekly, The Village Voice (*The Alluring Art of Margaret Brundage* was named in their "Best of 2013"), MTV, and ERBzine.com.

4. MR. SPURLOCK, VANGUARD's sole member, has an acclaimed fifty-plus year career as an award-winning publisher and author of VANGUARD's titles as well as Random House's *How to Draw Chiller Monsters,* a top selling book. He is an associate to artists and illustrators including Basil Gogos, Neal Adams, Steranko, and Joe Kubert; and serves as Director of the Wallace Wood Estate.

5. MR. SPURLOCK, an art historian as well as a professional graphic artist, taught full-time as well as an adjunct professor at the University of Texas Arlington and Brookhaven College, and at famed art schools The School of Visual Arts and The Kubert School.

6. MR. SPURLOCK is a frequent guest speaker and panelist at conventions, including the 2013 WorldCon panels on Robert E. Howard, copyright law, and Margaret Brundage; hosted with Stan Lee for Dragon Con TV; *The Famous Monsters of Filmland* magazine re-launch at Indianapolis Comic Con; the 2010 and 2011 San Diego Comic-Con tributes to Frank Frazetta; Canada's *Where Monsters Dwell* radio show; and as Guest Curator of Geppi Entertainment Museum's (GEM) 2010 Steranko exhibit, and contributor and consultant to Allentown Art Museum's 2012 exhibition *At The Edge: Art of the Fantastic*.

7. MR. SPURLOCK's film credits include *Frazetta: Painting With Fire*; STARZ network's *Comic-books Unbound*; BBC Five's 2005 documentary *The Batman Story*; directed BBC-star Jonathan Ross' interview of Jim Steranko; served as consultant on Morgan Spurlock's documentary *Comic Con Episode Four: A Fan's Hope*; on-screen commentary for a 2013 Daredevil documentary; on-camera expert commentary for FOX Business network's *Strange Inheritance* program featuring Frank Frazetta's art; co-produced *Irwin Hasen: The Movie;* and was a consultant and on-camera personality for PBS' documentary *Superheroes: A Never-Ending Battle.*

8. MR. SPURLOCK, longtime friend and colleague of the late Frank Frazetta, is an expert on Frazetta's life, work, and career, and has served as an expert witness in litigation, consultant, and appraiser of Frazetta's art.

## II.   PROCEDURAL HISTORY

9. Plaintiffs filed suit on March 13, 2022, alleging copyright infringement under the United States Copyright Act of 1976, 17 U.S.C. § 101, et seq., arising from Defendants' "*Frazetta Book Cover Art - Definitive Reference*" (the "Book"), a reference work focusing on paintings for which Frazetta was commissioned by publishers for use as cover art, and illustrations for inclusion on novel's interior pages.

10. Plaintiffs allege copyright ownership of two original Frazetta paintings, entitled "*Death Dealer II*" and "*Death Dealer V,* which were used as cover art for two of the book cover images reproduced in the Book. Plaintiffs allege that Defendants were required to either obtain their permission or pay them a licensing fee, but did not do so, in violation of Plaintiffs' rights under 17 U.S.C. § 106, entitling Plaintiffs to statutory damages as provided under 17 U.S.C. § 504(c).

11. VANGUARD filed their Answer [DE 14] on May 12, 2022, affirmatively defending that the use is *de minimis*, is protected fair use under 17 U.S.C. § 107, and as an innocent infringer acting in good faith under 17 U.S.C. § 504(c)(2).

12. MR. SPURLOCK filed his Answer [DE 15] on May 12, 2022, alleging the same affirmative defenses.

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
*Case No. 8:22-cv-00581-WFJ-AEP*

### III. STATEMENT OF UNDISPUTED FACTS

13. Defendants' *"Frazetta Book Cover Art - Definitive Reference"* includes images of two book covers published in the 1990's which featured artwork by Frank Frazetta, entitled *"Death Dealer II"* and *"Death Dealer V,"* as cover art.

14. Defendants reproduced two book cover images featuring Frazetta artwork without Plaintiffs' authorization or payment of compensation.

