UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:22-cv-00581-WFJ-AEP

HOLLY J. FRAZETTA, HEIDI L. FRAZETTA, AND FRAZETTA PROPERTIES, LLC,

   *Plaintiffs,*

v.

VANGUARD PRODUCTIONS, LLC, AND JESSE DAVID SPURLOCK,

   *Defendants.*

_____/

## PLAINTIFFS FILE THIS PURSUANT TO FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS

Plaintiffs Frazetta Properties, LLC, Holly Frazetta and Heidi Frazetta file this Motion for Summary Judgment against Defendants Vanguard Productions, LLC and Jesse David Spurlock in accordance with FED. R. CIV. P. 56 and relevant case law.

### I.   STATEMENT OF FACTS

1. Defendants' Mr. Spurlock and Vanguard Productions, LLC have a long history of litigation with Mr. Frank Frazetta, Sr. ("Mr. Frazetta"), before he passed away, and Frazetta Properties, LLC.

2. Mr. Frazetta and Mr. Spurlock had a litigious relationship. They were engaged in litigation in New York that settled in 2010.

3. As part of the resolution, Defendant Spurlock was given the opportunity to publish a Sketchbook of Mr. Frazetta's works of art with royalties to be paid to Frazetta Properties, LLC.

4. Defendant Spurlock printed the first Sketchbook and Death Dealer II is in the book on page 74.

5. Defendant Spurlock printed Sketchbook II and Death Dealer V is in that book on page 64.

6. The interior table of contents page of both Sketchbook Vol I published in 2013 and Sketchbook Vol II published in 2014 that explicitly state "Individual works are copyright Frazetta Properties LLC unless otherwise noted." **See attached Exhibits 1 and 2**.

7. Although given the opportunity to print the Sketchbook, Defendant Spurlock had to make quarterly royalty Payments and provide quarterly reports in an agreement titled Frazetta 2-Book Publishing Agreement ("Agreement").

8. After only three sales reports were provided and a few checks for royalties sent, Frazetta Properties, LLC members demanded that Mr. Spurlock provide the sales information he was required to provide so they could conduct an audit.

9. Defendant Spurlock did not provide the information so an audit could be conducted, as explicitly provided for in the Agreement, and Frazetta Properties, LLC terminated the Agreement.

10. As a result of the termination, Defendant Spurlock and Defendant Vanguard Productions, LLC filed suit against Frazetta Properties, LLC in Sarasota County Circuit Court, Case Number 2019 CA 001718 NC.

11. The following facts are undisputed.

   A. Defendants included the Copyright registered and protected Death Dealer II and Death Dealer V.

   B. Defendants did not obtain permission from Frazetta Properties, LLC to use Death Dealer II and Death Dealer V in the book.

   C. Defendants could not have published the book without Death Dealer II and Death Dealer V them as its title *Frazetta Book Cover Art,* **Complete Collection***, Definitive Reference,* would have been false. (Emphasis added.)

## II.  MEMORANDUM OF LAW

12. Fed. R. Civ. P. 56 provides in relevant part as follows,

"(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

13. Plaintiffs move for Summary Judgment as to the Defendants Affirmative Defenses and Counts I, II, III, IV and V in the Complaint. The Defendants'

affirmative defenses are identical and are addressed hereinafter as though they had been explicitly jointly raised by the Defendants.

14. The first affirmative defense raised by Defendants is that Plaintiffs lack standing to bring the claim. That is false as the face of the Complaint lists the works infringed upon and the Copyright Registration Number for Death Dealer II and Death Dealer V. See attached Exhibits 3 and 4.

15. Defendants have produced nothing supporting the second affirmative defense for Failure to State a Claim. The registrations state that Frazetta Properties, LLC owns the copyrights registered with the Copyright Office.

16. The third affirmative defense is that the alleged infringement is de minimis. That is false. As noted in the above stated facts, the book title is *Frazetta Book Cover Art, Complete Collection, Definitive Reference*. If those two infringed works were included in the book, the book could not have been published. If Defendants had published the book without the two works Defendants infringed on, the book's title would have to be changed from . . . . Complete Collection . . . to something akin to . . . . Nearly Complete Collection . . . that demonstrates the two works are as important to the book's publication as all of Mr. Frazetta's works combined that are contained within the book.

