## SETTLEMENT AGREEMENT

Agreement dated March 1, 2010, by and between Frank Frazetta ("Frazetta"), and Vanguard Productions and J. David Spurlock ( collectively "Vanguard/Spurlock").

WHEREAS, disputes exist between Frazetta and Vanguard/Spurlock, which disputes are the subject of a pending action in United States District Court, Southern District of New York, Action No. 08 CIV 6670 (the "Litigation");

WHEREAS, the parties desire to resolve all disputes between them;

NOW THEREFORE, in consideration of the terms and conditions contained herein, and in acknowledgment by each of the parties that such terms and conditions constitute good and valuable consideration, the parties agree as follows:

1. Within 7 days of the full execution of this Settlement Agreement, Vanguard/Spurlock shall pay to Frazetta the sum of $80,000. The check shall be made payable to Frazetta Properties, LLC and sent to Tarlow, Breed, Hart & Rodgers on behalf of Frazetta.

2. Vanguard/Spurlock are granted certain publishing and licensing rights as described in the Frazetta 2-Book Publishing Agreement and the Frazetta Endorsement & Trademark License Agreement, attached respectively as **Exhibit A** and **Exhibit B**, each of which is incorporated fully by reference, as though stated fully herein.

3. Frazetta Properties, LLC, on behalf of Frazetta, shall transfer to J. David Spurlock physical possession and ownership (but not any copyright) of two original drawings from Frank Frazetta's series known as "Illustrations Arcanum" described as Hag & Heroine (published plate #8) and Dragon Rider (published plate #28).

4. To facilitate the publishing roll-out campaign described in Exhibits A and B,

1

Frazetta Properties, LLC, on behalf of Frazetta, shall pay the sum of $20,000 to Vanguard/Spurlock within 10 days of the clearing of the check described in paragraph 1.

5.    A mutually agreed upon public statement will be released to the press stating that Frank Frazetta has entered into a new publishing agreement with Vanguard Productions and J. David Spurlock immediately upon the parties' execution of this Settlement Agreement.

6.    Within 7 days of the full execution of this Settlement Agreement and Frazetta's receipt of the payment set forth in paragraph 1 and Vanguard Publications' receipt of the payment set forth in paragraph 4, the parties shall dismiss the Litigation with prejudice, with each party bearing its own costs and attorney fees.

7.    Excepting only the obligations in this Settlement Agreement and the agreements described in paragraph 2 and Exhibits A and B and any prior agreements and permissions and authorizations pertaining to Wally's World, RGK, Paintings of St. John, Painting with Fire and Space Cowboy, Frazetta, and each of his heirs, administrators, executors, agents, successors and assigns ("Frazetta Releasors") each hereby remise, release and forever discharge each of Vanguard/Spurlock and their heirs, administrators, executors, agents, attorneys, consultants, accountants, advisors, insurance carriers, affiliates, managers, members, employees, representatives, predecessors, successors, and/or assigns ("Vanguard/Spurlock Releasees") from any and all claims, contracts, controversies, agreements, promises, damages, judgments, executions and demands, both in law and in equity, known or unknown, from the beginning of the world to the date of this Settlement Agreement, which the Frazetta Releasors have against the Vanguard/Spurlock Releasees. Without limiting the generality of the foregoing release, the Frazetta Releasors specifically release the Vanguard/Spurlock Releasees from any and all suits in

2

tort or contract or based on statutory violations or any other claims which were the subject of or which could have been the subject of the Litigation. It is expressly agreed and understood that this release is a general release, the parties reserving only their rights as described in the beginning of this paragraph.

8.    Excepting only the obligations in this Settlement Agreement and the agreements described in paragraph 2 and Exhibits A and B and any prior agreements and permissions and authorizations pertaining to Wally's World, RGK, Paintings of St. John, Painting with Fire and Space Cowboy, Vanguard/Spurlock and each of their heirs, administrators, executors, agents, successors and assigns ("Vanguard/Spurlock Releasors") hereby release and forever discharge Frazetta and the estate of Ellie Frazetta and Frazetta Properties, LLC, and each of their heirs, administrators, executors, agents, attorneys, consultants, accountants, advisors, insurance carriers, affiliates, managers, members, employees, representatives, predecessors, successors, and/or assigns ("Frazetta Releasees") from any and all claims, contracts, controversies, promises, damages, judgments, executions and demands, both in law and equity, known or unknown, from the beginning of the world to the date of this Settlement Agreement, which the Vanguard/Spurlock Releasors have against the Frazetta Releasees. Without limiting the generality of the foregoing release, the Vanguard/Spurlock Releasors specifically release the Frazetta Releasees from any and all suits in tort or contract or based on statutory violations or any other claims which were the subject of or which could have been the subject of the Litigation. It is expressly agreed and understood that this release is a general release, the parties reserving only their rights as described in the beginning of this paragraph. Vanguard/Spurlock represent that it/he are not aware of any claim or potential claim relating to any agreements

3

*J. D. S.*

concerning Wally's World, RGK, Paintings of St. John, Painting with Fire and Space Cowboy.

9.     The parties hereby declare and represent that each of them understands and agrees that this Settlement Agreement is a compromise of a disputed claim and that the payments made hereunder are not to be construed as an admission of liability on the part of any person released hereby and any liability is expressly denied.

10.     The parties agree to execute any additional documents reasonably necessary to effectuate the terms of this Settlement Agreement.

11.     All parties represent that they enter into this Settlement Agreement with full knowledge of any and all rights they have and that they do not rely and have not relied on any representation made by any other party or a representative of any party with regard to the Settlement Agreement.

