## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**HOLLY J. FRAZETTA**,
**HEIDI L. FRAZETTA**, and
**FRAZETTA PROPERTIES, LLC**,

     Plaintiffs,

v.                         Case No. 8:22-cv-00581-WFJ-AEP

**VANGUARD PRODUCTIONS, LLC**, and,
**JESSE DAVID SPURLOCK**

     Defendants.

_____/

## ORDER

This matter comes before the Court on Defendants Vanguard Productions, LLC's and Jesse David Spurlock's (collectively, "Defendants") Second Motion for Summary Judgment (Dkt. 111) as well as Plaintiffs Holly J. Frazetta's, Heidi L. Frazetta's, and Frazetta Properties, LLC's (collectively, "Plaintiffs") Motion for Summary Judgment (Dkt. 79). The parties filed Responses (Dkts. 80, 121) and Defendants filed a Reply (Dkt. 122). Upon careful consideration, the Court grants-in-part and denies-in-part both Motions.

## BACKGROUND

This case involves a dispute over certain artwork of the late Frank Frazetta, whose distinctive material was frequently used as book cover art for fantasy and

1

science fiction novels. Plaintiffs purport to own the copyright for two of Mr.

Frazetta's works, Death Dealer II and Death Dealer V:







**Death Dealer II Artwork**                    **Death Dealer V Artwork**

Dkt. 1 ¶ 37. These two artworks are at issue here. Plaintiffs market the copyrighted

work in various forms, including books containing full-page art prints. Dkt. 83-1 at

6–8.

The Death Dealer II and V artwork appeared on the covers of books one and

four of the *Death Dealer* series of novels by author James Silke. Dkt. 1 ¶ 37.

Although Mr. Silke claimed a copyright in the novels, Mr. Frazetta retained

copyright ownership of the books' cover art. Dkt. 100-1 at 25, 27.

Defendant Vanguard Productions, LLC ("Vanguard") is a publisher with a focus on artist biographies and reference books. Dkt. 67 ¶ 2. Defendant Spurlock, Vanguard's sole member, is an art historian, teacher, and professional artist. *Id.* ¶¶ 4, 5. Defendants used the cover art for the *Death Dealer* novels in their recently published book, *Frazetta Book Cover Art*. Dkt. 1 ¶¶ 4, 37. The book includes images of the cover art for *Death Dealer* books one and four. Dkt. 67-1 at 68, 71. Each image, accompanied by minimal text, is the focus of one full page of Defendants' book:

 

*Id.*

Additionally, a small image of *Death Dealer* book four (featuring the Death

Dealer V artwork) appears on the cover of *Frazetta Book Cover Art*:



*Id.* at 1.

Plaintiffs allege that Defendants' reproduction of those two book covers

infringed Plaintiffs' copyright ownership in the Death Dealer II and Death Dealer

V artworks, which were on those book covers. Dkt. 1 ¶¶ 83–115. Plaintiffs also

made but abandoned claims concerning another work, Death Dealer VI. *Id.* ¶ 3.

Plaintiffs sought an injunction preventing Defendants from selling *Frazetta Book*

*Cover Art* and brought claims of direct copyright infringement, contributory

copyright infringement, vicarious copyright infringement, and inducement of

copyright infringement. *Id.* ¶¶ 71–115.

Defendants filed separate, but identical, Answers in May 2022 (Dkts. 14, 15). The parties filed cross motions for summary judgment in August 2023 (Dkts. 67, 79), as well as Responses (Dkt. 80, 82), and Defendants filed a Reply (Dkt. 83). The Court heard oral argument on the summary judgment motions on October 20, 2023.

Following oral argument and with the Court's leave, Defendants filed an Amended Answer (Dkt. 107), denying the majority of Plaintiff's factual allegations and asserting several affirmative defenses. Also with the Court's leave, Defendants filed a Second Motion for Summary Judgment. (Dkt. 111). Plaintiffs filed a Response to the Second Motion for Summary Judgment (Dkt. 121), and Defendants filed a Reply (Dkt. 122). For the reasons outlined below, the Court grants-in-part and denies-in-part both parties' Motions.

## LEGAL STANDARD

A district court should grant summary judgment only when it determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim that might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant.

*Id.* The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.*

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–58 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Upon doing so, the court must determine whether a rational jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A movant "must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991). When the non-moving party has the burden of proof at trial, the moving party need only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Where reasonable minds could differ on the inferences arising from undisputed facts, a court should deny summary judgment. *Allen*, 121 F.3d at 646.

