## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

FRAZETTA PROPERTIES, LLC,

                                      **PLAINTIFF'S MOTION FOR**
                                      **SANCTIONS AND DISMISSAL AND**
                                      **MOTION FOR SUMMARY**
                                      **JUDGMENT**

Plaintiff,

                                      Case No. 8:22-cv-00581-WFJ-AEP

v.

                                      HONORABLE JUDGE JUNG

JESSE DAVID SPURLOCK AND

VANGUARD PRODUCTIONS, LLC

Defendant(s).

### PLAINTIFF FRAZETTA PROPERTIES, LLC'S MOTION
### FOR SANCTIONS AND/OR MOTION FOR SUMMARY JUDGMENT

Plaintiff Frazetta Properties, LLC files this Motion for Sanctions and Motion for Summary Judgment against Defendants Jesse David Spurlock and Vanguard Productions.

## I.      RELIEF SOUGHT

1.    Plaintiff seeks Sanctions and Dismissal for the bad faith act of creating a Forged Document that constituted a fraud on the court, which the Honorable Judge Jung relied upon to reverse the Summary Judgment entered against Defendants.

2.      The Forged Document was attached to Defendant Spurlock's Affidavit [DIN 95, exhibit 4] and was the primary, if not exclusive argument in Defendant's Renewed Motion for Reconsideration.

3.      Frazetta Properties LLC has evidence that shows Defendant Spurlock executed an Affidavit [DIN 95] with a forged document ("Forged Document" or "2015 Spurlock Document") attached to his Affidavit as its Exhibit 4 with the forged signatures of Holly Frazetta, William Frazetta and Heidi Frazetta ("Frazetta Family").

4.      As stated in each of their Affidavits, the Frazetta Family had never seen the document and did not sign it and it appears their signatures were copied from the Frazetta 2-Book Publishing agreement.

5.      Defendants' first reference to the Forged Document was made by Defendant Spurlock at the end of Paragraph 16. "See, DIN 87-2, p. 18/23 (emphasis added); and Ex. 4" that Defendants ("Renewed Motion to Reconsider") [DIN 95-4}. Emphasis added.

6.      The Honorable Judge Jung entered the Order granting Summary Judgment in favor of Frazetta Properties against Defendants." [DIN 128]. The Defendants filed a Motion for Reconsideration, which the Honorable Judge Jung denied. [DIN 161]

7.      Defendants filed a [Second] Renewed Motion for Reconsideration [DIN 176] and based their argument therein virtually exclusively on the Forged Document.

8.      On August 14, 2024, the Honorable Judge Jung held a hearing on Defendants Renewed Motion and Defendants argued the Forged Document constituted a contract or semi contract and that Plaintiff had not contested validity.

9.      There are at least two problems with that, (i) the Plaintiff did not know it was a Forged Document and (ii) Defendants apparently wished to turn their Motion into a Request for Admission, which they did not do, and that argument lacks merit.

10.      During the Hearing, Honorable Judge Jung said he did not recall seeing the Forged Document before and did not know how he missed it, he next asked undersigned counsel whether he had seen the Forge Document before.  My response was I had not seen it, prior to this lawsuit, and the Forged Document had not been produced during the jury trial in Sarasota County, FL.  As a result of the Renewed Motion, hearing, argument thereon and, most importantly, the Forged Document, the Honorable Judge Jung stated he would GRANT the Defendants' Renewed Motion. [DIN 184]

11.      However, months after the Hearing, Plaintiff found the signatures to be familiar, researched the matter and compared signatures of Holly Frazetta, William Frazetta and Heidi Frazetta to several documents and selected the signatures that appeared to be matches for those on the Forged Document and engaged an expert to exam the signatures, and the result of his work he determined the Forged Document was a forgery and the signatures were forged by copying and pasting them from the 2010 Frazetta 2 Book Publishing Agreement onto the document Spurlock forged.

12.     Mr. Harold McFarland analyzed the signatures and documents, and explained in his Affidavit and report that their signatures were forged and how he made the determination they had been forged.

