Case 8:22-cv-00581-WFJ-AEP    Document 219-1    Filed 03/31/25    Page 1 of 25 PageID
1166
Case 8:22-cv-00581-WFJ-AEP   Document 87-2   Filed 11/01/23   Page 6 of 23 PageID 506

## FRAZETTA 2-BOOK PUBLISHING AGREEMENT

Terms of agreement entered into as of March 1, 2010, between J. David Spurlock dba Vanguard Productions (the "Publisher") with editorial office at 3300 Segovia St., Coral Gables, FL 33134, and Frazetta Properties, LLC, a Delaware limited liability company with an address of c/o Frazetta Management Corp., Attn: Rob Pistella, President, P.O. Box 74547, 9001 Broadstone Road, Richmond, Virginia 23236 ("Properties"). The purpose of this Agreement is to authorize and designate the Publisher with rights to publish two books on Frank Frazetta (the "Artist").

Properties hereby grants Publisher all rights to produce and release two (2) books (the "Books"): one (1) book of sketches by the Artist and one (1) book of photographs by the Artist. Each book is to include approximately 150 images and one full-page advertisement, if requested, and as designated by Properties. The tentative titles of the Books are: *The Frank Frazetta Sketchbook* and *The Photography of Frank Frazetta*, respectively. The authorship on both books shall be credited to "By Frank Frazetta & J. David Spurlock."

1.      RIGHTS: For good and valuable consideration the receipt and sufficiency of which is hereby acknowledged by Properties, Properties grants and assigns to Publisher the sole and exclusive right to print, publish, translate, copy, and sell the Books, including all works created by the Artist therein, in book form, and subject to the terms and conditions herein, to license others to do so solely for the Books during the terms of copyright, and all renewals and extensions of that copyright in the United States of America, and throughout the world. Properties also grants and assigns to Publisher on an <u>exclusive</u> basis, the supplementary rights described in Section 11 below, on the terms set forth in this Agreement, throughout the world. Properties agrees to not plan or produce a similar book or, books with similar title, with another publisher within two (2) years of each of the respective Publisher releases of the Books.

2.      DELIVERY: Properties shall deliver to Publisher one (1) copy of each illustration (drawings, paintings, photograph, or other graphic material) in final form and content satisfactory to Publisher (such satisfaction to be deemed if Properties has not received written or email notice from Publisher within ten (10) days of receipt of any material as to dissatisfaction by Publisher with such just delivered material), and/or allow Publisher access to scan and/or the loan of materials to be scanned for inclusion in the Books, on a schedule mutually agreed upon by Publisher and Properties. Publisher will arrange meetings at least two (2) weeks in advance with Properties. Meetings can take place on other schedules if agreed upon in advance by Properties and Publisher. Publisher agrees to collect a minimum of 33% (1/3) of the sketches for one (1) Book from outside sources including, but not limited to, fanzines, past auctions, and collectors.

Properties agrees to use its best commercially reasonable efforts to provide its share of the material including sketches, photographs, and life drawings at Properties' own

1

## Exhibit 1

A.A.S.

Vanguard 226. 006

Case 8:22-cv-00581-WFJ-AEP    Document 219-1    Filed 03/31/25    Page 2 of 25 PageID
1167
Case 8:22-cv-00581-WFJ-AEP    Document 87-2    Filed 11/01/23    Page 7 of 23 PageID 507

expense. In an attempt to boost sales, meant to benefit Properties and Publisher alike, health permitting, Artist agrees to participate in a minimum of three (3) hours of interviews for each of the two (2) Book projects, to be transcribed and edited for inclusion as text for each Book.

3. FAILURE TO DELIVER: If Properties does not deliver the material listed in Section 2 by the date specified in the schedule referred to in Section 2 (or at another mutually agreeable date, agreed to in writing by Publisher), or if the material is unsatisfactory to Publisher, after Publisher has timely given Properties notice of dissatisfaction under Section 2, and such failure of Properties causes Publisher to suffer loss of orders due to lateness, then Properties will within sixty (60) days of receipt of confirming documentation from Publisher, reimburse Publisher all actual expenses Publisher incurred in advertising, soliciting, publicizing, and promoting the Book, including any and all other actual expenses which are unique to the initial offering of the Book, up to ten thousand dollars ($10,000.00).

4.    PROOFS AND ALTERATIONS: Publisher will attempt to get Properties' approval on editorial and design content of each Book. If a mutual agreement cannot be reached in a timely manner, threatening the promoted release date, the Publisher retains the right to make final editorial and design decisions in an effort to not lose orders due to lateness. Properties agrees to allow Publisher to make any editorial changes, additions, or deletions that Publisher deems necessary. Publisher will send Properties pre-publication proofs of the Book, which Properties agrees to read, correct, and return promptly. Publisher will present the corrected proofs for inspection at Properties' request. Proofs may be produced by Publisher and supplied to Properties as digital PDF files.

5.    PUBLICATION: Publisher shall publish each of the two Books at Publisher's sole cost and expense, in a format, style and at a price that Publisher believes advisable. All Publisher decisions about format, style, design, editing, production specifications, number of copies printed, and pricing shall be final. Publisher reserves the right to publish each Book under the Publisher's imprint "Vanguard Productions" or under any other imprint of the Publisher, his affiliates or subsidiaries, but at all times to the authorship requirements set forth in the second paragraph at the beginning of this Agreement. Publication shall be within eighteen (18) months of Publisher's acceptance of the fully edited text and illustrations, including all additions and corrections Publisher may require Properties to make. Publisher's failure to publish within this period shall not be considered a breach of this Agreement if the delay is caused by circumstances beyond Publisher's control and Publisher so notifies Properties within thirty (30) days of the occurrence of such circumstances.