### IV. LEGAL STANDARD ON SUMMARY JUDGMENT

15. Summary judgment is appropriate "if the pleadings, the discovery and disclosure material on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

16. A party seeking summary judgment must identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

17. After the moving party has met its initial burden, the adverse party must identify specific facts in the record showing a genuine issue exists for trial. Fed. R. Civ. P. 56(e). The non-moving party cannot rest on "mere allegations or denials" in its responsive pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). No issue for trial exists unless the non-moving party can demonstrate the existence of specific, affirmative evidence in the record such that a reasonable jury could return a verdict in its favor. *Anderson*, 477 U.S. at 249.

18. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

19. Summary judgment is appropriate if the non-moving party fails to make a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 324; see also, *Anderson*, 477 U.S. at 249-50 ("Summary judgment may be granted if the evidence presented by the non-movant is merely colorable or is not significantly probative of the issues."). A "mere scintilla" of evidence is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 252.

V. **FRAZETTA BOOK COVER ART – DEFINITIVE REFERENCE**

20. The Book is a 168-page biographical reference work divided into six chapters and arranged in chronological order representing the phases of Frank Frazetta's thirty-year career (1962 through 1991) as an illustrator and artist. (Ex. 1).

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
*Case No. 8:22-cv-00581-WFJ-AEP*

21. The Book contains 186 color images of book covers featuring cropped versions of the much larger paintings Frazetta created for the publisher's use as cover art. Each image is arranged in a layout displaying the cover for the hardback edition (and paperback edition if it featured the same art), on a background enhanced by subtle graphics and accompanied by a caption identifying the book's title, publisher, author, editor, publication date, title of the Frazetta painting, and designation of any Frazetta illustration included in the book.

22. The Book, including endpapers and covers, comprises approximately 16,000 square inches of text, graphics, and images. The two Frank Frazetta cover art images used comprise a total of 85 square inches, or approximately one half of one percent (0.53%) of the Book. The two book cover images for which Plaintiffs claim copyright infringement comprise 1.2% of the 186 book cover images reproduced.

## VI.   COPYRIGHT INFRINGEMENT CLAIMS

### A.   Establishing Copyright Infringement

23. To establish a claim of copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) [unauthorized] copying of constituent elements of the work that are original." *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995); and see, *Dun & Bradstreet Software Servs., Inc v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) ("To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.").

### B.  Plaintiffs' Infringement Claims

#### i.  Direct Copyright Infringement

24.  Plaintiffs' allegation of copyright infringement requires proof of (i) ownership of a valid copyright and (ii) a violation of an exclusive right provided in 17 U.S.C. § 106. See, *Arista Records LLC v. Lime Group LLC*, 784 F.Supp.2d 398, 423 (SDNY 2011) (citing *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005).

#### ii.  Secondary Liability for Infringement

25.  Liability for contributory infringement is not codified under 17 U.S.C. § 101, et seq., but is recognized under common law principles. See, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 US 913, 942 (2005).

26.  The Supreme Court, in deciding *Grokster,* recognized the impossibility of a copyright owner's suing every individual who downloaded songs using defendant's software and internet program, necessitating the recognition of a "theory of contributory or vicarious infringement" as the "only practical alternative" against a distributor of a copying device used by the public. *Id.,* at 929-30 (citing, *In Re Aimster Copyright Litig.*, 334 F.3d 643, 645-646 (7th Cir. 2003) (Finding it impracticable as well as futile to require a copyright owner sue every individual comprising the multitude of infringers who used Aimster's internet program and software to download and share copyrighted material, recognizing a theory of secondary liability against a distributor of a device primarily used by others to infringe protected material).

27. Establishment of liability requires proof that a defendant engaged "in personal conduct that encourages or assists the infringement." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971); and see, *Grokster,* 545 US at 942 (Proof of secondary liability may consist of evidence that a defendant (i) performed specific acts or (ii) distributed a product, used by others to infringe copyrights, that is not capable of "substantial" or "commercially significant" non-infringing uses) (citing, *Gershwin,* at 1162).

28. A claim for contributory or inducing infringement requires a showing that a defendant acted to encourage others to infringe, i.e., (i) advertising an infringing use, (ii) providing instructions for engaging in an infringing use, (iii) an affirmative intent to distribute a product to be used to infringe, or (iv) encouraging others to infringe. *Grokster*, at 936 (Secondary liability will not lie where defendant merely sold a commercial product suitable for some lawful use).

29. A cause of action alleging vicarious liability requires evidence that defendant (i) vicariously profited from another's direct copyright infringement of Plaintiffs' protected material and (ii) declined to exercise a right to stop or limit it. See, *Grokster,* at 931 (citation omitted).