17. The fourth affirmative defense is for failure to state a claim based on the contention the book had not been published yet. The book has been published two of

the three works listed in the Complaint are in the book. Death Dealer VI was not in the book.

18. The fifth affirmative defense is Fair Use. That is false and will be addressed hereinafter.

19. The sixth affirmative defense is for Invalid Copyright. Defendants assertion of invalid copyright lacks any factual support. Defendants have abandoned the defense because they could not establish factual support for it.

20. The seventh affirmative defense is good faith intent. That defense is false. Defendants knew they were infringing on those Copyright protected works. They have failed to provide any factual support for the defense.

21. The eighth affirmative defense alleges that Plaintiffs had no ownership interest in the works at issue when the lawsuit was filed, and it too is false. The registrations demonstrate that Frazetta Properties is the owner of the Copyright for each of the two infringed upon works.

22. In the case of <u>Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith</u>, 143 S. Ct. 1258 October 12, 2022, Argued; May 18, 2023, Decided. The Supreme Court affirmed the United States Court of Appeals for the Second Circuit holding that the Andy Warhol Foundation had infringed on Goldsmith's Copyright in the photograph.

23. The Court of Appeals for the [***21] Second Circuit reversed and remanded. 11 F. 4th 26, 54 (2021). It held that all four fair use factors favored

Goldsmith. The first factor, which is the purpose and character of the use, §107(1), the Court of Appeals rejected the notion that "any secondary work that adds a new aesthetic or new expression to its source material is necessarily transformative." *Id.*, at 38-39. The question was, instead, "whether the secondary work's use of its source material is in service of a fundamentally different and [*1272] new artistic purpose and character." *Id.*, at 42 (internal quotation marks omitted).

24. The Second Circuit held that "transformative purpose and character must, at bare minimum, comprise something more than the imposition of another artist's style on the primary work." *Ibid.* Here, however, "the overarching purpose and function of the two works at issue . . . is identical, not merely in the broad sense that they are created as works of visual art, but also in the narrow but essential sense that they are portraits of the same person." *Ibid.* (footnote omitted). The Court of Appeals also rejected the District Court's logic that "'each Prince Series work'" is transformative because it "'is immediately recognizable as a "Warhol,"'" which the Court of Appeals believed would [***22] "create a celebrity-plagiarist privilege." *Id.*, at 43; see also *ibid.* ("[T]he fact that Martin Scorsese's recent film *The Irishman* is recognizably 'a Scorsese' does not absolve him of the obligation to license the original book" (some internal quotation marks and alterations omitted)). Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 143 S. Ct. 1258, 1271-1272

25. Defendants in this case copied the works Death Dealer II and Death Dealer V. Defendants made no changes to the original works, but instead copied them in their entirety.

26. The Supreme Court was asked to review only the first fair use factor. "But the first fair use factor instead focuses on whether an allegedly infringing use has a further purpose or different character, which is a matter of degree, and the degree of difference must be weighed against other considerations, like commercialism. *Campbell* v. *Acuff-Rose Music, Inc.*, 510 U. S. 569, 579, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994). Although new expression may be relevant to whether a copying use has a sufficiently distinct purpose or character, it is not, without more, dispositive of the first factor." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 143 S. Ct. 1258, 1271

27. Defendants had published Death Dealer II and Death Dealer V before. Mr. Frazetta and Frazetta Properties, LLC had entered into an agreement for the use and Frazetta Properties, LLC was to receive payment from Defendant Spurlock based sales of the Sketchbook and Sketchbook II. Defendant Spurlock's alleged breach of that agreement and its resulting termination caused Defendant Spurlock to file suit in Sarasota County, Circuit Court.

28. The Supreme Court stated the fair use doctrine "set[s] forth general principles, the application of which requires judicial balancing, depending upon relevant circumstances." *Google LLC* v. *Oracle America, Inc.*, 593 U. S. ___, ___, 141 S.