12.     Except as to the Frazetta transfer to Frazetta Properties, LLC, all parties warrant and represent that they have not previously assigned or transferred, or purported to assign or transfer to any person or entity, any claim against the other, including those in the Litigation.

13.     This Settlement Agreement is intended to formalize an agreement between the parties that was reached amicably.  Each party acknowledges that there have been no threats or duress leading to the Settlement Agreement.  Furthermore, each party has consulted with counsel concerning the Settlement Agreement.

14.     This Settlement Agreement shall, in all respects, be interpreted, enforced and governed under the laws of the State of New York.

15.     Except as described in paragraphs 2 (including Exhibits A and B), 7 and 8, this Settlement Agreement sets forth the entire agreement between the parties and fully supersedes

4

03/05/2010  11:17    9414974128                            PACKMAIL                                        PAGE  04/04
MAR-04-2010 THU 02:48 PM T. B. H. R., P.C.                    FAX NO. 6172617673                        P. 07

any and all prior agreements or understandings between the parties. This Settlement Agreement may only be amended by an agreement in writing executed and delivered by the parties, or their respective heirs, successors or assigns.

16.    This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one in the same instrument. Fax signatures or PDF signatures by email shall operate as binding as original signatures. Notwithstanding the foregoing, Vanguard/Spurlock shall receive a copy of this Settlement Agreement with original signatures of the parties.

17.    Each party has participated in the drafting and preparation of this Settlement Agreement and attached documents, and has reviewed the same, and if any construction is to be made, the same shall not be construed against any party.

18.    In the event that legal action is required to enforce any provisions of this Settlement Agreement, or any party seeks any damages for alleged breach of this Settlement Agreement, the party found in breach shall be liable for any damages awarded, plus reasonable costs and reasonable attorney's fees incurred in such action.

_____
Frank Frazetta

_____
J. David Spurlock d/b/a Vanguard Productions

By: _____
duly authorized

_____
J. David Spurlock

5

Vanguard 226. 005

## FRAZETTA 2-BOOK PUBLISHING AGREEMENT

Terms of agreement entered into as of March 1, 2010, between J. David Spurlock dba
Vanguard Productions (the "Publisher") with editorial office at 3300 Segovia St., Coral
Gables, FL 33134, and Frazetta Properties, LLC, a Delaware limited liability company
with an address of c/o Frazetta Management Corp., Attn: Rob Pistella, President, P.O.
Box 74547, 9001 Broadstone Road, Richmond, Virginia 23236 ("Properties"). The
purpose of this Agreement is to authorize and designate the Publisher with rights to
publish two books on Frank Frazetta (the "Artist").

Properties hereby grants Publisher all rights to produce and release two (2) books (the
"Books"): one (1) book of sketches by the Artist and one (1) book of photographs by the
Artist.  Each book is to include approximately 150 images and one full-page
advertisement, if requested, and as designated by Properties. The tentative titles of the
Books are: *The Frank Frazetta Sketchbook* and *The Photography of Frank Frazetta*,
respectively. The authorship on both books shall be credited to "By Frank Frazetta & J.
David Spurlock."

1.      RIGHTS: For good and valuable consideration the receipt and
sufficiency of which is hereby acknowledged by Properties, Properties grants and assigns
to Publisher the sole and exclusive right to print, publish, translate, copy, and sell the
Books, including all works created by the Artist therein, in book form, and subject to the
terms and conditions herein, to license others to do so solely for the Books during the
terms of copyright, and all renewals and extensions of that copyright in the United States
of America, and throughout the world. Properties also grants and assigns to Publisher on
an exclusive basis, the supplementary rights described in Section 11 below, on the terms
set forth in this Agreement, throughout the world. Properties agrees to not plan or
produce a similar book or, books with similar title, with another publisher within two (2)
years of each of the respective Publisher releases of the Books.

2.      DELIVERY: Properties shall deliver to Publisher one (1) copy of each
illustration (drawings, paintings, photograph, or other graphic material) in final form and
content satisfactory to Publisher (such satisfaction to be deemed if Properties has not
received written or email notice from Publisher within ten (10) days of receipt of any
material as to dissatisfaction by Publisher with such just delivered material), and/or allow
Publisher access to scan and/or the loan of materials to be scanned for inclusion in the
Books, on a schedule mutually agreed upon by Publisher and Properties. Publisher will
arrange meetings at least two (2) weeks in advance with Properties. Meetings can take
place on other schedules if agreed upon in advance by Properties and Publisher.
Publisher agrees to collect a minimum of 33% (1/3) of the sketches for one (1) Book
from outside sources including, but not limited to, fanzines, past auctions, and collectors.

Properties agrees to use its best commercially reasonable efforts to provide its share of
the material including sketches, photographs, and life drawings at Properties' own

1

A.&.S.
**Vanguard 226. 006**

expense.  In an attempt to boost sales, meant to benefit Properties and Publisher alike, health permitting, Artist agrees to participate in a minimum of three (3) hours of interviews for each of the two (2) Book projects, to be transcribed and edited for inclusion as text for each Book.

3.  FAILURE TO DELIVER: If Properties does not deliver the material listed in Section 2 by the date specified in the schedule referred to in Section 2 (or at another mutually agreeable date, agreed to in writing by Publisher), or if the material is unsatisfactory to Publisher, after Publisher has timely given Properties notice of dissatisfaction under Section 2, and such failure of Properties causes Publisher to suffer loss of orders due to lateness, then Properties will within sixty (60) days of receipt of confirming documentation from Publisher, reimburse Publisher all actual expenses Publisher incurred in advertising, soliciting, publicizing, and promoting the Book, including any and all other actual expenses which are unique to the initial offering of the Book, up to ten thousand dollars ($10,000.00).