## ANALYSIS

The Court will address Defendants' Motion for Summary Judgment first, followed by Plaintiffs' Motion.

## I.      Defendants' Second Motion for Summary Judgment

Defendants' raise three arguments in their Second Motion: (1) Plaintiffs do not own a valid copyright; (2) if Plaintiffs do own a copyright, it does not encompass the book cover art displayed in Defendants' book; and (3) Defendants' publication of the Death Dealer artworks is permitted by prior agreement. Dkt. 111 at 4–9. The Court will address these points in order.

*A. Plaintiffs' Copyright Ownership*

To succeed on a claim of direct copyright infringement, a plaintiff must first show ownership of a valid copyright. *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Defendants assert that the registrations provided are inadequate because they are uncertified and dated years after first publication. Dkt. 111 at 5.

17 U.S.C. § 410 provides that:

In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c). "[I]t is well-settled that ownership of the copyright is demonstrated through compliance with the formalities of registration," particularly when the opposing party offers no contradictory evidence. *Lifetime Homes, Inc. v. Residential Development Corp.*, 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) (citing

*Donald Frederick Evans & Assoc., Inc., v. Cont'l Homes, Inc.*, 785 F.2d 897, 903 (11th Cir. 1986)). Additionally, a court may judicially notice U.S. Copyright Office records under Federal Rule of Evidence 201. *See, e.g.*, *Brandon v. Warner Bros. Records*, No. 15-22738-CIV-WILLIAMS, 2015 WL 13264190, at *1 n.1 (S.D. Fla. Dec. 15, 2015).

Plaintiffs submitted exhibits purporting to be the registration certificates for Death Dealer II and V. Dkt. 79-1 at 3–6. According to those certificates, Death Dealer II was first published in 1988, and its copyright was registered in 2009. Dkt. 79-1 at 3. Death Dealer V was first published in 1990 and the copyright registered in 2009. *Id.* at 5. Frazetta Properties, LLC owns both registrations. *Id.* at 3–6. Because the registrations are dated more than five years after first publication, the Court has discretion as to their weight. 17 U.S.C. § 410(c).

The copyright registration numbers in the Complaint, Dkt. 1 at 2, and Plaintiffs' exhibits, Dkt. 79-1 at 3–6, are verifiable through the U.S. Copyright Office's public catalogue. Public Catalogue, https://cocatalog.loc.gov/ (input registration number in basic search field). By submitting the registration numbers and certificates, Plaintiffs put forth adequate evidence that Frazetta Properties has a valid copyright ownership in the Death Dealer II and V artwork.

Defendants charge that the copyrights are "invalid and/or unenforceable" due to "defects in the registration and/or fraud on the Copyright Office." Dkt. 107

at 11. "In order to establish fraud on the Copyright Office, defendants must show that the omission or misrepresentation by plaintiff was 'intentional or purposeful concealment of relevant information.'" *Home Design Srvs., Inc. v. David Weekley Homes, LLC*, 548 F. Supp. 2d 1306, 1311 (M.D. Fla. 2008) (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982)). As Defendants bear the burden of proof on this claim at trial, they "must show that, on all the essential elements . . . no reasonable jury could find for the non-moving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438. But Defendants provide no factual basis or supporting evidence for their charges of defective registration or fraud. Dkt. 107 at 11; *see also* Dkt. 79 at 5. A reasonable jury would therefore certainly find for Plaintiffs on Defendants' invalid registration claim.

Other than their unsupported allegations of fraudulent or defective registration, Defendants have offered no evidence to counter Frazetta Properties' proof of registration. However, Defendants are correct that Holly Frazetta and Heidi Frazetta have not established copyright ownership. Dkt. 107 at 11. Plaintiffs' own evidence—the registration certificates and numbers—suggests that the copyright is owned solely by Frazetta Properties. Plaintiffs have not put forth sufficient evidence (or any evidence) showing that Holly and Heidi Frazetta own the relevant copyrights. Thus, Defendants' Motion for Summary Judgment is

granted only as to Holly and Heidi Frazetta. As to Frazetta Properties' copyright ownership, the Motion is denied.