13.     Mr. McFarland, an expert engaged by Plaintiff, reviewed the signatures of all signatories, Holly Frazetta, Heidi Frazetta, William Frazetta and Defendant Spurlock and determined that all were copied from the 2010 Frazetta 2 Book Publishing Agreement and pasted / copied onto the Forged Document.  No signatures were originally (wet) signed, or no signatures were electronically signed.  See Harold McFarland Affidavit, Exhibit 4.

14.     Mr. McFarland is prepared to testify regarding the signatures and how they were copied and pasted.

## II.     FACTS AND STATUS

15.     On March 13, 2022, Frazetta Properties, LLC filed this lawsuit against Defendants Jesse David Spurlock and Vanguard Productions LLC for their copyright infringement of visual art, DEATH DEALER II and DEATH DEALER V, registered with the Copyright Office showing Frazetta Properties, LLC.  Neither Plaintiff nor Defendants requested a jury trial.

16.     In his Order dated February 9, 2024, the Honorable Judge Jung held that "The uncontested evidence shows that Defendants infringed Frazetta Properties' copyright in Death Dealer II and V, and that use of the protected work was not allowed by prior license or permitted by the fair use doctrine."  [DIN 128 at pp. 32-34]

17.     On April 9, 2024, sixty days (two months) after the Honorable Judge Jung entered summary judgment against them, Defendants filed a Motion for Reconsideration [DIN 154], which the Honorable Judge Jung denied. [DIN 161]

18.     On July 9, 2024, one hundred fifty-one (151) days after the Court entered summary judgment against them, Defendants filed a Renewed Motion for Reconsideration, and the basis of the Renewed Motion was the Forged Document it is inexplicable that a document now being deemed so important was ignored and not referred to until the Defendants decided to use it in the Renewed Motion. **[DIN 95, 95-4].**

19.     In his Renewed Motion, Defendant Spurlock referred to the Forged Document as the "Parties' January 13, 2015, letter," he did not explain what he meant by letter.

20.     In paragraph 22 on page 5 of their Renewed Motion, Defendants contended they were permitted to reproduce the Copyrighted images:

"22. The 2015 letter [forged document] unambiguously acknowledges the Parties' meeting of the minds as to the terms of the 2010 Licensing Agreement, resulting in the absence of any genuine dispute of material issue of fact." [DIN 176]

21.     The Forged Document was an unsuccessful attempt to deceive the Court into believing the Forged Document was something more.  Defendants make the false statement that the Forged Document demonstrates "the Parties' meeting of the minds as to the terms of the 2010 Licensing Agreement."

22.     Defendants' attempt to plant the seed in the reader's mind that the document is quasi contract and, even if the Forged Document was authentic,

Defendants still must convince the Court that the document, which was not signed by all Frazetta Family members, but addressed to their brother, Frank Frazetta, Jr., sibling of the Frazetta Family members intended anything.

23.    Defendants claim the Forged Document shows it "was signed by David Spurlock and Frazetta Properties manager/members William R. Frazetta, Holly Jean Frazetta and Heidi Lee (Frazetta) Grabin, and addressed to publishers of Dark Horse Comics and Diamond Comics Distributors," however, Defendants intentionally omit that the Forged Document also "was addressed" to Frank Frazetta, Jr.

24.    The Defendants fail to show the document was sent to anyone and yet signed by everyone on the same day.  How did it benefit the Frazetta Family, its purpose, and comments by the Frazetta Family, why did Frank Frazetta, Jr. not sign it, why was it addressed to him, were the three Frazetta Family members together when they signed it, how did Holly Frazetta, William Frazetta and Heidi Frazetta sign it on the same page on the same day?  Why would the Frazetta Family members give up all right to engage other book publishers to create books?