6. COPYRIGHT:

A.    While all art work images created by the Artist and included in either Book (the

2

"Work") remain the sole property of Properties, the titles of the Books, as published, shall be the exclusive property of Publisher. Copyright notices shall read: "All artwork copyright © Frank Frazetta and/or Frazetta Properties, LLC 2010 unless otherwise noted. Text is copyright © 2010 Frank Frazetta & J. David Spurlock, ARR. Collective Copyright © 2010 Vanguard Productions."

B.      If the copyright of the Work is infringed, and if Publisher and Properties proceed jointly, the expenses and recoveries, if any, shall be shared equally. If Publisher and Properties do not by mutual written consent proceed jointly, either party shall have the right to prosecute such action, with that party bearing the expenses of the action and entitled to keep any recovery. Should the party bringing suit not be the holder of the record title of the copyright, the non-litigating party consents to the action being brought by the litigating party.

7.      WARRANTY: Properties represents, covenants, and warrants that as between Properties and Artist, Properties has all right and authority to enter into this Agreement and provide the publishing rights and other rights granted to Publisher hereunder; the Work is original, with the exception of any material which Artist or Properties has received permission to reproduce or reprint from other sources; that Artist is the sole creator and Properties is the owner of the Work provided by Properties to Publisher for the Books; that neither Properties nor Artist has entered into or become subject to any contract, agreement, or understanding with a third party involving the Books; that, if published in the Books, the Work provided by Properties to Publisher for inclusion in the Books will not infringe upon any currently existing proprietary right under statute or common law, any statutory copyright, or any other intellectual property right; that the Work provided Publisher by Properties for inclusion in the Books contains no matter that is libelous, scandalous, obscene, in violation of any right of privacy or any other intellectual property right of any person, or otherwise unlawful; and that Properties has full power to enter into this agreement.

8.      INDEMNITY: Nothing in this Agreement shall alter or impair the common law or statutory rights of either party to indemnity or contribution arising out of the other parties' performance of this Agreement.

9. ROYALTIES: Publisher agrees to pay Properties the following royalties, on the sale of the Books (less returns), whether made by Publisher or any Publisher affiliate or under any sublicense or grant of rights by Publisher to a third party, after receipt of payment by Publisher, as follows:

A.      <u>Regular Hardcover Trade Edition</u>:  On each copy of the regular hardcover trade edition sold, less returns, a royalty of:

3

Case 8:22-cv-00581-WFJ-AEP    Document 219-1    Filed 03/31/25    Page 4 of 25 PageID
1169
Case 8:22-cv-00581-WFJ-AEP    Document 87-2    Filed 11/01/23    Page 9 of 23 PageID 509

10% of the gross revenue actually received by Publisher from the sales of the Books.

B.    Paperback Editions Under Publisher's Imprint: On each copy of a paperback edition which may be published under Publisher's imprint, a royalty of:

10% of the gross revenue actually received by Publisher from the sales of the Books.

C.    Sales at More Than 65% Discount: On each copy sold anywhere at a discount of more than 65%, and on copies sold at temporarily reduced prices through special mail order or other promotion, a royalty of 5% of the gross revenue Publisher actually receives on the regular hardcover edition copies or 5% of the gross revenue Publisher actually receives on the paperback edition copies sold.

D.    Sales by Mail Order, Radio, Television, Other Advertising Media, Website, or Convention: On each copy of Publisher's regular hardcover edition or Publisher's paperback edition sold directly to the consumer through mail order or coupon advertising, radio, television or other advertising medium, website, or Convention, a royalty of 5% of the gross revenue Publisher actually receives on the hardcover and 5% of the gross revenue actually received on the paperback editions.

E.    Book Club Sales: On each copy of Publisher's regular hardcover edition sold to a book club (including divisions or affiliates of Publisher) as a main selection, alternate selection, or in combination with any other publications or products, a royalty of 5% of the gross revenue Publisher actually receives. On each copy of the paperback edition sold under the same circumstances, a royalty of 5·% of the gross revenue Publisher actually receives. On copies sold to book club divisions or affiliates of Publisher for use as premiums, or gifts, a royalty of $.25 per copy for hardcover copies or $.15 per copy for paperback copies.

F.    Signed Editions: Publisher has the option, Artist's health permitting, to offer copies of any and all Publisher editions of the Books signed by the Artist. Publisher agrees to pay Properties or Artist, as designated by Properties, $100.00 (one hundred dollars) per signature on signed editions of Books, whether or not such Books actually are sold. On such signed editions of Books, in addition to the $100.00 signing fee, Properties will receive a flat, $5.00 per-Book royalty, in lieu of any percentage-based royalty on such Artist-signed Books.

If the Artist becomes able to sign autographs, for commercial purposes, at any price, then the Artist agrees to fulfill Publisher's reasonable requests for autographs as agreed and subject to the remaining terms of this subsection F.