  C. **Fair Use Defense**

30. Recognition of the fair use affirmative defense existed prior to its codification in the Copyright Act of 1976, as "some opportunity for fair use of

copyrighted materials has been thought necessary to fulfill copyright's very purpose, '[t]o promote the Progress of Science and useful Arts ....'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const. art. I, § 8); and see, *Castle Rock Entm't, Inc. v. Carol Publ'g Group,* 150 F.3d 132, 141 (2d Cir. 1998) (Ultimate test of fair use is whether "copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing the use than by preventing it.").

31. Fair use is determined in a case-by-case analysis, where the factors are "explored, and the results weighed together, in light of the purposes of copyright." *Acuff-Rose Music*, 510 U.S. at 577, 578; and see, *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,* 342 F.3d 191, 197, 198 (3d Cir. 2003) (Four factors in § 107 not considered in isolation but on the copyright's purpose and encouragement of transformative creativity; where copier uses none of his own creative activity to transform the original work, fair use defense will not apply. *Video Pipeline*, 342 F.3d at 197, 198.

    **i. Fair Use on Summary Judgment**

32. Where there are no genuine issues of material fact as to the issue of fair use, the court may resolve the affirmative defense of fair use at the summary judgment stage. *Bill Graham Archives v. Darling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006).

33. Ample case law demonstrates that determination of Defendants' fair use defense concerning the use of two images in a reference book may be determined under summary judgment, as the material facts are undisputed, and the entire contents of the Book have been disclosed. See, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.

3d 605 (2d Cir. 2006) (Affirming summary judgment finding fair use concerning biographical work whose use of protected material was held to be transformative).

34. In *Archives,* Bill Graham Archives ("BGA") sued Dorling Kindersley ("DK") for publishing a 480-page coffee table book on the history of the rock band Grateful Dead, entitled *"Grateful Dead: The Illustrated Trip"* ("*Illustrated Trip*"), alleging infringement of seven copyrighted images used without BGA's permission. *Id.,* at 607.

35. The district court granted summary judgment in DK's favor, finding fair use, BGA appealed, and the Second Circuit affirmed the trial court's decision. *Id.*

### ii. Analysis of the "Fair Use" Factors

36. The Second Circuit analyzed the defense of "fair use" to copyright infringement, which permits unauthorized use or reproduction of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching … scholarship, or research." *Id.,* at 608, citing 17 U.S.C. § 107.

37. The four factors are:

    (1) the purpose and character of the use
    (2) the nature of the copyrighted work
    (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
    (4) the effect of the use upon the potential market for, or value of, the copyrighted work

*Bill Graham Archives,* 448 F. 3d at 608 (citing 17 U.S.C. § 107)

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
Case No. 8:22-cv-00581-WFJ-AEP

38. Analysis of fair use "involves a case-by-case determination using four non-exclusive, statutorily provided factors in light of the purposes of copyright." *Id.,* at 608 (quoting *Harper & Row, Pub., Inc. v. Nation Enters.*, 471 U.S. 539, 549 (1985).

### a.  Factor 1: Purpose and Character

39. Most important to the analysis of the first factor is the "transformative" nature of the work, i.e., "whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.,* at 608 (quoting *Acuff-Rose Music*, 510 U.S. 569, 579).

40. Under the first factor, the court found "heavily in favor of DK," because *Illustrated Trip's* reproduction of seven of BGA's copyrighted original images of concert posters and tickets was used for the purpose of presenting a biographical work. *Archives,* 448 F.3d at 608-09. The Second Circuit noted that a typical page of the book, containing over 2000 images, "features a collage of images, text, and graphic art designed to simultaneously capture the eye and inform the reader." *Id.,* at 607.

41. "DK's use of images placed in chronological order on a timeline is transformatively different from the mere expressive use of images … as the works are displayed to commemorate historic events, arranged in a creative fashion, and displayed in significantly reduced form." *Id.* (Fair use protection routinely afforded to use of copyrighted material in biographical, historical, and scholarly works providing comments, criticism, and analysis, which require incorporation of original source

material for the subject's optimum treatment) (citing, inter alia, *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1374 (2d Cir. 1993) (Work commenting on a "pop culture" not removed from scope of Section 107 "simply because it is not erudite").