Ct. 1183, 209 L. Ed. 2d 311 (2021) (slip op., at 14). Because those principles apply across a wide range of copyrightable material, from books to photographs to software, [***27] fair use is a "flexible" concept, and "its application may well vary depending on context." *Id.*, at ___, 141 S. Ct. 1183, 209 L. Ed. 2d 311 (slip op., at 15). For example, in applying the fair use provision, "copyright's protection may be stronger where the copyrighted material . . . serves an artistic rather than a utilitarian function." <u>Andy Warhol Found. for the Visual Arts, Inc. v. Golds</u>mith, 143 S. Ct. 1258, 1272.

29.  The Supreme Court considered the "purposes" listed in the preamble paragraph of §107: "criticism, comment, news reporting, teaching [***28] . . ., scholarship, or research." Although the examples given are "'illustrative and not limitative,'" they reflect "the sorts of copying that courts and Congress most commonly ha[ve] found to be fair uses," and so may guide the first factor inquiry. *Campbell*, 510 U. S., at 577-578, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (quoting §101). As the Court of Appeals observed, the "examples are easily understood," as they contemplate the use of an original work to "serv[e] a manifestly different purpose from the [work] itself." 11 F. 4th, at 37. <u>Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith</u>, 143 S. Ct. 1258, 1274 (2023).

30.  The Defendants infringed on the Plaintiffs' rights for commercial reasons. The book was not created for criticism, comment, news reporting, teaching, scholarship, or research but to enrich the Defendants.

31. The Supreme Court recognized the word transformative could be misused. In its decision, the Court wrote that ". . . an overbroad concept of transformative use, one that includes any further purpose, or any different character, would narrow the copyright owner's exclusive right to create derivative works. To preserve that right, the degree of transformation required to make "transformative" [**495] use of an original must go beyond that required to qualify as a derivative." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 143 S. Ct. 1258, 1275 (2023).

32. The Supreme Court further analyzed the first fair use factor by considering "whether the use of a copyrighted work has a further purpose or different character, which is a matter of degree, and the degree of difference must be balanced against the commercial nature of the use. If an original [**497] work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification [***34] for copying." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 143 S. Ct. 1258, 1277 (2023).

33. Defendants motivation for including the two protected works was solely for commercial gain. Without adding those works, they could not have published the book. When considering their value, those two were as valuable as the combined value of every other work in the infringing book, because the book could not have been published without them.

34. Defendants chose not to seek agreement from Plaintiffs, but instead to push forward and hope their actions would be rewarded without seeking permission and agreement from Plaintiffs and perhaps as a way to punish the Plaintiffs for terminating the Agreement that is the reason they filed suit in the Circuit Court of Sarasota County, Florida.

35. Defendants failed to demonstrate their use of the Copyright Act protected Death Dealer II and Death Dealer V was fair use and their arguments to contrary are disingenuous.

### III.  SUMMARY AND REQUEST FOR RELIEF

36. Defendants offered nothing to the court to support their infringement of Death Dealer II and Death Dealer V.

37. The Defendants affirmative defenses have shown to be without merit.

38. Plaintiffs have carried the burden imposed by FED. R. CIV. P. 56 and demonstrated there are entitled to entry of Summary Judgment on all counts alleged in the Complaint.

WHEREFORE, PLAINTIFFS Frazetta Properties, LLC, Holly Frazetta and Heidi Frazetta respectfully demand that this Motion for Summary Judgment be granted, and that the Count enter judgment against Defendants as to Count I, Count II, Count III their Count IV and Count V.  Defendants request the books currently in the possession of Defendants and all of their distributors be impounded and disposed of, and that Defendants be ordered to pay statutory damages to Plaintiffs for their

infringement, that Defendants also be required to costs, expenses and attorneys' fees incurred by Plaintiffs in bringing this action and for such other and further relief as the Court deems appropriate and justice requires.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY the foregoing Motion was served on Defendants' attorney, Defendants Leigh M. Williams, Esq., on September 19, 2023, via the CM/ECF service.

    MERRITT LAW PA

    /s/ Jack W. Merritt
    Jack W. Merritt, Esq.
    FBN: 0052248
    690 South Tamiami Trail
    Osprey, FL 34229
    Email: office@merrittlaw.net
    Telephone: 941.445.4841

    Attorney for Plaintiffs