4.    PROOFS AND ALTERATIONS: Publisher will attempt to get Properties' approval on editorial and design content of each Book. If a mutual agreement cannot be reached in a timely manner, threatening the promoted release date, the Publisher retains the right to make final editorial and design decisions in an effort to not lose orders due to lateness. Properties agrees to allow Publisher to make any editorial changes, additions, or deletions that Publisher deems necessary.  Publisher will send Properties pre-publication proofs of the Book, which Properties agrees to read, correct, and return promptly. Publisher will present the corrected proofs for inspection at Properties' request. Proofs may be produced by Publisher and supplied to Properties as digital PDF files.

5.    PUBLICATION: Publisher shall publish each of the two Books at Publisher's sole cost and expense, in a format, style and at a price that Publisher believes advisable. All Publisher   decisions about format, style, design, editing, production specifications, number of copies printed, and pricing shall be final.  Publisher reserves the right to publish each Book under the Publisher's imprint "Vanguard Productions" or under any other imprint of the Publisher, his affiliates or subsidiaries, but at all times to the authorship requirements set forth in the second paragraph at the beginning of this Agreement.  Publication shall be within eighteen (18) months of Publisher's acceptance of the fully edited text and illustrations, including all additions and corrections Publisher may require Properties to make. Publisher's failure to publish within this period shall not be considered a breach of this Agreement if the delay is caused by circumstances beyond Publisher's control and Publisher so notifies Properties within thirty (30) days of the occurrence of such circumstances.

6.  COPYRIGHT:

A.    While all art work images created by the Artist and included in either Book (the

2

Vanguard 226. 007

"Work") remain the sole property of Properties, the titles of the Books, as published, shall be the exclusive property of Publisher. Copyright notices shall read: "All artwork copyright © Frank Frazetta and/or Frazetta Properties, LLC 2010 unless otherwise noted. Text is copyright © 2010 Frank Frazetta & J. David Spurlock, ARR. Collective Copyright © 2010 Vanguard Productions."

B.      If the copyright of the Work is infringed, and if Publisher and Properties proceed jointly, the expenses and recoveries, if any, shall be shared equally. If Publisher and Properties do not by mutual written consent proceed jointly, either party shall have the right to prosecute such action, with that party bearing the expenses of the action and entitled to keep any recovery. Should the party bringing suit not be the holder of the record title of the copyright, the non-litigating party consents to the action being brought by the litigating party.

7.      WARRANTY: Properties represents, covenants, and warrants that as between Properties and Artist, Properties has all right and authority to enter into this Agreement and provide the publishing rights and other rights granted to Publisher hereunder; the Work is original, with the exception of any material which Artist or Properties has received permission to reproduce or reprint from other sources; that Artist is the sole creator and Properties is the owner of the Work provided by Properties to Publisher for the Books; that neither Properties nor Artist has entered into or become subject to any contract, agreement, or understanding with a third party involving the Books; that, if published in the Books, the Work provided by Properties to Publisher for inclusion in the Books will not infringe upon any currently existing proprietary right under statute or common law, any statutory copyright, or any other intellectual property right; that the Work provided Publisher by Properties for inclusion in the Books contains no matter that is libelous, scandalous, obscene, in violation of any right of privacy or any other intellectual property right of any person, or otherwise unlawful; and that Properties has full power to enter into this agreement.

8.      INDEMNITY: Nothing in this Agreement shall alter or impair the common law or statutory rights of either party to indemnity or contribution arising out of the other parties' performance of this Agreement.

9. ROYALTIES: Publisher agrees to pay Properties the following royalties, on the sale of the Books (less returns), whether made by Publisher or any Publisher affiliate or under any sublicense or grant of rights by Publisher to a third party, after receipt of payment by Publisher, as follows:

A.      <u>Regular Hardcover Trade Edition</u>:  On each copy of the regular hardcover trade edition sold, less returns, a royalty of:

3

10% of the gross revenue actually received by Publisher from the sales of the Books.

B.    Paperback Editions Under Publisher's Imprint: On each copy of a paperback edition which may be published under Publisher's imprint, a royalty of:

10% of the gross revenue actually received by Publisher from the sales of the Books.

C.    Sales at More Than 65% Discount: On each copy sold anywhere at a discount of more than 65%, and on copies sold at temporarily reduced prices through special mail order or other promotion, a royalty of 5% of the gross revenue Publisher actually receives on the regular hardcover edition copies or 5% of the gross revenue Publisher actually receives on the paperback edition copies sold.

D.    Sales by Mail Order, Radio, Television, Other Advertising Media, Website, or Convention: On each copy of Publisher's regular hardcover edition or Publisher's paperback edition sold directly to the consumer through mail order or coupon advertising, radio, television or other advertising medium, website, or Convention, a royalty of 5% of the gross revenue Publisher actually receives on the hardcover and 5% of the gross revenue actually received on the paperback editions.

E.    Book Club Sales: On each copy of Publisher's regular hardcover edition sold to a book club (including divisions or affiliates of Publisher) as a main selection, alternate selection, or in combination with any other publications or products, a royalty of 5% of the gross revenue Publisher actually receives. On each copy of the paperback edition sold under the same circumstances, a royalty of 5 % of the gross revenue Publisher actually receives. On copies sold to book club divisions or affiliates of Publisher for use as premiums, or gifts, a royalty of $.25 per copy for hardcover copies or $.15 per copy for paperback copies.