*B. If Frazetta Properties' Copyright Encompasses the Book Cover Art*

Defendants next assert that, if Plaintiffs do own a copyright, that copyright does not encompass the two book covers. They first argue that Frazetta Properties owns the copyright to a derivative work. Dkt. 111 at 6. They also suggest that the *Death Dealer* book cover art is itself a derivative that only "incorporate[es] some portion" of the original work. *Id.* The undisputed facts belie both these theories.

i.   Frazetta Properties Owns Copyright to the Original Death Dealer Works

First, the copyrights owned by Frazetta Properties were registered in 2009 but correspond to works first published in 1988 and 1990. Dkt. 79-1 at 3–6. The relevant *Death Dealer* books were also first published in 1988 and 1990, and the inside covers of those books show that Frank Frazetta retained a copyright in the artwork used for the cover. Dkt. 79-1 at 3–6; Dkt. 100-1 at 25–28. The reasonable inference is that the Death Dealer artwork and the book cover art is the same work, for which Frazetta Properties owns a copyright.

Defendants make much of the fact that Frazetta Properties' copyright was not registered until 2009. Dkt. 111 at 6. But a copyright may be registered at any time during its lifespan. *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531 (11th Cir. 1994) (citing 17 U.S.C. § 408). The 2009 date of

registration in no way indicates that Frazetta Properties owns copyright of a derivative work, rather than the original. Defendants' first argument is unconvincing.

ii.     <u>Whether the *Death Dealer* Book Cover Art is a Derivative Is Immaterial</u>

Defendants' second argument does not fair better. This theory is that the *Death Dealer* book covers merely "incorporate some portion, of some version" of Death Dealer II and V artwork. Dkt. 111 at 6. But the Court denies summary judgment on this point for two reasons: (1) a rational jury might find that the book cover art is a copy, not a derivative; and (2) even if the book cover art is a derivative, Frazetta Properties could bring an infringement claim based on material that exists in the earlier, registered work.

Defendants posit that comparisons of the original art (as depicted in the instant Complaint) and the book covers demonstrate significant differences. Dkt. 107 at 11. Attachments to Mr. Spurlock's affidavit (Dkt. 87) show the works side-by-side. It is uncontested that the book cover art is smaller than the original Death Dealer II artwork, and that the book cover image has been slightly cropped. Dkt. 87-4.



**Death Dealer II Original Artwork**



**Book Cover Art**

Dkts. 1 ¶ 37, 67-1 at 68.

The differences between the Death Dealer V original artwork and the book cover incorporating it are also not contested: (1) brighter coloring; (2) a figure at the bottom edge of the frame is missing a helmet; (3) the Death Dealer's armor has different plates; (4) the walls have more defined stone; (5) the Death Dealer's leg is at a different angle; (6) some cropping; and (7) the lighting is different. Dkt. 87-5.



**Death Dealer V Original Artwork**



**Book Cover Art**

Dkts. 1 ¶ 37, 67-1 at 71.

A derivative work is "'[a] work consisting of editorial revisions, annotations, elaborations, or other modifications [to a preexisting work that], as a whole, represent an original work of authorship.'" *Montgomery v. Noga*, 168 F.3d 1282, 1290 (11th Cir. 1990) (quoting 17 U.S.C. § 101) (alterations in original). A "non-infringing and sufficiently original" derivative work "qualifies for a separate copyright." *Id.* But only the original elements of a derivative work are protected by its copyright—preexisting material is not covered. *Id.* And while the originality requirement is "slight," a creator must make more than a minimal contribution. *Id.*; *Compendium of U.S. Copyright Office Practices* § 907.1 (2021) https://www.copyright.gov/comp3/chap900/ch900-visual-art.pdf.

The line between slight originality and minimal contribution can be difficult to draw. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010). Modifications that make a work derivative will impact the "artistic look and feel overall." *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 09–23494–CIV, 2011 WL 6202282, at *12 (S.D. Fla. Dec. 1, 2011); *see also Davidson v. U.S.*, 138 Fed. Cl. 159, 170–71 (Fed. Cl. 2018) (artist gave derivative of Statute of Liberty a "softer and more feminine" appearance by modeling its "fresh" face after a photograph of his mother-in-law); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 34–35 (2d Cir. 1982) (drawing was a derivative because the modifications gave the work "a different, cleaner 'look' than" the original).

Originality is usually a question of fact. *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409 (11th Cir. 2015); *see also Montgomery*, 168 F.3d at 1290 n.12. However, originality can be determined as a matter of law if the uncontested facts show that the creator of a derivative "merely copied" a former work, "adding nothing original" and having the "earlier work in mind." *Home Legend, LLC*, 784 F.3d at 1410 (citing *Meshwerks Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1264–65 (10th Cir. 2008)). Here, summary judgment is denied for Defendants because a rational jury could reasonably find that the *Death Dealer* book covers lack sufficient originality to qualify for a derivative copyright. Indeed, this does appear close to a case of mere copying.