25.    Defendants contend the parties' intent was to show a meeting of the minds as to the terms of the 2010 Licensing Agreement, but they fail to complete their explanation as to why it was required when they had the Agreement in their possession and its terms were complete.  Defendants fail to explain why they relied on the 2010 Agreement in their defense in this lawsuit, when they had filed suit in Sarasota County Circuit Court against Frazetta Properties for their termination and breach.

26.     The Forged Document served the purpose to create a doubt of a material fact. It is an explanation searching for a reason to exist.

27.     Why was it addressed to Frank Frazetta, Jr., a member of Frazetta Properties, LLC, instead of having him sign the Forged Document?

28.     The most reasonable explanation is that Defendants intended to use the Forged Document for purposes of this lawsuit and Defendant Spurlock did not consider the many issues his poorly done forgery would create.

29.     By trying to convince the Court the Forged Document is something more than a self-serving, forged and brazen attempt to perpetrate fraud on this Court, Defendant Spurlock's acts cast doubt on the truthfulness of their entire case.

30.     A signed contract should not require bolstering by a document subsequently signed nearly five years later.

31.     The Hearing was primarily, if not exclusively, based on that document.

32.     The Forged Document was not listed in Defendants' Rule 26 Disclosures until it was filed and listed on Defendants' Rule 26 Disclosures on December 5, 2024. Prior to that date, Defendants had made no Rule 26 Disclosures.

33.     Defendants did not list the Forged Document as constituting an affirmative defense or as the basis for an affirmative defense.

34.     It was as though it did not exist.

35.     Other than the Forged Document, the Honorable Judge Jung provided no reason for Granting the Renewed Motion to Reconsider.

36.     Judge Jung did not know the signatures of Holly Frazetta, Heidi Frazetta and Willaim Frazetta on the Forged Document were copied and pasted.

37.     Only Defendants knew the document they had submitted to the Court was forged and fraudulent.

## A.    <u>FORGED DOCUMENT</u>

38.     In the affidavit, Spurlock identified Exhibit 4 (to his affidavit in rebuttal to Joe Weber's affidavit) [DIN 95] as the "Vanguard Frazetta Properties Exclusive Publishing Agreement 2015," but that is a fabrication as the document does not have that title and does not have the requirements to be considered a contract:

a.  No parties to the purported Agreement only signatories to a document that did not require signatories.

b.  No offer, acceptance, or consideration.

c.  No term or termination.

d.  No explanation as to how the Forged Document was signed by all parties the day before it was created as a PDF, when even the Frazetta 2 Book Publishing Agreement was signed by William Frazetta on one page and the signatures of Holly Frazetta and Heidi Frazetta signed another page.

e.  No explanation as to why the signatures of Holly Frazetta and William Frazetta were images that were copied from the Frazetta 2 Book Publishing Agreement onto the Forged Document.

f.  No explanation as to why it was a single page long lacking all the elements to be considered a contract.

g.  No explanation as to why it was created and why it was addressed to Frank Frazetta, Jr., Dark Horse, and Diamond Comic Distributors, with no address for any of them.

39.  The Forged Document is self-serving and ambiguous as to purpose other than to serve as the basis to create a reasonable doubt as to a material fact and it fails at that.

40.  Any benefits realized would accrue solely to the Defendants.

41.  It would be impossible to enforce as a contract and would foreclose Frazetta Properties and not only prevents the creator's children from being paid for works created by Defendants and it precludes them from entering into agreements with other book publishers.

42.  The copied signatures and pasted signatures to the Forged Document appear to have been taken from the Frazetta 2 Book Publishing Agreement which is attached as Exhibit 2 to David Spurlock's Affidavit. [DIN 87].

43.  The signatures on the Frazetta 2 Book Publishing Agreement were originally signed by Holly Frazetta, William Frazetta and Heidi Frazetta.