4

Case 8:22-cv-00581-WFJ-AEP    Document 219-1    Filed 03/31/25    Page 5 of 25 PageID
1170
Case 8:22-cv-00581-WFJ-AEP    Document 87-2    Filed 11/01/23    Page 10 of 23 PageID 510

G.    <u>No Royalties:</u> will be paid on copies sold at or below production cost; copies sold to or furnished without charge to Properties or Properties's representative, Frazetta Management Corp. (acting by and through Robert J. Pistella, President); copies furnished without charge for review, advertising, promotion, sample, or publicity purposes; or for damaged or returned copies.

10.    PROMOTION: Publisher may, subject to the provisions of this Agreement, publish, or permit others to publish or broadcast, selections from either or both Books in any media including print, radio, or television, without royalty, if Publisher believes that such selections will benefit Book sales. Properties gives Publisher the right to use and authorizes the use of Artist's name, photograph, stylized signature, and likeness in connection with the advertising and promotion of any and all Publisher collections of Artist material. Properties represents that Artist endorses and publicly supports the Books on Artist with his goodwill.

11.    SUBSIDIARY RIGHTS: For good and valuable consideration the receipt and sufficiency of which is hereby acknowledged by Properties, Properties grants Publisher the <u>exclusive</u> right, on Properties' behalf, but subject to the provisions of Section 1, to license, sell, or otherwise dispose of the following rights in the Books, with the net proceeds to be divided equally between Properties and Publisher after all commissions and foreign taxes are deducted. Publisher may appoint a sub-agent to dispose of the subsidiary rights described below, and may deduct any reasonable commissions paid to such sub-agent and any reasonable and necessary out-of-pocket expenses in connection with such disposition ("Agent Fees") prior to calculation of Properties' share of the net proceeds.

11.1  LIST OF SUBSIDIARY RIGHTS:

A.    Publication in foreign languages;

B.    Condensations;

C.    Serialization in magazines and newspapers (whether in one or more installments) before and after book publication;

D.    Publication of an English language edition, distinct from Publisher's edition, by a foreign publisher;

E.    Publication of reprint editions, whether hardbound or paperback, by another publisher;

F.    Publication in whole or in part in anthologies, compilations, or digests;

G.    Multimedia adaptations, including but not limited to radio, sound recordings,

5

*J.D.S.*

Vanguard 226. 010

microfilm, microprint and versions designed for electronic data retrieval (CD-Rom and on-line services).

12. ROYALTY PAYMENTS AND STATEMENTS: Royalties are due initially within 120 days after each book's On-Sale date and thereafter within forty-five (45) days following the end of each calendar quarter. Publisher will send to Properties sales and royalty accounting reports quarterly, within forty-five (45) days following the end of each calendar quarter, accompanied by a check payable to Properties for any amounts due under this Agreement (including, but not limited to, sales by sublicensees of Publisher) with respect to such subject calendar quarter. When Properties' royalty as to any calendar quarter falls below $500.00, the quarterly statements shall be replaced by a semi-annual statement. Publisher will then send, within forty-five (45) days following June 30 and December 30 of each year, semiannual statements of account, accompanied with a check payable to Properties, itemizing amounts due Properties under this Agreement for the subject preceding six (6) month period. Thereafter, all statements will be issued semi-annually.

Publisher may withhold a reasonable reserve for future returns of books; this reserve shall not exceed twenty-five per cent (25%) of the earnings due to the Artist. Where any statement indicates that Properties has received an overpayment of royalties, including by subsequent return of Books to Publisher, or that Properties or Artist is otherwise indebted to Publisher, Publisher may deduct the amount of the overpayment or other indebtedness from any sums due Properties, either then or thereafter, under this Agreement, from any sums due Properties under this Agreement, provided that the subsequent statement in which such deduction is taken, provides reasonable detail as to such deduction.

Properties may audit the records of Publisher, at Properties' own expense, to verify compliance by Publisher with his obligations under this Agreement, but not more than once, absent default by Publisher, in any twelve (12) month period. Any discrepancy found shall not be deemed a breach of this Agreement if payment is tendered by the party liable, in full, within forty-five (45) days and, if the discrepancy exceeds twenty-five per cent (25%) as due and owing to Frazetta Properties, then Properties' audit expense will be re-paid to it by Publisher within an additional thirty (30) days. Any discrepancy found shall not be deemed a breach of this Agreement if paid by the party liable, in full, within thirty (30) days of finding said discrepancy. In the event any discrepancy exceeding twenty-five per cent (25%) is found as against Publisher, then Publisher's tender to Frazetta Properties for the cost of the auditing, shall not be deemed a breach of this Agreement if made within those same thirty (30) days.

13. PROPERTIES' COPIES: On publication of each of the two (2) Books, Publisher will give Properties ten (10) copies, without charge, of any of these editions produced: Paperback, Hardback, and Deluxe. If any ULTRA or Signed edition is produced, Properties will receive five (5) copies of that edition at no charge. Publisher will not pay a signing fee or any royalties on any Books going to Publisher, Artist or Frazetta

6

A.D.S.

Vanguard 226. 011

Case 8:22-cv-00581-WFJ-AEP    Document 219-1    Filed 03/31/25    Page 7 of 25 PageID
1172
Case 8:22-cv-00581-WFJ-AEP    Document 87-2    Filed 11/01/23    Page 12 of 23 PageID 512

Management Corp. or official associates. Publisher agrees to sell Properties additional copies, excluding signed copies, at fifty per cent (50%) off cover price, plus shipping and handling costs (current handling is $5.00/carton) while the Book is In-Print.