42. The court noted that DK's significant reduction of the size of the reproductions weighed in favor of DK under the first factor, as the small size, sufficient for readers to recognize the images' historical significance, was "inadequate to offer more than a glimpse of their expressive value," demonstrating that DK used the minimal size of the images necessary to accomplish the transformative purpose. *Archives,* at 611 (citing *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-20 (9th Cir. 2003) (Affirming summary judgment finding fair use; search engine's use of thumbnail-sized images large enough for users to recognize but too small to use for copyright infringement constituted "highly transformative" protected fair use).

43. Secondly, DK minimized the images' expressive value by displaying them at an angle and blended into a collage of textual material and original graphical artwork under a prominent timeline on each of the book's pages, resulting in a layout which employed the images "to enrich the presentation of the cultural history of the Grateful Dead, not to exploit copyrighted artwork for commercial gain." *Archives,* at 611 (citing, *Hofheinz v. A & E Television Networks, Inc.*, 146 F.Supp.2d 442, 446-47 (SDNY 2001) (Unauthorized inclusion of copyrighted film clips in actor Peter Graves' biographical program made for broadcast on A&E was a protected fair use because the biography, despite not having been made for a scholarly purpose, but as a

commercial television program, "was not shown to recreate the creative expression reposing in plaintiff's [copyrighted] film, [but] for the transformative purpose of enabling the viewer to understand the actor's modest beginnings in the film business.").

44. Thirdly, the use of BGA's seven images in *Illustrated Trip* constituted an inconsequential portion of the 2000-plus images reproduced, weighing in DK's favor, as the extent to which DK used the original material can be a factor in determining whether the use was sufficiently transformative to constitute fair use. *Id.,* at 611 (citing *Craft v. Kobler,* 667 F.Supp. 120, 129 (SDNY 1987) (Leval, J.), finding inclusion of unauthorized copyrighted material in a biography of Stravinsky did not constitute fair use because the takings were numerous and constituted the "liveliest and most entertaining part of the biography.").

45. Despite *Illustrated Trip's* publication was a commercial venture, monetary gain does not prohibit a finding of fair use because "nearly all of the illustrative uses listed in the preamble paragraph of § 107 … are generally conducted for profit …" *Archives,* at 612 (quoting *Acuff-Rose Music*, 510 U.S. at 584). Accordingly, courts focus on whether the purpose of the use was to exploit the copyrighted material without paying the customary price. *Archives,* at 612 (quoting *Harper*, 471 U.S. at 562).

    **b.   Factor 2:  Nature of Plaintiffs' Work**

46. The nature of the copyrighted work provided in 17 U.S.C. § 107(2) requires the court consider "the protection of the reasonable expectations of one who engages in the kinds of creation/authorship that the copyright seeks to encourage."

*Archives,* at 612 (quoting *Acuff-Rose Music*, 510 U.S. at 586 ("[C]reative expression for public dissemination falls within the core of the copyright's protective purposes.")). However, if "the creative work was being used for the same decorative purpose as the original," then there is no transformative purpose, and the fair use defense will not apply. See, *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70 (2d Cir. 1997).

47. When the creative work of art is found to have been used for a transformative purpose, the second factor is accorded a limited weight because it is of limited usefulness when the purpose of the use is to emphasize the images' historical rather than creative value, such as DK's, which constituted a "transformative purpose of enhancing the biographical information provided in *Illustrated Trip*." *Archives,* at 612-13 (quoting *Acuff-Rose Music*, 510 U.S. at 586).

### c. Factor 3: Amount and Substantiality Used

48. Determination of fair use also depends on the amount and substantiality of the portion of the copyrighted work reproduced in relation to the copyrighted work as a whole. *Archives,* at 613, citing 17 U.S.C. § 107(3), and quoting *Acuff-Rose Music*, 510 U.S. at 586 (Quantitative and qualitative aspects of the portion of the copyrighted material taken must be examined).

49. The Second Circuit cited to decisions recognizing that "copying the entirety of a work is sometimes necessary to make a fair use of the image," thus "the extent of permissible copying varies with the purpose and character of the use," finding this factor weighed in DK's favor because the images, although copied in their entirety,

were displayed in reduced size and scattered among many other images and texts and thus did not weigh against fair use." *Archives,* at 613, quoting *Acuff-Rose Music,* 510 U.S. at 586-87; and citing *Kelly*, 336 F.3d at 821 (Images used by search engine database were necessarily copied in their entirety for the purpose of recognition); and *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (Copying any less than the entire image would have made the picture useless to the story).