F.    Signed Editions: Publisher has the option, Artist's health permitting, to offer copies of any and all Publisher editions of the Books signed by the Artist. Publisher agrees to pay Properties or Artist, as designated by Properties, $100.00 (one hundred dollars) per signature-on signed editions of Books, whether or not such Books actually are sold. On such signed editions of Books, in addition to the $100.00 signing fee, Properties will receive a flat, $5.00 per-Book royalty, in lieu of any percentage-based royalty on such Artist-signed Books.

If the Artist becomes able to sign autographs, for commercial purposes, at any price, then the Artist agrees to fulfill Publisher's reasonable requests for autographs as agreed and subject to the remaining terms of this subsection F.

4

A. S. S.

Vanguard 226. 009

G.    No Royalties: will be paid on copies sold at or below production cost; copies sold to or furnished without charge to Properties or Properties's representative, Frazetta Management Corp. (acting by and through Robert J. Pistella, President); copies furnished without charge for review, advertising, promotion, sample, or publicity purposes; or for damaged or returned copies.

10.    PROMOTION: Publisher may, subject to the provisions of this Agreement, publish, or permit others to publish or broadcast, selections from either or both Books in any media including print, radio, or television, without royalty, if Publisher believes that such selections will benefit Book sales. Properties gives Publisher the right to use and authorizes the use of Artist's name, photograph, stylized signature, and likeness in connection with the advertising and promotion of any and all Publisher collections of Artist material. Properties represents that Artist endorses and publicly supports the Books on Artist with his goodwill.

11.    SUBSIDIARY RIGHTS: For good and valuable consideration the receipt and sufficiency of which is hereby acknowledged by Properties, Properties grants Publisher the exclusive right, on Properties' behalf, but subject to the provisions of Section 1, to license, sell, or otherwise dispose of the following rights in the Books, with the net proceeds to be divided equally between Properties and Publisher after all commissions and foreign taxes are deducted. Publisher may appoint a sub-agent to dispose of the subsidiary rights described below, and may deduct any reasonable commissions paid to such sub-agent and any reasonable and necessary out-of-pocket expenses in connection with such disposition ("Agent Fees") prior to calculation of Properties' share of the net proceeds.

11.1 LIST OF SUBSIDIARY RIGHTS:

A.    Publication in foreign languages;

B.    Condensations;

C.    Serialization in magazines and newspapers (whether in one or more installments) before and after book publication;

D.    Publication of an English language edition, distinct from Publisher's edition, by a foreign publisher;

E.    Publication of reprint editions, whether hardbound or paperback, by another publisher;

F.    Publication in whole or in part in anthologies, compilations, or digests;

G.    Multimedia adaptations, including but not limited to radio, sound recordings,

5

Vanguard 226. 010

microfilm, microprint and versions designed for electronic data retrieval (CD-Rom and on-line services).

12. ROYALTY PAYMENTS AND STATEMENTS: Royalties are due initially within 120 days after each book's On-Sale date and thereafter within forty-five (45) days following the end of each calendar quarter. Publisher will send to Properties sales and royalty accounting reports quarterly, within forty-five (45) days following the end of each calendar quarter, accompanied by a check payable to Properties for any amounts due under this Agreement (including, but not limited to, sales by sublicensees of Publisher) with respect to such subject calendar quarter. When Properties' royalty as to any calendar quarter falls below $500.00, the quarterly statements shall be replaced by a semi-annual statement. Publisher will then send, within forty-five (45) days following June 30 and December 30 of each year, semiannual statements of account, accompanied with a check payable to Properties, itemizing amounts due Properties under this Agreement for the subject preceding six (6) month period. Thereafter, all statements will be issued semi-annually.

Publisher may withhold a reasonable reserve for future returns of books; this reserve shall not exceed twenty-five per cent (25%) of the earnings due to the Artist. Where any statement indicates that Properties has received an overpayment of royalties, including by subsequent return of Books to Publisher, or that Properties or Artist is otherwise indebted to Publisher, Publisher may deduct the amount of the overpayment or other indebtedness from any sums due Properties, either then or thereafter, under this Agreement, from any sums due Properties under this Agreement, provided that the subsequent statement in which such deduction is taken, provides reasonable detail as to such deduction.

Properties may audit the records of Publisher, at Properties' own expense, to verify compliance by Publisher with his obligations under this Agreement, but not more than once, absent default by Publisher, in any twelve (12) month period. Any discrepancy found shall not be deemed a breach of this Agreement if payment is tendered by the party liable, in full, within forty-five (45) days and, if the discrepancy exceeds twenty-five per cent (25%) as due and owing to Frazetta Properties, then Properties' audit expense will be re-paid to it by Publisher within an additional thirty (30) days. Any discrepancy found shall not be deemed a breach of this Agreement if paid by the party liable, in full, within thirty (30) days of finding said discrepancy. In the event any discrepancy exceeding twenty-five per cent (25%) is found as against Publisher, then Publisher's tender to Frazetta Properties for the cost of the auditing, shall not be deemed a breach of this Agreement if made within those same thirty (30) days.