The Court also denies summary judgment for Defendants because, even if the book covers were derivatives, Frazetta Properties could pursue an infringement claim based on the preexisting material derived from their earlier, copyright-protected original Death Dealer II and V artworks.

When a copyright owner produces an unregistered derivative and that derivative is copied, the owner can bring an infringement claim based on the preexisting material that came from the earlier, registered work. *Montgomery*, 168 F.3d at 1292. In *Montgomery*, the Eleventh Circuit held that the defendants infringed by copying a derivative computer program, even though the derivative program was unregistered. *Id.* The infringement claim was based not on the

unregistered derivative, but on the earlier, registered work. The claim was successful because the derivative program incorporated over 70% of the source code from the copyright-registered work. *Id.*

Here, Defendants do not contest that Mr. Frazetta produced both the original Death Dealer artworks and the book cover art. And the undisputed evidence shows that the book cover art incorporates far more than 70% of preexisting material from the original Death Dealer II and V artworks. *Compare* Dkt. 1 ¶ 37 *to* Dkt. 67-1 at 68, 71. As a result, even if a jury found that the book covers were derivative works, Frazetta Properties could bring a successful infringement claim based on the copyright registration it does own. Defendants' Second Motion for Summary Judgment is denied as to this claim.

## C. The 2010 License Agreement

Finally, Defendants ask the Court to rule that their use of the *Death Dealer* cover art is protected by a prior licensing agreement, "Frazetta Endorsement & Trademark License Agreement" ("2010 Agreement"). Dkt. 111 at 7–8. But the Court cannot so rule.

The 2010 Agreement, in relevant part, grants Defendant Vanguard Publishing a license for:

> One (1) book entitled "The Definitive Frazetta Reference" by James Bond and David Winiewicz, Ph.D. (which has been previously published by Licensee). No royalties or sales reports are due Licensor or the artist Frank Frazetta on this title. Licensee has the right to

> update, revise text, replace images, re-design and publish this
> FRAZETTA Book as Licensee sees fit.

Dkt. 87-2 at 18; Dkt. 111 at 8. The interpretation of copyright licensing agreements, as with other contracts, is a question of state law. *Ferox, LLC v. ConSeal Int'l, Inc.*, 175 F. Supp. 3d 1363, 1370 (S.D. Fla. 2016) (citing *Utopia Provider Sys., Inc. v. Pro–Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1328 (11th Cir.2010)). Under Florida law, "[t]he cardinal rule of contractual interpretation is that when the language of a contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with the plain meaning." *Advanzeon Sols., Inc. v. State*, 321 So. 3d 911, 915 (Fla. 1st DCA 2021) (citation omitted).

The plain language of the 2010 Agreement states that Defendants have the right to publish *The Definitive Frazetta Reference*, including the right to re-publish revised or re-designed editions of the book. Therefore, whether this license covers Defendant's publication of *Frazetta Book Cover Art* depends on whether that title is a revised edition of *The Definitive Frazetta Reference*. Because this is an affirmative defense, Defendants would bear the burden of proving that *Frazetta Book Cover Art* is a reprint or revision of *The Definitive Frazetta Reference. In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

Defendants have not put forth evidence showing this. They entered *Frazetta Book Cover Art* and *The Definitive Frazetta Reference* as exhibits (Dkts. 67-1, 102), but provided no other factual argument that the two are different versions of

the same book. A comparison of the two books supports the opposite conclusion. The two have different titles and different authors. *The Definitive Frazetta Reference* takes a broad look at Mr. Frazetta's work, while *Frazetta Book Cover Art* focuses (unsurprisingly) on book covers. Most notably, the copyright page of *Frazetta Book Cover Art* indicates that its first printing was April 29, 2022. Dkt. 67-1 at 4. In contrast, *The Definitive Frazetta Reference* was first printed in 2008, with a revised edition in 2010. On this evidence, a rational trier of fact could find that *Frazetta Book Cover Art* is an entirely different book. Based on its plain language, the 2010 Agreement covers only *The Definitive Frazetta Reference* and subsequent editions. Thus, Defendants' argument for summary judgment fails.[1]

Under a separate theory, Defendants argue that the 2010 Agreement should extend a license to publish the 2022 *Frazetta Book Cover Art* as a derivative of the 2008/2010 *The Definitive Frazetta Reference*. But license to use an original work does not, on its own, confer license to produce derivatives of that work. *See Andy Warhol Found. v. Goldsmith*, 598 U.S. 508, 526 (2023) (describing right to reproduce an original and right to prepare derivative work as distinct); *see also* 17

---

[1] The full title of *Frazetta Book Cover Art* is *"Frazetta Book Cover Art – Definitive Reference."* Dkt. 67-1 at 4. This title is not displayed prominently on the front of the book, nor on the book's spine. *Id.* at 1. Given the book's April 29, 2022 date of first publication, distinct subject-matter, and different authors, a rational jury could rule for Plaintiffs on this issue. *See Four Parcels of Real Prop., 941 F.2d at 143).*

U.S.C. § 103 (granting owners of copyright exclusive rights to produce derivative works).