**B.  AFFIDAVITS OF HOLLY FRAZETTA, WILLIAM FRAZETTA AND HEIDI FRAZETTA**

44.  Regarding the Forged Document and authenticity of the signatures on it, summaries of the sworn affidavits provided by the Affiants Holly Frazetta, William Frazetta, Heidi Frazetta ("Frazetta Family") and Joe Weber, Frazetta Properties company representative, follow.

a. Holly Frazetta stated that she had not seen the document before and she did not sign it. She stated her last name was "Taylor" when she signed the 2 Book Publishing in March 2010, but she changed her last name back to Frazetta in September 2010, and she would never have signed Taylor five years after her divorce and the signature block shows her last name as Holly Jean Frazetta "Taylo" which was never her last name. <u>See</u> Holly Frazetta Affidavit ¶¶ 6,7, 8, 9, 10 and 11.

b. William Frazetta states that he had not seen the document before and he did not sign it. He reviewed the Forged Document and 2010 2 Book Publishing Agreement. The two signatures are identical. They even have the same three random dots above his signature. He would never be able to sign identically on two separate documents five years apart. <u>See</u> William Frazetta Affidavit ¶¶ 11, 12, 15.

c. Heidi Frazetta stated that she had not seen the document before and she did not sign it. <u>See</u> Heidi Frazetta Affidavit. The signature on the Forged Document was not hers but it appears to be copied from 2-Book Publishing Agreement. The signature is misaligned and she has never signed her name as shown on the Forged Document and she never signed her name as shown on the Forged Document. <u>See</u> Heidi Frazetta Affidavit. ¶¶ 15, 17, 18, and 19.

d. Joe Weber explains in his affidavit that he had reviewed all documents from the Sarasota County Jury Trial and the Forged Document was not

produced in that case and he reviewed the documents, including court

filings in this case, and the document was not produced until attached to

Spurlock's affidavit.  [DIN 95-4]  See Joe Weber Affidavit. ¶¶ 6, 10, and

11.

## C.    AFFIDAVIT OF HOWARD MCFARLAND

45.    Howard McFarland states in his sworn Affidavit, including its four

exhibits to his Affidavit, his training, experience, qualification to testify as an expert

witness and the findings of his examination of the documents.    See Howard

McFarland Affidavit.    In his report on examination of contract document, Mr.

McFarland explains his methodology and analysis and how he concluded the

signatures on the Forged Document were copied.    See Mr. McFarland's Affidavit

including Exhibits.

46.    Mr. McFarland examined the Forged Document and 2010 agreement.

The text within quotation marks below represent part of his findings taken directly

from his Report on Examination of Contract Document ("Report").    See Mr.

McFarland's Affidavit, Exhibit 4.

### "EXECUTIVE SUMMARY

I was able to examine the signatures on the 2015 agreement and the 2010
agreement. While it was not necessary to examine the 2010 agreement in order
to determine that all the signatures on the 2015 agreement were cut and paste
copies of signatures and none were original signatures, we were able to use the
artifacts and other features to determine that these signatures all appear to have
been copied from that document and pasted onto the new one.

It is my opinion that none of the four signatures on the 2015 document are
originals, all were copied from elsewhere and pasted onto this document and
they appear to have been copied from the 2010 agreement."

<u>See</u> Howard McFarland's Affidavit, Exhibit 4, p. 1, under heading titled, "Executive Summary"

## "FINDINGS FROM THE DOCUMENT EXAMINATION

### *Document Description*

We were provided with five files that included the 2010 and 2015 Agreements and copies of the signatures of Heidi Frazetta, Holly Frazetta and William Frazetta taken from the 2010 Agreement. The particular document under investigation is the document with the heading "FRAZETTA PROPERTIES LLC & VANGUARD PUBLISHING" and dated Jan 13, 2015 referencing Exclusive Frazetta Publishing Rights. At the bottom right it is noted as "EX. 4".

### *Document Properties*

The metadata properties contained within the document indicate that it was last saved out of the Adobe Photoshop for Macintosh Program version 24.4. That program did an image conversion onto the document. Adobe Photoshop is used primarily for image alterations."

<u>See</u> Howard McFarland's Affidavit, Exhibit 4, p. 1, under heading titled, "Findings from the Document Examination."