14. OVERSTOCK/REMAINDERS: If, at any time, Publisher has unsold or returned copies of the Books on-hand and Publisher believes that these cannot be sold on the usual terms within a reasonable time, Publisher may sell such copies to whatever purchaser or purchasers, on whatever terms Publisher considers advisable. If such stock is sold at or below Publisher's cost (as reasonably documented by notice from Publisher to Properties), no royalty will be paid to Properties on such sales. If such stock is sold above Publisher's cost, Publisher will pay Properties, in lieu of any other royalty payments provided in this agreement, ten per cent (10%) of the difference between Publisher's cost (as reasonably documented by notice from Publisher to Properties) and the gross revenue Publisher actually receives. Before Publisher disposes of such remainder Books as described above, Publisher shall make reasonable efforts to notify Properties and give Properties the opportunity to purchase all or part of the over stock at the greater of Publisher's manufacturing cost or rate that Publisher would sell as remainders.

15. OUT-OF-PRINT: It is the right of Publisher to keep any Book in print or not, as it sees fit. During the first two (2) years of publication, neither Properties nor Artist shall grant another the right to print more than twenty per cent (20%) overlap of Work included in the Books.

16. DISCONTINUANCE OF PUBLICATION; TERMINATION: Publisher may discontinue publication of both Books or either Book at any time. All rights granted to Publisher, representations, warranties, covenants, and indemnities of either party in this Agreement shall survive such discontinuance. Nothing contained in this Agreement shall affect Publisher's right to sell remaining copies of both or either Book on-hand at the date Publisher ceases publication; nor shall cease of publication affect any license or other grant of rights which Publisher has made to a third party before the cease of publication date, or Publisher's rights in the proceeds of such a license or grant. Publisher, his heirs or successors, have the right to put any out of print Books back in print at any time. Properties may terminate Publisher's rights based upon his breach of this Agreement, including any breach by anyone for which Publisher is responsible, which breach continues uncured for 45 days after written notice of breach from Properties.

17. COPIES OF AGREEMENT: Publisher shall furnish Properties with copies of any agreements which Publisher may make with any third parties for the disposition or exploitation of any rights granted Publisher under this Agreement.

18. RETURN OF MATERIALS: Publisher shall return to Properties no later

7

A.Q.S.

**Vanguard 226. 012**

Case 8:22-cv-00581-WFJ-AEP  Document 219-1  Filed 03/31/25  Page 8 of 25 PageID
1173
Case 8:22-cv-00581-WFJ-AEP  Document 87-2  Filed 11/01/23  Page 13 of 23 PageID 513

than 60 days after receipt, any physical material Properties (or Artist) has furnished to Publisher for inclusion in Books or either Book.

19. SUMS DUE AND OWING: Any sums which are due and owing from Properties to Publisher, arising out of this Agreement, may be deducted from any sum which is due (or to become due) from Publisher to Properties, pursuant to this Agreement, provided Publisher at the time of such deduction provides Properties with a reasonably detailed explanation of the amount then due from Properties to Publisher.

20. OPTION/RIGHT OF FIRST REFUSAL: Properties on its own behalf and, to the extent applicable, on behalf of Artist, gives Publisher a forty-five (45) day option on future books on art work created by Artist on terms that are at least as favorable to Properties and Artist as proposed by any other book publisher on or prior to January 1, 2025 (the "Expiration Date"); the option period shall begin on the day Publisher receives a detailed outline of the terms or a copy of the proposed contract being offered by such other book publisher (in either instance, the "Third Party Offer"). If Publisher wishes to publish the proposed book, Publisher shall execute and deliver to Properties within such 45-day period a publishing contract on terms consistent with the Third Party Offer, plus a bonus fee of one hundred dollars ($100.00). If Properties does not receive such executed contract from Publisher within such 45-day period, then Properties may proceed to publish that certain book with the Third Party publisher. Any such publication agreement with a Third Party publisher shall have no effect on Publisher's ongoing Option/Right of First Refusal herein. Notwithstanding any other provision in Section 20, Publisher shall have no rights under this Section 20 or otherwise with respect to a Third Party publisher's proposal first made to Properties after the Expiration Date. For the avoidance of doubt: (i) no rights under this Section 20 are assignable by Publisher to any Third Party, in whole or in part, or by operation of law or otherwise, and (ii) Publisher shall have no rights under this Section 20 or otherwise with respect to any comic books that Properties may publish or allow third parties to publish from time to time.

21. NOTICE IN WRITING: While normal working relations will be conducted through e-mail and telephone calls, any dispute notice or demand that is permitted or required in this Agreement shall be in writing and shall be sent to Properties: c/o Frazetta Management Corp., Attn: Robert J. Pistella, or to Publisher at the address that appears above (but for notice to Properties as specified in the preceding provisions of this sentence), or at any other address that Properties or Publisher may designate. Properties shall, unless and until contrary written instructions from Properties, deal with Publisher for all purposes of this Agreement by and through Licensor's representative, Frazetta Management Corp., acting by and through Robert J. Pistella, President. Publisher, unless and until contrary written instructions are received from Properties, may deal with and rely on Robert J. Pistella, acting as President of Frazetta Management Corp., as representative of Properties for all purposes of this Agreement, without inquiring further as to his and its authority on behalf of Properties hereunder.