### d. Factor 4: Effect on Potential Market Value

50. Determination of the "effect of the use upon the potential market for, or value of, the copyrighted work" under 17 U.S.C. § 107(4) is made under a two-part inquiry: (i) the market harm caused by the infringement and (ii) whether widespread use of the protected material will adversely affect the potential market for that copyrighted work. *Archives,* at 614, citing *Harper*, 471 U.S. at 568; and *Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 929 (2d Cir. 1994) (Impact of unauthorized use on potential licensing revenues copyright holders are generally entitled to as compensation for licensing the use of the copyrighted work is a proper consideration when assessing the fourth factor).

51. It is not a foregone conclusion in all infringement cases that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use, because this would consistently result in the copyright holder's favor, completely negating the purpose of the fourth fair use factor. *Archives,* at 614 (citing *Texaco,* 60 F.3d at 930, n. 17).

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
Case No. 8:22-cv-00581-WFJ-AEP

52. The Second Circuit, weighing "the benefit the public will derive if the use is permitted" against "the personal gain the copyright owner will receive if the use is denied," found no harm to BGA's license market due to DK's use because no evidence showed that DK's use of the images impacted or impaired BGA's primary market, the sale of the poster images, because DK's reproduction in a smaller size did not serve as a substitute for or supersede the use of the copyrighted image. *Archives,* at 614.

53. Weighing all four factors together, the Second Circuit affirmed the finding that DK's use of BGA's images was transformative fair use and BGA suffered no harm to their primary market for poster sales. *Archives,* at 615.

### iii. Consideration of All Fair Use Factors

54. As to the first factor, the purpose of "*Frazetta Book Cover Art - Definitive Reference*" was a biographical retrospective of Frazetta's art commissioned for use on the covers of books. All 186 images are of the entire book covers, presented as historic artifacts in the context of book cover art, using cropped versions of the original Frazetta paintings. The images are all reproduced in a significantly smaller size than the original paintings.

55. The Book contains numerous pages of text and graphics, captions with descriptions, commentary, historical information, and quotes. The Book's purpose is clearly for use as a biographic and reference resource, and as such, the purpose clearly meets the criteria enumerated as the first fair use factor in 17 U.S.C. § 107.

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
*Case No. 8:22-cv-00581-WFJ-AEP*

56. The second factor weighs in Defendants' favor, as the reproduction of the book cover images was not used for the same decorative purpose as the original, but as historical artifacts constituting a transformative purpose. The second factor is accorded limited weight due to the Book's purpose and use of a cropped version of the original painting on book covers, emphasizing the original's historical rather than creative value.

57. The third factor also weighs in Defendants' favor, as the amount and substantiality of the originals used, two of Plaintiffs' alleged copyrighted Frazetta paintings, reproduced within the context of book cover images, comprise a total of 85 square inches of the Book's approximately 16,000 square inches of text, graphics, and images, including endpapers and covers, or approximately one half of one percent (0.53%) of the Book. Put another way, the entire two book cover images containing Frazetta's art comprise only 1.2% of the 186 book cover images reproduced.

58. The fourth factor, the effect on potential market value of sales of prints of Plaintiffs' images or licensing of images of the original, weighs in Defendants' favor, as Plaintiffs' potential market is not affected. The book covers do not serve as a substitute for sale of a poster-size print of the original, nor do the Book's images impair Plaintiffs' ability to license images of the originals for use on merchandise.

59. Weighed together, the Book meets the criteria of all four fair use factors, and Defendants' use of the portions of Plaintiffs' two allegedly copyrighted works is transformative, not copyright infringement.

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
*Case No. 8:22-cv-00581-WFJ-AEP*

## VII.  CONCLUSION

FOR THE FOREGOING REASONS, Defendants respectfully request this Honorable Court issue their Order granting summary judgment in Defendants' favor, finding Fair Use of the images in question, and awarding costs and attorney's fees, pursuant to 17 U.S.C. § 505 as the prevailing party.

DATED:  AUGUST 18, 2023

Respectfully submitted,

/s/:  *Leigh M. Williams*
_____
Leigh M. Williams, Esq.
1701 W. Kansas Ave.
Midland, TX 79701
E-mail: mcmillan.esq@gmail.com
Tel. No.: 210 209-3030
*Attorney for Vanguard Productions, LLC, and J. David Spurlock*