13. PROPERTIES' COPIES: On publication of each of the two (2) Books, Publisher will give Properties ten (10) copies, without charge, of any of these editions produced: Paperback, Hardback, and Deluxe. If any ULTRA or Signed edition is produced, Properties will receive five (5) copies of that edition at no charge. Publisher will not pay a signing fee or any royalties on any Books going to Publisher, Artist or Frazetta

6

A.D.S.

Vanguard 226. 011

Management Corp. or official associates. Publisher agrees to sell Properties additional copies, excluding signed copies, at fifty per cent (50%) off cover price, plus shipping and handling costs (current handling is $5.00/carton) while the Book is In-Print.

14.  OVERSTOCK/REMAINDERS: If, at any time, Publisher has unsold or returned copies of the Books on-hand and Publisher believes that these cannot be sold on the usual terms within a reasonable time, Publisher may sell such copies to whatever purchaser or purchasers, on whatever terms Publisher considers advisable. If such stock is sold at or below Publisher's cost (as reasonably documented by notice from Publisher to Properties), no royalty will be paid to Properties on such sales. If such stock is sold above Publisher's cost, Publisher will pay Properties, in lieu of any other royalty payments provided in this agreement, ten per cent (10%) of the difference between Publisher's cost (as reasonably documented by notice from Publisher to Properties) and the gross revenue Publisher actually receives. Before Publisher disposes of such remainder Books as described above, Publisher shall make reasonable efforts to notify Properties and give Properties the opportunity to purchase all or part of the over stock at the greater of Publisher's manufacturing cost or rate that Publisher would sell as remainders.

15.    OUT-OF-PRINT: It is the right of Publisher to keep any Book in print or not, as it sees fit.   During the first two (2) years of publication, neither Properties nor Artist shall grant another the right to print more than twenty per cent (20%) overlap of Work included in the Books.

16.    DISCONTINUANCE OF PUBLICATION; TERMINATION: Publisher may discontinue publication of both Books or either Book at any time. All rights granted to Publisher, representations, warranties, covenants, and indemnities of either party in this Agreement shall survive such discontinuance. Nothing contained in this Agreement shall affect Publisher's right to sell remaining copies of both or either Book on-hand at the date Publisher ceases publication; nor shall cease of publication affect any license or other grant of rights which Publisher has made to a third party before the cease of publication date, or Publisher's rights in the proceeds of such a license or grant. Publisher, his heirs or successors, have the right to put any out of print Books back in print at any time. Properties may terminate Publisher's rights based upon his breach of this Agreement, including any breach by anyone for which Publisher is responsible, which breach continues uncured for 45 days after written notice of breach from Properties.

17.    COPIES OF AGREEMENT: Publisher shall furnish Properties with copies of any agreements which Publisher may make with any third parties for the disposition or exploitation of any rights granted Publisher under this Agreement.

18.    RETURN OF MATERIALS: Publisher shall return to Properties no later

7

A.Q.S.

Vanguard 226. 012

than 60 days after receipt, any physical material Properties (or Artist) has furnished to Publisher for inclusion in Books or either Book.

19. SUMS DUE AND OWING: Any sums which are due and owing from Properties to Publisher, arising out of this Agreement, may be deducted from any sum which is due (or to become due) from Publisher to Properties, pursuant to this Agreement, provided Publisher at the time of such deduction provides Properties with a reasonably detailed explanation of the amount then due from Properties to Publisher.

20. OPTION/RIGHT OF FIRST REFUSAL: Properties on its own behalf and, to the extent applicable, on behalf of Artist, gives Publisher a forty-five (45) day option on future books on art work created by Artist on terms that are at least as favorable to Properties and Artist as proposed by any other book publisher on or prior to January 1, 2025 (the "Expiration Date"); the option period shall begin on the day Publisher receives a detailed outline of the terms or a copy of the proposed contract being offered by such other book publisher (in either instance, the "Third Party Offer"). If Publisher wishes to publish the proposed book, Publisher shall execute and deliver to Properties within such 45-day period a publishing contract on terms consistent with the Third Party Offer, plus a bonus fee of one hundred dollars ($100.00). If Properties does not receive such executed contract from Publisher within such 45-day period, then Properties may proceed to publish that certain book with the Third Party publisher. Any such publication agreement with a Third Party publisher shall have no effect on Publisher's ongoing Option/Right of First Refusal herein. Notwithstanding any other provision in Section 20, Publisher shall have no rights under this Section 20 or otherwise with respect to a Third Party publisher's proposal first made to Properties after the Expiration Date. For the avoidance of doubt: (i) no rights under this Section 20 are assignable by Publisher to any Third Party, in whole or in part, or by operation of law or otherwise, and (ii) Publisher shall have no rights under this Section 20 or otherwise with respect to any comic books that Properties may publish or allow third parties to publish from time to time.

21. NOTICE IN WRITING: While normal working relations will be conducted through e-mail and telephone calls, any dispute notice or demand that is permitted or required in this Agreement shall be in writing and shall be sent to Properties: c/o Frazetta Management Corp., Attn: Robert J. Pistella, or to Publisher at the address that appears above (but for notice to Properties as specified in the preceding provisions of this sentence), or at any other address that Properties or Publisher may designate. Properties shall, unless and until contrary written instructions from Properties, deal with Publisher for all purposes of this Agreement by and through Licensor's representative, Frazetta Management Corp., acting by and through Robert J. Pistella, President. Publisher, unless and until contrary written instructions are received from Properties, may deal with and rely on Robert J. Pistella, acting as President of Frazetta Management Corp., as representative of Properties for all purposes of this Agreement, without inquiring further as to his and its authority on behalf of Properties hereunder.