The Court cannot rule as a matter of law that the 2010 Agreement confers a license to publish the Death Dealer artwork in Defendants' 2022 *Frazetta Book Cover Art* book. Defendants' Motion is denied on this ground.

Based on the foregoing, the Court grants Defendant's Second Motion as to Heidi and Holly Frazetta's ownership of the copyright registration for Death Dealer II and V. The rest of the Second Motion is denied.

## II.    Plaintiff's Motion for Summary Judgment

Plaintiffs moved for summary judgment, asking the Court to rule as a matter of law on all Counts and each affirmative defense. Dkt. 79 at 10. Prior to the Court's ruling on the Motion, Defendants filed a superseding Amended Answer (Dkt. 107). *See Pintando v. Miami-Dade Housing Auth.*, 501 F.3d 1241, 1243 (11th Cir. 2007) ("As a general matter, an amended pleading supersedes the former pleading."). The Amended Answer added Defendants' prior licensing agreement argument, but otherwise asserted the same defenses which Plaintiffs addressed in their Motion for Summary Judgment. *Compare* Dkts. 14, 15 *to* Dkt. 107. As a result, the Court may consider Plaintiffs' Motion for Summary Judgment as if

19

directed towards the Amended Answer.[2] *See New York Life Ins. Co. v. Grant*, 57 F. Supp. 3d 1401, 1409 (M.D. Ga. 2014).

Plaintiffs ask for summary judgment on all counts and affirmative defenses. The Court will address these in order.

### A.  *Injunctive Relief*

Count I requests injunctive relief. This is a remedy, not a separate cause of action. *Exum v. Nat'l Tire and Battery*, 437 F. Supp. 3d 1141, 1158–59 (S.D. Fla. 2020) (collecting cases). A court may dismiss a count *sua sponte* without notice if it is "patently frivolous or if reversal would be futile." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). As it is "well-established that injunctive relief is not a proper claim for relief in and of itself," *GlobalOptions Srvs., Inc. v. N. Am. Trng Grp., Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015), reversal of the dismissal would be futile, and the Court dismisses Count I.

### B. *Direct Infringement*

Count II alleges direct copyright infringement. Dkt. 1 ¶¶ 83–90. To establish a prima facie case of direct infringement, Plaintiffs must prove: "(1) ownership of

---

[2] Even if the Amended Answer had mooted Plaintiffs' Motion, the Court could still issue summary judgment *sua sponte*. *See* F. R. Civ. P. 56(f). Both parties have had reasonable notice, as well as robust opportunities to fully brief each count and affirmative defense. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1203–04 (11th Cir. 1999) ("But so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, then granting summary judgment sua sponte is entirely appropriate."); *see also* Dkts. 79, 80, 87, 94, 95, 100, 111, 121, 122.

a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361. Plaintiffs put forth registration certificates that are verifiable through the U.S. Copyright Office, and Defendants offered no evidence contesting that proof. As explained more fully in section I(A), no rational juror could find that Plaintiffs failed to show Frazetta Properties' copyright ownership.

To show copying, Plaintiffs must demonstrate that the Death Dealer artwork and the incorporating book covers are "substantially similar." *Oravec v. Sunny Isles Luxury Ventures, Inc.*, 527 F.3d 1218, 1223 (11th Cir. 2008). Works are substantially similar if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.*

Defendants argue that "[t]he Death Dealer images presented in Plaintiffs' Complaint differ significantly from the Death Dealer II and Death Dealer V images reproduced in Defendants' Frazetta Definitive Reference." Dkt. 107 at 11. But the uncontested facts, drawn from Defendants' exhibits, show otherwise. *See supra* § I(B). An average lay person, comparing the images side-by-side, could not help but find the book cover art to be an appropriation of the Death Dealer II and V original artworks. *Id.*

Because no reasonable jury could find for Defendants, the Court grants summary judgment for Frazetta Properties on Count II as to artworks Death Dealer

II and V.[3] Plaintiffs submitted no evidence that Defendants copied Death Dealer VI, so summary judgment is denied as to that work.