47.    Mr. McFarland analyzed and examined the signature of William Frazetta on the 2010 Agreement and the Forged Document.   The following is excerpted from page 3 of the Report.

### *"Examination of the signature of William Frazetta*

The first thing of note is that the signature is actually a JPEG image file. This is an image that was pasted onto the document. The blue box on the left side represents the actual image that was pasted onto the document.



In addition to the image, you can see that the way It was pasted onto the signature line was not an exact positioning and the actual signature line is slightly above where this signature and its line are located.



This image appears to have been cut from the original 2010 document.



The strokes are identical, the strokes extending below the line match exactly on the printed name below, and even the wide spot on the right side of the signature line appears in both places."

See Howard McFarland's Affidavit, Exhibit 4, p. 3, under heading titled, "Examination of the signature of William Frazetta.

48.    Mr. McFarland's analyzed and examined the signature of Holly Frazetta on the 2010 Agreement and the Forged Document.  The following is excerpted from page 4 of the full Report.

***"Examination of the signature of Holly Jean Frazetta***

Again, this signature is actually a pasted JPEG image file. Again, the blue box on the left shows the borders of the actual image file that was pasted onto the document.



On this one the image that was copied from someplace else did not get the entire name. On the right-hand side you can see that the letter "a" is partially cut off and the short line outside the blue border is actually the signature line on the document. I was able to confirm this by removing the image. It also cut off the last letter of her name under the signature. Also the image cut off the bottom part of the "g" in manager.

This appears to have been lifted off the 2010 document with some modification to remove the labels for "Name" and "Title". This is exactly what you can do with Photoshop and would explain why it was last altered using Photoshop.

You can see that the top left flourish of the "H" has a pen skip in both of them of exactly the same nature. The strokes going through the letters underneath occur at exactly the same places and with the same weight. There are artifacts In the original that also appear in the 2015 document signature. For example, there is a small mark on the right-side of the "F" between the top and middle lines and that artifact shows up in the other signature also.

And finally, the "r" in Taylor is cut off in the pasted Image where the cut portion that was pasted into the document did not go to the right far enough to get it."

<u>See</u> Howard McFarland's Affidavit, Exhibit 4, p. 4, under heading titled, "Examination of the signature of Holly Jean Frazetta.

49.    Mr. McFarland analyzed and examined the signature of Heidi Frazetta on the 2010 Agreement and the Forged Document.  The following is excerpted from page 4 of the full Report.

### *Examination of the signature of Heidi Lee Grabin*
Heidi's signature is once again an image file that has been pasted onto the document



Once again, this appears to have been lifted from the 2010 document signature.



The original signature shows that the last flourish on her name rises up and back but on the signature on the 2015 document it shows it as a straight line. But that is also how we know that this was taken from the original signature because you can see the left over vestiges of that upper curl. The top right of the blue border to the image shows the last piece of curl. The additional line to the right is the original signature line as confirmed by removing the Image from the document.

And again, the lower flourishes of the name all intersect the typed name In exactly the same places beneath. Other artifacts also appear in both signatures. For example, the dot between the upper loop and lower loop of the letter "I" and the artifact just to the right of the lower case "I".

<u>See</u> Howard McFarland's Affidavit, Exhibit 4, p. 6, under heading titled, "Examination of the signature of Heidi Lee Grabin.

50.    Mr. McFarland also analyzed and examined the signature of Defendant Spurlock on the 2010 Agreement and the Forged. Document.   The following is excerpted from page 5 of the full Report.

### *Examination of the signature of J. David Spurlock*

This signature was embedded using a slightly different technique. This signature was "flattened" into the document so that on clicking the signature the blue line does not appear around the Image file that was pasted there. However, the program still recognizes it as an image.



The image appears to have lifted directly from the 2010 document.

Again, notice that all the flourishes below the signature line occur at exactly the same place. There are also artifacts that appear in both signatures. Note the mark before the letter "D" and the small dot inside the bottom of the letter "S". The signature on the 2015 document appears to have had a typical smoothing algorithm run against it to make it look more fluid.