8

Case 8:22-cv-00581-WFJ-AEP    Document 219-1    Filed 03/31/25    Page 9 of 25 PageID
1174
Case 8:22-cv-00581-WFJ-AEP    Document 87-2    Filed 11/01/23    Page 14 of 23 PageID 514

22. AMENDMENTS; COUNTERPARTS: Changes to this Agreement may only be made in writing and signed by both parties. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. On this Agreement, facsimile signatures and signatures transmitted electronically in PDF format shall for all purposes be given the same legal effect as original signatures. Notwithstanding this Section, Publisher will obtain a copy of this Agreement with all original signatures.

23.    CHOICE OF LAWS: This agreement shall be governed and interpreted according to the laws of the State of Florida and of the United States of America, whether or not any party is or may hereafter be a resident of another state. Any litigation is to be brought in the State of Florida. All court, arbitration, and other legal costs, expenses, and fees incurred, in addition to any other recovery or award, shall be paid by the non-prevailing party to the prevailing party, with "prevailing party" defined as it is under the laws of Florida.

24.    SEVERABILITY CLAUSE: In the event that any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this agreement, but this agreement shall be construed as if such invalid, illegal or unenforceable provisions had never been contained herein, unless the deletion of such provision or provisions would result in such a material change so as to cause completion of the transactions contemplated herein to be unreasonable. It is further agreed that if part of the Agreement is determined invalid, either party may open non-binding negotiations solely with respect to a substitute for such Article, Section, or portion, within two (2) weeks after a ruling has been made.

25 COMPLETE CONTENTS OF AGREEMENT: This Agreement to Publish, along with that certain separate Endorsement/Trademark License Agreement between the parties, and all other agreements incorporated by reference into the Endorsement/Trademark License Agreement, constitute the entire binding agreement between J. David Spurlock, d/b/a Vanguard Productions and Properties (or between Publisher and Artist) with respect to the subject matter hereof.

26. HEIRS AND SUCCESSORS: This agreement shall be binding upon and shall inure to the benefit of Properties' successor and assigns, and, subject to the provisions of this Agreement, to the heirs, successors and permitted assigns of Publisher. Until publication of the Books, provided same is done by January 1, 2025, Properties shall not assign its obligations under this Agreement without Publisher's prior written consent, although Properties may assign any of its rights to payments under this Agreement without such consent. Subject to this Agreement, Publisher may sublicense any, but not all, rights granted to Publisher under this agreement, but Publisher may not, without Properties' prior express, written consent (which consent may be withheld or granted in Properties' sole discretion), assign this Agreement as an entirety, except to an entity of which not

9

J.D.S.

**Vanguard 226. 014**

Case 8:22-cv-00581-WFJ-AEP    Document 219-1    Filed 03/31/25    Page 10 of 25 PageID
1175
Case 8:22-cv-00581-WFJ-AEP    Document 87-2    Filed 11/01/23    Page 15 of 23 PageID 515

MAR-04-2010 THU 04:52 PM T. B. H. R., P.C.              FAX NO. 8172617873              P. 12

less than fifty-one per cent (51%) of both the ownership and voting control is held by J. David Spurlock, or his heirs.

| FRAZETTA PROPERTIES, LLC | |
| By: _____ | J. DAVID SPURLOCK, |
| Name:  William H. Frazetta | d/b/a Vanguard Productions |
| Title:  Manager | |
| | |
| By: _____ | |
| Name:  Holly Jean Frazetta Taylor | |
| Title:  Manager | |
| | |
| By: _____ | |
| Name:  Heidi Lee Grabin | |
| Title:  Manager | |

10

Vanguard 220.019

03/05/2010  11:17    9414974128                         PACKMAIL                              PAGE  82/84
MAR-04-2010 THU 02:52 PM T. B. H. R., P.C.           FAX NO. 6172617073              P. 17

less than fifty-one per cent (51%) of both the ownership and voting control is held by J. David Spurlock, or his heirs.

FRAZETTA PROPERTIES, LLC

By:_____
Name:  William R. Frazetta
Title:   Manager

By:_____
Name:  Holly Jean Frazetta Taylor
Title:   Manager

By:_____
Name:  Heidi Lee Grabin
Title:   Manager

J. DAVID SPURLOCK,
d/b/a Vanguard Productions

10

Vanguard 226. 016

Vanguard Exclusive Frazetta Publisher..pdf — 58 KB — Open with Adobe Acrobat

Modified: January 14, 2015 at 3:24 PM

Add Tags...