Vanguard 226. 013

22. AMENDMENTS; COUNTERPARTS: Changes to this Agreement may only be made in writing and signed by both parties. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. On this Agreement, facsimile signatures and signatures transmitted electronically in PDF format shall for all purposes be given the same legal effect as original signatures. Notwithstanding this Section, Publisher will obtain a copy of this Agreement with all original signatures.

23.      CHOICE OF LAWS: This agreement shall be governed and interpreted according to the laws of the State of Florida and of the United States of America, whether or not any party is or may hereafter be a resident of another state. Any litigation is to be brought in the State of Florida. All court, arbitration, and other legal costs, expenses, and fees incurred, in addition to any other recovery or award, shall be paid by the non-prevailing party to the prevailing party, with "prevailing party" defined as it is under the laws of Florida.

24.      SEVERABILITY CLAUSE: In the event that any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this agreement, but this agreement shall be construed as if such invalid, illegal or unenforceable provisions had never been contained herein, unless the deletion of such provision or provisions would result in such a material change so as to cause completion of the transactions contemplated herein to be unreasonable. It is further agreed that if part of the Agreement is determined invalid, either party may open non-binding negotiations solely with respect to a substitute for such Article, Section, or portion, within two (2) weeks after a ruling has been made.

25  COMPLETE CONTENTS OF AGREEMENT: This Agreement to Publish, along with that certain separate Endorsement/Trademark License Agreement between the parties, and all other agreements incorporated by reference into the Endorsement/Trademark License Agreement, constitute the entire binding agreement between J. David Spurlock, d/b/a Vanguard Productions and Properties (or between Publisher and Artist) with respect to the subject matter hereof.

26. HEIRS AND SUCCESSORS: This agreement shall be binding upon and shall inure to the benefit of Properties' successor and assigns, and, subject to the provisions of this Agreement, to the heirs, successors and permitted assigns of Publisher. Until publication of the Books, provided same is done by January 1, 2025, Properties shall not assign its obligations under this Agreement without Publisher's prior written consent, although Properties may assign any of its rights to payments under this Agreement without such consent. Subject to this Agreement, Publisher may sublicense any, but not all, rights granted to Publisher under this agreement, but Publisher may not, without Properties' prior express, written consent (which consent may be withheld or granted in Properties' sole discretion), assign this Agreement as an entirety, except to an entity of which not

9

Vanguard 226. 014

less than fifty-one per cent (51%) of both the ownership and voting control is held by J. David Spurlock, or his heirs.

FRAZETTA PROPERTIES, LLC

By: _____
Name: William N. Frazetta
Title: Manager

By: _____
Name: Holly Jean Frazetta Taylor
Title: Manager

By: _____
Name: Heidi Lee Grabin
Title: Manager

J. DAVID SPURLOCK,
d/b/a Vanguard Productions

10

less than fifty-one per cent (51%) of both the ownership and voting control is held by J. David Spurlock, or his heirs.

FRAZETTA PROPERTIES, LLC

By:_____
Name:  William R. Frazetta
Title:   Manager

By:_____
Name:  Holly Jean Frazetta Taylor
Title:   Manager

By:_____
Name:  Heidi Lee Grabin
Title:   Manager

J. DAVID SPURLOCK,
d/b/a Vanguard Productions

10

Vanguard 226. 016

# Frazetta Endorsement & Trademark License Agreement

THIS AGREEMENT is entered into as of March 1, 2010, by and between FRAZETTA PROPERTIES, LLC, a Delaware limited liability company (the "Licensor"), with an address of c/o Frazetta Management Corp., Attn: Rob Pistella, President, P.O. Box 74547, Richmond, Virginia 23236 (the "Licensors"), and J. DAVID SPURLOCK d/b/a VANGUARD PRODUCTIONS (the "Licensee"), having offices at 3300 Segovia St. Coral Gables, Florida 33134 and 575 Prospect St., Suite 301, Lakewood, New Jersey 08701. Licensor and Licensee are sometimes referred to individually as a "party" or collectively, as "the parties."

## STATEMENT OF FACTS

(i) Frank Frazetta, as an individual, successfully filed a trademark registration with the United States Patent and Trademark Office, Serial No.: 77501185, Registration No.: 3575511, for the trademark "FRAZETTA" (the "Property"). Licensor, as transferee from Frank Frazetta, is the owner of the Property and has the sole power and authority to grant to Licensee, subject to the terms and conditions set forth herein, the right and exclusive license to use the Property solely in connection with the identification and promotion of all "FRAZETTA" products outlined in this Agreement, in the world (the "Licensed Territory").

(ii) Licensee and Licensor are parties to this Endorsement and Trademark License Agreement (this "Agreement") pursuant to which Licensee is granted the right to publish seven (7) FRAZETTA-related books (the "FRAZETTA Books") with the full endorsement and participation of Licensor and incorporating, as Licensee sees fit, the registered, stylized FRAZETTA signature trademark identified under Serial No.: 77501185/ Registration No.: 3575511 or any other Frazetta stylized signature Licensor(s) hold(s) rights to.

(iii) Licensor grants Licensee an exclusive license to incorporate, with Licensor's full endorsement, the Property into the titles, advertising, and promotion of the FRAZETTA books and to sell and promote the FRAZETTA Books in the Licensed Territory. Both Licensee and Licensor have agreed to the terms and conditions upon which Licensee shall publish, distribute and sell the FRAZETTA Books. In consideration of the promises and agreements set forth herein, the parties, each intending to be legally bound hereby, do promise and agree to the terms herein contained.