*C. Contributory and Vicarious Infringement and Inducement of Infringement*

Counts III, IV, and V allege contributory infringement, vicarious infringement, and inducement of infringement. Dkt. 1 ¶¶ 91–115. "One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). One induces infringement by "distribut[ing] a device with the object of promoting its use to infringe copyright." *Id.* at 936–37. Plaintiffs allege that they are "continuing to investigate the possible involvement of unknown third parties, including illustrators, publishers, printers, co-writers and ghostwriters," Dkt. 1 ¶ 43, and that Defendants "induce[d] others" to infringe Plaintiffs' copyright, *id.* ¶ 112. But they allege no specific facts and do not put forth any evidence in support of these claims.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477 U.S. at 323–24. "After adequate time for discovery," *id.* at 323, Plaintiffs have failed to

---

[3] For reasons explained below, the Court will grant summary judgment for Frazetta Properties on each of Defendants' affirmative defenses.

factually support Counts III, IV, and V. Their Motion for Summary Judgment on these Counts is denied.

## D. Affirmative Defenses

Plaintiffs additionally seek summary judgment on Defendants' eleven affirmative defenses. The majority of the "affirmative defenses" attack Plaintiffs' prima facie case, rather than stating a reason that the Court should rule for Defendants even if Plaintiffs establish their case by a preponderance of the evidence. *See Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999); *In re Rawson Food Serv., Inc.*, 846 F.2d at 1349 ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."). The Court has already discussed the majority of the so-called "affirmative defenses" above. Holly and Heidi Frazetta's standing, Frazetta Properties' copyright ownership, whether the book covers copied the original Death Dealer artworks, and the validity of Frazetta Properties' copyright registration all go to Plaintiff's prima facie case.[4]

The Court has also discussed Defendants' arguments surrounding the 2010 Agreement at length above. *See supra* § I(C). The existence of a relevant licensing

---

[4] Defendants also stated that they "did not receive a cease-and-desist letter prior to Plaintiffs' commencement of suit." Dkt. 107 at 13. This is neither an affirmative defense nor an attack on Plaintiffs' case. 17 U.S.C. § 411 requires plaintiffs to register or preregister their copyrights prior to filing suit for infringement but says nothing about a cease-and-desist. 17 U.S.C. § 411(a); *see also Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881, 887 (2019) (describing registration as akin to administrative exhaustion).

agreement is an affirmative defense on which Defendants would bear the burden of proof at trial. As a result, Plaintiffs can prevail on summary judgment by showing that there is an absence of evidence to support the affirmative defense. *Celotex Corp.*, 477 U.S. at 325. As noted in Section I(C), Defendants did not put forth any real evidence showing that *Frazetta Book Cover Art* (the allegedly infringing work) is a revised edition of *The Definitive Frazetta Reference* (the work covered by the 2010 Agreement). And no rational jury could find such. Defendants' attempt to show that *Frazetta Book Cover Art* is allowed by prior agreement is exactly the type of factually unsupported argument that should be disposed of through summary judgment. *See Celotex*, 477 U.S. at 323–24. The Court grants summary judgment for Plaintiffs on Defendants' defense of prior license (Dkt. 107 at 12).

*E. Fair Use*

The remaining affirmative defense is fair use. Defendants assert that their publication of the book cover art "was a legally protected fair use" under Section 107 of the Copyright Act. Dkt. 107 at 11. The parties agree that there are no genuine issues of material fact precluding summary judgment on this issue, so the Court may rule as a matter of law. Dkt. 79 at 10; Dkt. 80; Dkt. 67 at 11.

Fair use balances the two goals of copyright law: incentivizing creativity and promoting scientific and artistic progress. *Andy Warhol Found.*, 598 U.S. at 528. The doctrine requires courts to balance four factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. No one factor is dispositive, and the inquiry is not "a mechanical 'add up the factors' approach." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1260 (11th Cir. 2014). Indeed, "the four statutory fair use factors may not 'be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright.'" *Andy Warhol Found.*, 598 U.S. at 550–51 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994)). In this case, the factors weigh against a finding of fair use.

i.   <u>Purpose and Character</u>

This first factor asks whether the secondary use of the copyrighted work "has a further purpose or different character," i.e., if it is transformative. *Andy Warhol Found.*, 598 U.S. at 525. This inquiry is not a yes/no question; instead, it is a "matter of degree," asking not only "whether," but also "to what extent" the

purpose or character of the secondary use is different. *Id.* at 529. The "central question" is "whether the new work merely supersedes the objects of the original creation ('supplanting' the original)." *Id.* at 528 (cleaned up). A use that "serve[s] as a substitute for the original or its plausible derivatives" is less likely to be fair use than one that "has a distinct purpose." *Id.* at 531. Commercial uses are also less likely to be fair. *Id.*