And again, this would explain the need for the contract to be edited in photoshop. The "d/b/a" and word "Productions" are easily removed.

<u>See</u> Howard McFarland's Affidavit, Exhibit 4, p. 5, under heading titled, "Examination of the signature of J. David Spurlock."

51.     The evidence shows that *Mr. Spurlock did not originally sign his own name*, but copied his signature from the Agreement and pasted it onto the Forged Document.

52.     Mr. McFarland's analysis is comprehensive and he explains that all signatures on the Forged Document were copied from the 2010 Agreement and pasted onto the Forged Document, which explains how all four signatures are on a PDF document and how none of the signatures is on another page and attached on an additional page to the Forged Document.

53.     Defendant Spurlock lost his case <u>Spurlock, et al. v. Frazetta Properties, LLC</u> 2019 CA 001718 NC in Sarasota County Circuit Court after a three-day jury trial.

54.     In that case, Defendant Spurlock alleged that Frazetta Properties had wrongfully terminated the 2010 Agreement, including the Frazetta 2-Book Publishing Agreement.

55.     Despite suing Frazetta Properties for wrongfully terminating the 2010 Agreements, he claimed in this lawsuit those agreements are still in effect.

56.     Defendant Spurlock knowingly fabricated the Forged Document with the intention of fraudulently deceiving the Court that it was an original document, which he used as a "Hail Mary" after he had lost the trial in this case on Summary Judgment.

57.     His fraud on the Court wasted this Court's valuable time and the time and resources of Frazetta Properties.

58.     I cannot state with certainty that his attorney, Ms. Williams, knew of this deception, but, of course, the Court has the authority to conduct its own investigation into this matter.

### III.    <u>MEMORANDUM OF LAW AND LEGAL ARGUMENT</u>

59.    Plaintiff seeks sanctions including striking the Defendants' pleadings, entry of a summary judgment, finding bad faith and dismissal of the case with prejudice and award Plaintiff's attorneys fees, mediator's fees, costs and expenses incurred since the Defendants submitted the fraudulent document raised in their Renewed Motion for Reconsideration and for attorneys' fees, mediator's fees, other fees, costs and expenses incurred from the filing of this lawsuit and entry of the Court's Order GRANTING this Motion for Sanctions against Defendants Spurlock and Defendant Vanguard, and Summary Judgment against them pursuant to the Court's Inherent Authority and other basis that the Honorable Judge Jung deems appropriate in this matter, including Rule 11 and 28 USC 1927.

60.    The Court has several ways to enter sanctions against Defendants, jointly and severally, and/or against their attorney.

61.    It is difficult to imagine a worse type of bad faith than this intentional fraud on the Court.

62.    The Court may sanction the activity pursuant to Federal Rule of Civil Procedure 11, 28 USC 1927, and, the broadest and most powerful sanction mechanism, pursuant to the Court's Inherent Authority.

### A.    <u>MOTION FOR SANCTIONS</u>

63.    There are cases that were heard in the United States District Courts of Florida.  The United States District Court for the Southern District of Florida heard a case that is on point with this action.  It was the case of <u>Stonecreek-AAA, Ltd. Liab.</u>

Co. v. Wells Fargo Bank N.A., No. 1:12-cv-23850-COOKE/TUR, 2014 U.S. Dist. LEXIS 189048 (S.D. Fla. May 13, 2014),

64.    The Court considered Defendant Wells Fargo's Motion to Dismiss with Prejudice and for Sanctions because Plaintiff Stonecreek-AAA, Ltd. Liab. Co. ("Stonecreek") was alleged to have fabricated evidence upon which Plaintiff Stonecreek based its claims against Defendant Wells Fargo Bank ("Wells Fargo").