**General:**
Kind: PDF document
Size: 2,125,871 bytes (2.1 MB on disk)
Where: FRAZETTA new desk 4-28-15 ▸ FRAZETTA new desk

Created: January 14, 2015 at 3:24 PM
Modified: January 14, 2015 at 3:24 PM

Stationery pad
Locked

**More Info:**
Last opened: January 14, 2015 at 3:24 PM

**Name & Extension:**
Vanguard Exclusive Frazetta Publisher.

Hide extension

**Comments:**

**Open with:**
🅰 Adobe Acrobat.app (default)
Use this application to open all documents like this one.
Change All...

**Preview:**

---

FRAZETTA PROPERTIES LLC & VANGUARD PUBLISHING

Jan 13, 2015

Re Exclusive Frazetta Publishing Rights

Frank Frazetta JR
Dark Horse
Diamond Comics Distributors

VANGUARD is the only AUTHORIZED publisher of books predominantly featuring Frank Frazetta art. Since 2010, ONLY Vanguard is Authorized and Endorsed by Frank Frazetta. As per various agreements with Frazetta Properties LLC, the legal successors of Frank Frazetta; and as announced in the joint Frazetta-Vanguard press release of March, 8, 2010 titled, "Frank Frazetta Signs with Vanguard Publishing". Vanguard is the exclusive, authorized book publisher of artwork copyright Frank Frazetta and/or Frazetta Properties LLC. As per the agreements signed by Frank Frazetta and a majority of Frazetta Properties LLC members, Vanguard's EXCLUSIVE rights are in effect from March 1st, 2010 through January 1st, 2025. In addition to Vanguard's EXCLUSIVE rights to publish copyrighted Frazetta works, Vanguard ALSO has EXCLUSIVE rights to use the registered Frazetta trademark, and any other common law Frazetta marks, in branding to promote Frazetta-related Vanguard publications including but not limited to, ALL comics works by Frazetta from 1963 and earlier (including but not limited to Snowman, Thunda, Untamed Love, White Indian, Johnny Comet, etc). The agreements signed by Frank Frazetta and Frazetta Properties LLC are binding on ALL HEIRS of Frank Frazetta including Frank Frazetta Jr. Though each of the four (4) Frazetta heirs (Frank Jr, Bill, Heidi and Holly) enjoy certain settlement-agreement granted rights to license images, said licenses can NOT conflict, undermine or devalue Frank Frazetta's and Frazetta Properties LLC's prior agreements with Vanguard. All book and comics publishing must go through, or be authorized, or passed-on by Vanguard. Even if some Frazetta material is in the public domain, it can not be promoted as Authorized, or Endorsed, by any Heir of Frank Frazetta, or use FRAZETTA prominently in title or advertising branding, without Vanguard's approval or involvement.

Please immediately, CEASE AND DESIST distribution, and/or publishing, and/or licensing for publishing, of any books, and/or comicbooks featuring Frank Frazetta art and/or that use "Frazetta" in branding to sell publications containing Frank Frazetta art, without first verifying with Vanguard that the publication is allowable and/or authorized. You can reach Vanguard at vanguardpuq@att.net

William B. Frazetta
Manager

David Spurlock
Vanguard

Holly/Jean Frazetta Toylo
Manager

Frank Joe Grabin
Manager

EX. 4

---

Exhibit 2

# ADVANCED FORENSICS, LLC

Financial, Computer, and Digital Forensics for Attorneys
License A 3400170

## HAROLD D. MCFARLAND, C.P.A., C.F.E., C.M.A

### CAREER EXPERIENCE

**ADVANCED FORENSICS, LLC**                                              August 2024 – Present
**Owner – Forensic Services:**

Responsible for all levels of forensic investigations, valuations, and litigation support.  Expert witness in Federal and State courts.

**PELLEGRINO & MCFARLAND, P.A.,**                                      January 1998 - Present
**CERTIFIED PUBLIC ACCOUNTANTS, SARASOTA, FLORIDA**
**Shareholder – Accounting and Business Services:**

Responsible for business consulting, reviews, forensic accounting and fraud examination engagements; litigation support; accounting database forensics, software and transactional analysis forensics and business valuations. Expert witness in Federal and State courts in cases ranging from simple embezzlement to national and international large and complex fraud cases.

**QUANTUM CYBER SECURITY & INVESTIGATIONS, INC.**                January 2010 – Present
**PRIVATE INVESTIGATORS – CYBERCRIME, SARASOTA, FLORIDA**
**FL LICENSE# A 1100023**
**Computer and Internet Forensics:**

Responsible for detailed computer, network device, and Internet forensic evaluations.  Provide detailed support for civil and criminal investigations that involve electronic devices and media and/or computer systems.

**SECOND STREET SOLUTIONS, INC.,**                              January 1998 – December 2008
**INTEGRATED BUSINESS & TECHNOLOGY SOLUTIONS, SARASOTA, FLORIDA**
Computer/Software Consulting

Responsible for business computer and software consulting, software installation, training and support.

2805 Fruitville Rd., Suite 215
Sarasota, FL 34237
941.920.4846

# Exhibit 3

**McFARLAND & SHROCK**                                         January 1993 - December 1997
**CERTIFIED PUBLIC ACCOUNTANTS, SARASOTA, FLORIDA**

**Partner:**

Planning and detail work of financial reviews and compilations; preparation of financial statements, internal control reports, and corporate, partnership and individual tax returns.  Design, implementation, and troubleshooting of computer systems hardware and software.


**CAREER EXPERIENCE - CONTINUED**

**HAROLD D. McFARLAND, CPA**                                   November 1991 - December 1993
**SARASOTA, FLORIDA**

**Owner:**

Planning and detail work of financial reviews and compilations; preparation of financial statements, internal control reports, and corporate, partnership and individual tax returns.  Design, implementation, and troubleshooting of computer systems hardware and software.