## 1. LICENSE

A. Subject to the terms and conditions herein, and for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged by Licensor, Licensor hereby grants to Licensee the exclusive right and license to use the Property or any other Frank Frazetta signature to which the Licensor holds the rights, solely in connection with

1



Vanguard 226. 017

the identification of the subject FRAZETTA Books and their promotion, advertising, distribution and sale in the Licensed Territory. Licensee has the right to use the Property in all advertising of the FRAZETTA Books, including but not limited to use in print, online, tradeshow banners, etc. Licensee has the right to advertise and promote the FRAZETTA Books as supported, authorized and/or endorsed by the artist, Frank Frazetta. Licensee has the right to incorporate other identification, including but not limited to any and all Vanguard Productions-related branding when appropriate. Licensee has the right to keep any and/or all of the FRAZETTA Books in print as Licensee sees fit.

B.   Licensee may grant sub-licenses to any third party without the prior express written consent of Licensor for performing any rights with respect to the FRAZETTA Books which Licensee has been granted under this Agreement, provided that (i) the sub-license is necessary to accomplish the publication or marketing of the FRAZETTA Books, and (ii) any such sublicenses shall be subject to this Agreement.

C.   Nothing in this Agreement shall be construed or interpreted as precluding Licensor from granting any other license or licenses or other rights for use of the Property on or for any other products or with respect to any services, merchandise or in any other manner whatsoever, except for the rights granted to licensee herein.

2. TERM. This Agreement shall be effective as of the date hereof, is valid in perpetuity and shall not expire, except through Licensees breach of this Agreement, including any breach by anyone for which Licensee is responsible, which breach continues uncured for 45 days after written notice of breach from Licensor. The provisions of Sections 7 and 8 shall survive any termination of this Agreement.

3. CONSIDERATION. By execution of this Agreement, Licensor acknowledges receipt and sufficiency of good and valuable consideration, in exchange for the grant of rights to Licensee contained in this Agreement.

4. LIST OF FRAZETTA BOOKS TO BE PUBLISHED UNDER THIS AGREEMENT

A.  One (1) book entitled *"The Definitive Frazetta Reference"* by James Bond and David Winiewicz, Ph.D. (which has been previously published by Licensee). No royalties or sales reports are due Licensor or the artist Frank Frazetta on this title. Licensee has the right to update, revise text, replace images, re-design and publish this FRAZETTA Book as Licensee sees fit. Artist Frank Frazetta agrees, health permitting, to autograph the FRAZETTA Books for Licensee at a flat-fee rate of $100.00 per signature if Licensee requests such autographing. An address for Licensor's website will be listed, as designated by Licensor, in the FRAZETTA Books.

B. Two (2) books of sketches and/or photos as agreed to in the separate FRAZETTA 2-book Publishing Agreement between the parties (the "Publishing Agreement"). Royalties

2



are due to Licensor as more particularly set forth in the Publishing Agreement. Frank Frazetta agrees, health permitting, to autograph for these FRAZETTA Books at a flat-fee rate of one hundred dollars ($100.00) per signature if Licensee requests such autographing. Both of the FRAZETTA Books subject to the Publishing Agreement are to include a full-page advertisement, the subject matter of such advertisement to be as designated by Licensor.

C. A series of four (4) books collecting any and/or all public domain comic-book and/or comic-strip works from 1960 and earlier. Material for possible inclusion at Licensee's option include but are not limited to works known as Johnny Comet, White Indian, Small Wonders, Thun'da, Untamed Love, etc. No royalties or sales reports are due Licensor or Frank Frazetta on this series. Licensor agrees not to endorse or lend use of the Property or other Frazetta stylized signature to any other publisher for use in connection with the public domain material. Frank Frazetta agrees, health permitting, to autograph these FRAZETTA Books for Licensee at a flat-fee rate of one hundred dollars ($100.00) per signature, if Licensee requests such autographing. Licensee retains all rights to publish any and all public domain material, whether included in the instant series of four (4) Books described in this Agreement or not.

D. Any public domain material not included in these four (4) volumes of existing works of Frank Frazetta, published by Licensee pursuant to this Agreement is understood not to be advertised as "endorsed," and accordingly, Licensee covenants and agrees not to use the trademarked Frazetta stylized signature on any other publication the Publisher may publish, not arising under this Agreement, without the prior express, written permission of the Licensor. The use of the term "public domain" or "Public Domain" is not an admission by Licensor that any particular work created by Frank Frazetta is in the public domain and the determination of same is the sole responsibility and at the sole risk of Licensee.

## 5. NEW LICENSEE-CREATED FRAZETTA BRANDING

It is Licensee's intent to create, develop and design new Frazetta-related branding to identify and promote any and/or all of FRAZETTTA Books to be published by Licensee under this Agreement and the Publishing Agreement. This new Licensee-created Frazetta-related logo and/or branding will be used exclusively to identify FRAZETTA Books published by Licensee, and will be identified as a trademark co-owned property of Licensor and Vanguard Productions. The tentative title for the new Licensee-created Frazetta-related branding is "Vanguard Frazetta Classics."

## 6. COVENANTS, REPRESENTATIONS AND WARRANTIES

A. Licensor represents and warrants that it has the right and power to grant the license and endorsement granted herein, and that there are no other agreements with any other party in conflict with such grant. Licensor represents and warrants that it is the owner of

3

the Property.

B. Licensor further represents and warrants that the Frazetta stylized signature Property and trademarks as submitted to Licensee does not, to Licensor's knowledge, infringe any valid rights of any third party.