Defendants rely on the Second Circuit's decision in *Bill Graham Archives v. Dorling Kindersley Ltd.* to argue that their use of the Death Dealer II and V artworks was transformative. *Bill Graham* addressed the unlicensed use of seven images included in a coffee table book about the Grateful Dead. *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 607 (2d Cir. 2006). The Second Circuit explained that a "typical page of the book features a collage of images, text, and graphic art designed to simultaneously catch the eye and inform the reader." *Id.* The images were reproduced in a small size that was "inadequate to offer more than a glimpse of their expressive value." *Id.* at 611. They were included "only to enrich the presentation" in combination with "a prominent timeline, textual material, and original graphical artwork." *Id.* And finally, the images represented

"an inconsequential portion" of the book as a whole.[5] *Id.* For these reasons, the *Bill Graham* court found their use transformative. *Id.*

Defendants argue that the same analysis applies here. They allege that *Frazetta Book Cover Art* "contains numerous pages of text and graphics, captions with descriptions, commentary, historical information, and quotes" with a purpose that is "clearly for use as a biographic and reference resource." Dkt. 67 ¶ 55. But the book itself, entered into evidence by Defendants, belies this description. While the copyrighted images make up a small percentage of Defendants' overall book, this alone cannot make their use transformative. Defendants' book does not integrate the copyrighted works with other text, artwork, and content. *See* Dkt. 67-1. Instead, the two individual book covers take up almost an entire page each, only sharing space with short captions done in small, non-obtrusive font. *Id.* at 68, 71. The images at issue here are not so minimal that they offer only "a glimpse of their expressive value." *See Bill Graham*, 448 F.3d at 611. To the contrary, the Death Dealer II and V artworks are the primary focus of their respective pages in a large coffee table book. Dkt. 67-1 at 68, 71. The *Bill Graham* images "enhance[d] the reader's understanding of the biographical text." *Bill Graham*, 448 F.3d at 609–10.

---

[5] This characteristic is useful for determining if a work is transformative but should not be confused with the third factor (amount and substantiality of the copyrighted work used). *See Bill Graham*, 448 F.3d at 611.

But in the instant case, the images aren't used to enhance the text; rather, they are the sole focus of each page.

 

Dkt. 67-1 at 68, 71.

Defendants labeled *Frazetta Book Cover Art* a biography. Dkt. 67 at 18. But under the first factor, educational purpose is not dispositive and must be weighed alongside other characteristics. *See Andy Warhol Found.*, 598 U.S. at 531 n.6; *Cambridge Univ. Press*, 769 F.3d at 1262–64. Additionally, Defendants' book relays little in the way of education. The small accompanying captions tell only the title of the book, the date of publication, and the author. Dkt. 67-1 at 68, 71.

Thus, while Defendants' use of the images may have some different purpose than the original artwork, the degree of difference is small. In displaying the *Death Dealer* book covers, Defendants' primary purpose is to showcase the Death Dealer II and V artworks. This use supplants the object of the protected work and is therefore not transformative to any meaningful extent.

Defendants' use of Death Dealer V on the cover of *Frazetta Book Cover Art* is also not transformative. The *Frazetta Book Cover Art* cover uses Death Dealer V in a collage, and its small size offers a correspondingly smaller glimpse of its expressive value. Dkt. 67-1 at 1. But as a part of *Frazetta Book Cover Art*'s front cover, Death Dealer V is being used commercially to advertise Defendants' book. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985); *Latimer v. Roaring Toyz, Inc.*, 2010 WL 3747148, at *4 (M.D. Fla. Sept. 1, 2010) (images displayed inside magazine were "not intended to increase the sale of the magazine"). While commercial use is not dispositive, copying for commercial purposes is less likely to be fair use. *Andy Warhol Found.*, 598 U.S. at 531. Overall, this first factor weighs against a finding of fair use.

ii.   <u>Nature of the Copyrighted Work</u>

The second factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*,

510 U.S. at 586. Specifically, copying of "works that are highly creative" is less likely to be fair use. *Cambridge Univ. Press*, 769 F.3d at 1268. This is so because "[w]orks of fiction or fantasy" contain "the most originality and inventiveness." *Id.* Here, Death Dealer II and V are the type of highly creative, original, and inventive work of fantasy that is most protected by copyright law. This factor weighs against a finding of fair use.