65.    Wells Fargo claimed that Stonecreek fabricated evidence because signatures that purported to execute an Engagement Letter ("Letter") between Wendy Melton ("Melton"), representative of Wells Fargo and Alfredo Socorro ("Socorro") a principal of Stonecreek, and on the authenticity of Socorro's signature that purported to execute the Assignment of the Engagement Letter ("Assignment") that assigned Socorro's rights under the Letter (collectively Letter and Assignment,  "WF Forged Documents"). Stonecreek maintained the signatures were authentic despite overwhelming evidence to the contrary.

66.    The Court ruled as follows.

"The record was replete with clear and convincing evidence that supported Wells Fargo's claim that Stonecreek fabricated evidence and thus, a finding of fraud on the Court." Id. at 5.

67.    The Court GRANTED Wells Fargo's Motion and dismissed the case with prejudice.

68.    In its decision as to the types of sanctions to impose, the Court analyzed the three primary sources from which Federal courts derive their power to sanction an attorney, law firm, or party:

19

"Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent power of the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (discussing the court of appeals' consideration of the three sources of sanctions). Each source sanctions different conduct and a different wrongdoer. Rule 11 governs any pleading, written motion, or other paper filed with the court, and applies equally to attorneys, law firms, and parties. Fed. R. Civ. Pro. 11(b). The sanctions in 28 U.S.C. § 1927, on the other hand, cover more misconduct than Rule 11, though the scope of sanctionable conduct often overlaps, and apply only to attorneys and others persons admitted to conduct cases in U.S. courts. Danielle Kie Hart, *And the Chill Goes on — Federal Civil Rights Plaintiffs Beware: Rule 11 Vis-À-Vis 28 U.S.C. § 1927 and the Court's Inherent Power*, 37 LOY. L.A. L. REV. 645, 653 (2004). "'[A]cts which degrade the judicial system,' including 'attempts to deprive the Court of jurisdiction, *fraud*, misleading and lying to the Court,'" however, are sanctioned through the court's inherent [*3] power. *Chambers*, 501 U.S. at 42 ("The wielding of that inherent power is particularly appropriate when the offending parties have practiced a fraud upon the court.")." (Emphasis in original) Id. at 2-3.

69. The Defendants' creation and submission of the Forged Document demonstrates bad faith and fraud upon the court.

70. Although The Court should sanction Defendants Spurlock and Vanguard; Mr. Spurlock created the Forged Document and he must be held responsible for it. As for Defendant Vanguard, it would be *ultra vires* but there is no evidence of its involvement other than Mr. Spurlock being its sole member.

71. The Court may independently inquire into Defendants' attorney's conduct.

WHEREFORE, pursuant to the Court's inherent authority, Plaintiff Frazetta Properties, LLC respectfully demands the Court find the document to be a forgery, the Court strike the Forged Document and Defendants' pleadings, the Court enter judgment against the Defendants with prejudice and award all fees, including

attorneys' fees, expert witness fees, mediator's fees and all other costs and expenses
incurred by Plaintiff to be paid by Defendant Jesse David Spurlock and for such other
and further relief as the court deems appropriate and justice requires.

### B.    <u>MOTION FOR SUMMARY JUDGMENT</u>

72.    Should the Court GRANT the Motion for Sanctions but disregard
Defendants' Bad Faith and Fraud on the Court but not dismiss the lawsuit with
prejudice, Plaintiff moves the Court for Summary Judgment.

73.    The Forged Document created by Defendant Spurlock is the sole basis
the Court reversed its Order entering Summary Judgment against Defendants.

74.    Since the Forged Document cannot be given weight by the Court, the
Court has no reasons to continue the trial and should enter the Order on Summary
Judgment again entered on February 9, 2024.

75.    Defendant Spurlock's duplicity and intent to deceive the Court is shown
by the Forged Document and the conduct of Defendant Spurlock in this case.

76.    Mr. Spurlock fails to provide an explanation as to why the document
was signed and the benefits to Holly Frazetta, William Frazetta and Heidi Frazetta.