**KEISER UNIVERSITY, SARASOTA, FLORIDA**                       Summer 1996 - Spring 1998

**Instructor and Head of Computer Sciences Department:**

Computer systems applications; design, implementation, and troubleshooting of computer systems hardware and software.

**EDUCATION**

Master of Accountancy, Major in Taxation, University of South Florida, Tampa, Florida, 1990

Bachelor of Science, Accountancy, University of South Florida, Tampa, Florida, 1988

Certified Public Accountant, 1992

Certified Management Accountant, 1993

Certified Fraud Examiner, Association of Certified Fraud Examiners, 2007

Licensed Private Investigator (FL License C 1100040)

Certified Novell Engineer, Certified Novell Administrator

Microsoft Certified Professional

Comptia Security + Certified

Comptia Linux + Certified

**PROFESSIONAL AND CHARITABLE ORGANIZATIONS**

- American Institute of Certified Public Accountants - Member
- Florida Institute of Certified Public Accountants - Member
- Institute of Certified Management Accountants – Member
- Association of Certified Fraud Examiners – Member and Member of Advisory Board
- Florida Association of Criminal Defense Lawyers
- National Association of Legal Investigators - Member

- Florida Association of Licensed Investigators - Member
- Florida Association of Private Investigators – Member
- Red Cross Volunteer
- Red Cross Emergency Radio Operator (FCC Extra Class Licensed – Highest Level Available)


## BUSINESS AND INDUSTRY EXPERIENCE

- Expert Witness in accounting, computer forensics, and valuations in multiple cases
- National and International Speaker on Computer forensics, network security, and fraud.
- Member FBI Infragard Anti-Terrorism Task Force
- Member Secret Service Electronic Crimes Task Force
- Nursing Home and Nursing Home Management
- Not-for-Profit Organizations
- Manufacturing
- Condominium Associations
- Construction Contractors
- Churches
- Retail Trade
- Professional Services
- Wholesale Distributors
- Real Estate Development
- Trusts and Estates
- One of the People Selected to Write the National Comptia Linux + Certification Exam
- Technical Reviewer for Several Computer Books from Major Publishers in the Computer Field


## LITIGATION SUPPORT EXPERIENCE

- Forensic Data Recovery and Analysis
- Network and Internet Forensics
- Embezzlement
- Ponzi schemes
- Fraud
- Complex embezzlement techniques
- Business valuation
- Check Counterfeiting
- Securities Fraud
- Insurance Fraud
- Altered Accounting Data
- Contract Dispute
- Computer Forensics
- Asset Search
- Internal Control Audit

# ADVANCED FORENSICS, LLC

Financial, Computer, and Digital Forensics for Attorneys
License A 3400170

## REPORT ON EXAMINATION OF CONTRACT DOCUMENT

Analysis by

Harold D. McFarland
Advanced Forensics, LLC.

Requested by

Jack Merritt
Merritt Law, P.A.
690 S. Tamiami Trail
Osprey, FL 34229

EXHIBIT 4

2805 Fruitville Rd., Suite 215
Sarasota, FL 34237
941.920.4846

# Table of Contents

**Investigative Purpose and Scope** ...................................................................................................1

**Executive Summary** ......................................................................................................................1

**Findings from the Document Examination** ....................................................................................1

    Document Description ................................................................................................................1

    Document Properties ................................................................................................................1

    Examination of the signature of William Frazetta .......................................................................3

    Examination of the signature of Holly Jean Frazetta ..................................................................4

    Examination of the signature of J. David Spurlock......................................................................5

    Examination of the signature of Heidi Loe Grabin .....................................................................6

**Examiner Background and Affidavit** ...............................................................................................7

## INVESTIGATIVE PURPOSE AND SCOPE

The purpose of the examination was to determine if the signatures on the document provided were original wet signatures or if they had been placed onto the document by "cut and paste" or other means such that they would not be considered original signatures.

## EXECUTIVE SUMMARY

The copy of the original 2010 agreement is a scan of a fax. Fax machines introduce artifacts into the document as a result of minor issues with phone transmission. These tend to be small and unobtrusive but can be used to show if a signature was copied from a faxed document or not as it will include these artifacts.

I was able to examine the signatures on the 2015 agreement and the 2010 agreement. While it was not necessary to examine the 2010 agreement in order to determine that all the signatures on the 2015 agreement were cut and paste copies of signatures and none were original signatures, we were able to use the artifacts and other features to determine that these signatures all appear to have been copied from that document and pasted onto the new one.

It is my opinion that none of the four signatures on the 2015 document are originals, all were copied from elsewhere and pasted onto this document and they appear to have been copied from the 2010 agreement.

## FINDINGS FROM THE DOCUMENT EXAMINATION

### Document Description

We were provided with five files that included the 2010 and 2015 Agreements and copies of the signatures of Heidi Frazetta, Holly Frazetta and William Frazetta taken from the 2010 Agreement. The particular document under investigation is the document with the heading "FRAZETTA PROPERTIES LLC & VANGUARD PUBLISHING" and dated Jan 13, 2015 referencing Exclusive Frazetta Publishing Rights. At the bottom right it is noted as "EX. 4".

### Document Properties

The metadata properties contained within the document indicate that it was last saved out of the Adobe Photoshop for Macintosh Program version 24.4. That program did an image conversion onto the document. Adobe Photoshop is used primarily for image alterations.