C. Licensee represents that it will utilize reasonable business judgment to make FRAZETTA Book product available and that it will use its reasonable business judgment to make arrangements for the sale of the FRAZETTA Books.

D. Licensee shall be solely responsible for the manufacture, production, sale, and distribution of the FRAZETTA Books and will undertake same in a professional manner and at Licensee's sole cost and expense.

## 7. INDEMNITY

Nothing in this Agreement shall alter or impair the common law or statutory rights of either party to indemnity or contribution arising out of the other parties' performance of this Agreement.

## 8. MISCELLANEOUS PROVISIONS

A. NOTICE IN WRITING. While normal working relations will be conducted through e-mail and phone calls, any dispute notice or demand that is permitted or required in this agreement shall be in writing, and shall be sent to Licensor or to Licensee at the address that appears above, or at any other address that Licensor or Licensee may designate, in writing. Licensor shall, unless and until contrary written instructions are received from Licensor, deal with Licensee for all purposes of this Agreement by and through Licensor's representative, Frazetta Management Corp., acting by and through Robert J. Pistella, its President. Licensee, unless and until contrary written instructions are received from Licensor, may deal with and rely on Robert J. Pistella, acting as President of Frazetta Management Corp., as representative of Licensor for all purposes of this Agreement, without inquiring further as to his and its authority on behalf of Licensor hereunder.

B. GOVERNING LAW. This Agreement shall be governed and interpreted according to the laws of the State of Florida and of the United States of America, and brought only in a court in Florida, whether or not any party is or may hereafter be a resident of another state. All court, arbitration, and other legal costs, expenses, and fees incurred, in addition to any other recovery or award, shall be paid by the non-prevailing party to the prevailing party as defined under the laws of Florida.

C. COMPLETE CONTENTS OF AGREEMENT. The Publishing Agreement, together with this Endorsement/Trademark License Agreement, are parts of the parties' Settlement

4

and Release Agreement disposing of the lawsuit filed by Frank Frazetta against J. David
Spurlock d/b/a Vanguard Productions, case number 08-cv-6670, in the Southern District
of New York, and incorporates by reference the 2-book Agreement to Publish, which is
also an integral part of the Settlement and Release Agreement entered into by the parties.
These three agreements constitute the entire and complete agreement between J. David
Spurlock, d/b/a Vanguard Productions and Frank Frazetta, and Licensor and there are no
other verbal or written agreements between the parties with respect to the subject matter
hereof. This Agreement may only be amended in a writing signed by both parties.

D.  HEIRS, SUCCESSORS, AND ASSIGNS. This Agreement shall be binding upon
both parties and upon their respective heirs, and permitted successors, administrators, and
assigns.

E.  HEADINGS.  The paragraph headings in this Agreement are for convenience only,
and shall not be read to change, add to, or subtract from the meaning of the text.

F.  COUNTERPARTS. This Agreement may be executed simultaneously in two or more
counterparts, each of which shall be deemed an original, but all of which together shall
constitute one and the same Agreement.  On this Agreement, Facsimile signatures and
signatures transmitted electronically in PDF format shall for all purposes be given the
same legal effect as original signatures. Notwithstanding this Section, Licensee shall
receive a copy of this Agreement with all parties' original signatures upon the document.

In further consideration of this Agreement, the parties hereby represent and warrant to
each other that they have full legal authority to execute this Agreement on behalf of
themselves and/or any and all persons having any interest whatsoever in any of the
properties described above. The parties have mutually drafted this Agreement and that
any ambiguities which may inadvertently appear in this document or which may be
contested in the future, by any party in this Agreement, shall not be construed against
any party as drafter of the Agreement. The parties herein hereby execute the
Agreement, which will now constitute a binding Agreement upon the parties and their
agents, employees, officers, managers, and others acting on behalf of the parties named
herein.

5

**Vanguard 226. 021**

MAR-04-2010 THU 04:53 PM T. B. H. R., P.C.          FAX NO. 6172617673          P. 20

FRAZETTA PROPERTIES, LLC

By: _____
    Name:  William R. Frazetta
    Title:  Manager

By: _____
    Name:  Holly Jean Frazetta Taylor
    Title:  Manager

By: _____
    Name:  Heidi Lee Grabin
    Title:  Manager

Address: c/o Frazetta Management Corp.
         Attn:  Robert J. Pistella, President
         P.O. Box 74547
         Richmond, Virginia 23236

VANGUARD PRODUCTIONS

J. DAVID SPURLOCK
d/b/a VANGUARD PRODUCTIONS
3300 Segovia Street
Coral Gables, Florida 33134
Tel. (786) 953-7401
e-mail: vanguardpub@att.net

6

Vanguard 226. 022

FRAZETTA PROPERTIES, LLC          VANGUARD PRODUCTIONS

By:_____        _____
   Name:  William R. Frazetta      J. DAVID SPURLOCK
   Title:  Manager                 d/b/a VANGUARD PRODUCTIONS
                                   3300 Segovia Street
By:_____        Coral Gables, Florida 33134
   Name:  Holly Jean Frazetta Taylor  Tel. (786) 953-7401
   Title:  Manager                 e-mail: vanguardpub@att.net


By:_____
   Name:  Heidi Lee Grabin
   Title:  Manager

Address: c/o Frazetta Management Corp.
         Attn: Robert J. Pistella, President
         P.O. Box 74547
         Richmond, Virginia  23236

6

Vanguard 226. 023