 iii. <u>Amount and Substantiality Used</u>

"A taking may not be excused merely because it is insubstantial with respect to the *infringing* work." *Harper & Row Publishers, Inc.*, 471 U.S. at 565 (emphasis in original). Instead, a court should "examine the amount and substantiality of the portion used in relation to the *copyrighted work* as a whole." *Id.* at 564 (emphasis added). However, this factor weighs less when applied to certain visual works "where all or most of the work often must be used in order to preserve any meaning at all," as compared to "a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value." *Katz v. Google, Inc.*, 802 F.3d 1178, 1183–84 (11th Cir. 2015) (citation omitted).

In the instant case, Defendants used the entire portion of Death Dealer II and V in their allegedly infringing book. However, the nature of Defendants' use—featuring an image of the book covers in a compendium of Mr. Frazetta's book

cover art—would make it difficult to use just bits and pieces without losing all value. As a result, this factor is neutral.

    iv.   <u>Market Effects</u>

The final factor is a two-part inquiry into: "(1) the extent of the market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market." *Cambridge Univ. Press*, 769 F.3d at 1275 (quotations omitted). Courts ask whether the secondary use, "if everybody did it" would cause substantial economic harm, reducing the incentive to create. *Id.* at 1276. The market effects factor is related to the purpose and character inquiry. The less transformative the use, the more likely it "will serve as a substitute for the original or its plausible derivatives, shrinking the protected market opportunities of the copyrighted work." *Andy Warhol Found.*, 598 U.S. at 531 (quotation omitted).

This fourth factor weighs against a finding of fair use for the same reason that the first factor does: Defendants' use of the protected works supplants the purposes of the original. Defendants published a coffee table book in which Death Dealer II and V take up almost an entire page each. Plaintiffs currently market a coffee table book, in which Mr. Frazetta's art is reproduced one image per page. Dkt. 83-1 at 7. Defendants argue that their infringing use did not cause Plaintiffs

market harm because Plaintiffs are still selling their books for hundreds of dollars each. Dkt. 83 at 1–2. But this ignores the second half of the market-harm inquiry: if "everybody" engaged in conduct like Defendants', the market would be overrun with substitutes, and the incentive to create would be impaired.

The issue of supplanting is why Defendants' citation to *Warren Pub. Co. v. Spurlock* is inapposite. In *Warren*, the copyright owner "exhibited virtually no interest at all in utilizing his copyrights." *Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d. 402, 426 (E.D. Penn. 2009). Here, Plaintiffs operate a robust business selling coffee table books, art prints, and other merchandise featuring Death Dealer II and V. Dkt. 83 at 2. Even in *Warren*, where the plaintiff had neglected his copyrights, the court found the market effects factor weighed slightly against fair use. *Warren Pub. Co.*, 645 F. Supp. 2d at 428. Given the facts here, this "most important" factor weighs against fair use. *See Harper & Row Pubs.*, 471 U.S. at 566.

Three of the four fair use factors weigh against fair use, and the third is neutral. Defendants' use of Death Dealer II and V was not fair use.

## CONCLUSION

The uncontested evidence shows that Defendants infringed Frazetta Properties' copyright in Death Dealer II and V, and that use of the protected work was not allowed by prior license or permitted by the fair use doctrine. The

undisputed facts also demonstrate that Heidi and Holly Frazetta do not own the copyrights for Death Dealer II and V. Plaintiffs failed to support their claims of contributory and vicarious infringement, or their claim of inducement of infringement. And Plaintiffs' request for injunctive relief is a remedy, not a separate cause of action. The parties submitted no argument or evidence as to damages.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Plaintiff's Motion for Summary Judgment (Dkt. 79) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

(2) Defendant's Second Motion for Summary Judgment (Dkt. 111) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

(3) Plaintiffs Heidi Frazetta and Holly Frazetta are **DISMISSED**.

(4) Count I is **DISMISSED**.

(5) Defendants' first Motion for Summary Judgment (Dkt. 67) and Defendants' Motion to Strike (Dkt. 126) are moot.

(6) The parties shall submit briefs on a final judgment. These briefs must discuss the remedies sought in the Complaint at Dkt. 1 pages 24–26. This brief is due within twenty-one (21) days of the date of this order.

**ORDER TO MEDIATE**: In light of this Order, if the parties are still at an impasse, the parties must participate in a half-day mediation (zoom is permissible) within sixty (60) days of the below date.

**DONE AND ORDERED** at Tampa, Florida, on February 9, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record