77.    Federal courts derive their power to sanction any attorney, law firm, or
party from three primary sources: Rule 11 of the Federal Rules of Civil Procedure, 28
U.S.C. § 1927, and the inherent power of the court. *Chambers v. NASCO, Inc.*, 501 U.S.
32, 41, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (discussing the court of appeals'
consideration of the three sources of sanctions). Each source sanctions different
conduct and a different wrongdoer. Rule 11 governs any pleading, written motion, or

other paper filed with the court, and applies equally to attorneys, law firms, and parties. Fed. R. Civ. Pro. 11(b).

78.    As cited above, the United States District Court for the Southern District of Florida had a case with similar issues. **See** Stonecreek-AAA, Ltd. Liab. Co. v. Wells Fargo Bank N.A., No. 1:12-cv-23850-COOKE/TUR, 2014 U.S. Dist. LEXIS 189048 (S.D. Fla. May 13, 2014)

79.    A forged document had been created and was used to perpetrate fraud on the Court.

80.    In the case, the Court reviewed the Court's inherent authority, Rule 11 and 28 U.S.C. § 1927.

The sanctions in 28 U.S.C. § 1927, on the other hand, cover more misconduct than Rule 11, though the scope of sanctionable conduct often overlaps, and apply only to attorneys and other persons admitted to conduct cases in U.S. courts. Danielle Kie Hart, *And the Chill Goes on — Federal Civil Rights Plaintiffs Beware: Rule 11 Vis-À-Vis 28 U.S.C. § 1927 and the Court's Inherent Power*, 37 LOY. L.A. L. REV. 645, 653 (2004).

"'[A]cts which degrade the judicial system,' including 'attempts to deprive the Court of jurisdiction, *fraud*, misleading and lying to the Court,'" however, are sanctioned through the court's inherent [*3] power. *Chambers*, 501 U.S. at 42 ("The wielding of that inherent power is particularly appropriate when the offending parties have practiced a fraud upon the court.").

Stonecreek-AAA, Ltd. Liab. Co. v. Wells Fargo Bank N.A., No. 1:12-cv-23850-COOKE/TUR, 2014 U.S. Dist. LEXIS 189048, at *2-3 (S.D. Fla. May 13, 2014)

81.    In Stonecreek, the Court found the document had been fabricated and constituted Fraud on the Court.

82.    The Court dismissed the case with prejudice, entered judgment against Stonecreek and awarded costs, fees and expenses to be paid by Stonecreek.

83.    That analysis should be applied to this case; however, in this case, so much time has been spent on this case, fees and costs incurred, and the Court's valuable time has been forever lost.

84.    The Defendants conduct is nothing less than the attempt to convince the Court through subterfuge that Defendants had a legitimate case.

85.    The Defendants should not have filed its Renewed Motion to Reconsider.

86.    Based on my knowledge of this case, I cannot state that Attorney Williams should be sanctioned, but she made very questionable filings and misrepresented evidence and documentary proof to the Court.

WHEREFORE, pursuant to the Court's inherent authority, Plaintiff Frazetta Properties, LLC respectfully demands the Court find the document to be a forgery, the Court strike the Forged Document and Defendants' pleadings, the Court enter judgment against the Defendants with prejudice and award all fees, including attorneys' fees, expert witness fees, mediator's fees and all other costs and expenses incurred by Plaintiff to be paid by Defendant Jesse David Spurlock and for such other and further relief as the court deems appropriate and justice requires.

Respectfully submitted,

**Merritt Law, PA**

/s/    *Jack W. Merritt*
Jack W. Merritt
Mediterranea Professional Park
690 S. Tamiami Trail
Osprey FL 34229

941.445.4841
office@merrittlaw.net
Plaintiff's Attorney

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that Plaintiff's Motion for Sanctions and Motion for Summary Judgment was filed on March 31, 2025, with CM/ECF, which provides it to Defendants' Attorney Williams.

Respectfully submitted,

Merritt Law, PA

/s/    *Jack W. Merritt*
Jack W. Merritt