1

Document Information

| | |
|---|---|
| Title: | |
| Subject: | |
| Author: | |
| Keywords: | |
| Creator: | Adobe Photoshop 24.4 (Macintosh) |
| Producer: | Adobe Photoshop for Macintosh -- Image Conversion |

| PDF Version: | 1.6 | Linearized: | Yes |
|---|---|---|---|
| Pages: | 1 page(s) | Is XFA: | No |
| Encrypted: | No | | |

There is always the possibility that the document was digitally signed instead of a wet signature. This has become common in recent years. So, I checked the properties to see if there was a digital signature and there was not.

General          PDF Information          Digital Signatures

Embedded Signatures

| Name of sign... | Digest algorit... | Timestamp |
|---|---|---|
| | | |

Details

Catalog Signatures

| Name of sign... | Catalog Name | Digest algorit... | Timestamp |
|---|---|---|---|
| | | | |

2

*Examination of the signature of William Frazetta*

The first thing of note is that the signature is actually a JPEG image file.  This is an image that was pasted onto the document.  The blue box on the left side represents the actual image that was pasted onto the document.



In addition to the image, you can see that the way it was pasted onto the signature line was not an exact positioning and the actual signature line is slightly above where this signature and its line are located.



This image appears to have been cut from the original 2010 document.



The strokes are identical, the strokes extending below the line match exactly on the printed name below, and even the wide spot on the right side of the signature line appears in both places.

3

*Examination of the signature of Holly Jean Frazetta*

Again, this signature is actually a pasted JPEG image file.  Again, the blue box on the left shows the borders of the actual image file that was pasted onto the document.



On this one the image that was copied from someplace else did not get the entire name.  On the right-hand side you can see that the letter "a" is partially cut off and the short line outside the blue border is actually the signature line on the document.  I was able to confirm this by removing the image.  It also cut off the last letter of her name under the signature.  Also the image cut off the bottom part of the "g" in manager.

This appears to have been lifted off the 2010 document with some modification to remove the labels for "Name" and "Title".  This is exactly what you can do with Photoshop and would explain why it was last altered using Photoshop.

You can see that the top left flourish of the "H" has a pen skip in both of them of exactly the same nature.  The strokes going through the letters underneath occur at exactly the same places and with the same weight.  There are artifacts in the original that also appear in the 2015 document signature.  For example, there is a small mark on the right-side of the "F" between the top and middle lines and that artifact shows up in the other signature also.

And finally, the "r" in Taylor is cut off in the pasted image where the cut portion that was pasted into the document did not go to the right far enough to get it.

4

***Examination of the signature of J. David Spurlock***

This signature was embedded using a slightly different technique. This signature was "flattened" into the document so that on clicking the signature the blue line does not appear around the image file that was pasted there. However, the program still recognizes it as an image.



The image appears to have lifted directly from the 2010 document.

Again, notice that all the flourishes below the signature line occur at exactly the same place. There are also artifacts that appear in both signatures. Note the mark before the letter "D" and the small dot inside the bottom of the letter "S". The signature on the 2015 document appears to have had a typical smoothing algorithm run against it to make it look more fluid.

And again, this would explain the need for the contract to be edited in photoshop. The "d/b/a" and word "Productions" are easily removed.

*Examination of the signature of Heidi Lee Grabin*

Heidi's signature is once again an image file that has been pasted onto the document.



Once again, this appears to have been lifted from the 2010 document signature.

The original signature shows that the last flourish on her name rises up and back but on the signature on the 2015 document it shows it as a straight line. But that is also how we know that this was taken from the original signature because you can see the left over vestiges of that upper curl. The top right of the blue border to the image shows the last piece of curl. The additional line to the right is the original signature line as confirmed by removing the image from the document.



And again, the lower flourishes of the name all intersect the typed name in exactly the same places beneath. Other artifacts also appear in both signatures. For example, the dot between the upper loop and lower loop of the letter "I" and the artifact just to the right of the lower case "I".

6

Examiner Credentials and Affidavit


**Harold D. McFarland, CPA, CMA, CFE, PI**

**Professional Affiliations**

Association of Certified Fraud Examiners – Advisory Board Member

FBI Infragard member of cybercrimes special interest group

Secret Served Cybercrimes Task Force member.

Florida Institute of Certified Public Accountants

American Institute of Certified Public Accountants


**Presentations**

I have presented as a Subject Matter Expert in computer forensics to groups from local organizations to CEU subjects for the Florida Bar to International conventions from over 170 countries.


**Affidavit**

I certify that, to the best of my knowledge and belief, the statements of fact contained in this report are true and correct; the reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest with respect to the parties involved. I have no bias with respect to the parties involved with this assignment. My engagement in this assignment was not contingent upon developing or reporting predetermined results. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined result or the occurrence of a subsequent event directly related to the intended use of this examination.

Signed, Harold D. McFarland

STATE OF FLORIDA          )

                          )

COUNTY OF SARASOTA        )

    BEFORE ME, the undersigned authority, personally appeared Harold D. McFarland, who is ☑ personally known to me or ☐ produced _____ as identification, and being duly sworn, stated the foregoing is true and correct and based upon his personal knowledge.

WITNESS my hand and official seal

this _6th_ day of _March_, 2025

REBECCA S. LEIGHTON
Commission # HH 594375
Expires October 1, 2028

NOTARY PUBLIC