UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRAZETTA PROPERTIES, LLC,

         *Plaintiff,*                CASE NO. 8:22-cv-00581-WFJ-AEP

v.

VANGUARD PRODUCTIONS, LLC,
and JESSE DAVID SPURLOCK,

         *Defendants.*

_____/

## DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

Defendants VANGUARD PRODUCTIONS, LLC ("VANGUARD") and J. DAVID SPURLOCK ("SPURLOCK") move for summary judgement pursuant to Fed. R. Civ. Pro. 56, in their favor and against Plaintiff on the following grounds:

    (i)    **Plaintiff failed to prove copyright ownership** of ORIGINAL *Death Dealer II* and/or *Death Dealer V* images **for failure to comply with copyright registration requirements**

    (ii)    **Reproduction is authorized** under the Parties' 2010 Frazetta Trademark and Endorsement Agreement

    (iii)    **Reproduction is permitted under the Fair Use exception**

## I.    STATEMENT OF UNDISPUTED FACTS

1.    Plaintiff alleges copyright infringement under 17 U.S.C. § 105, the United States Copyright Act of 1976, of Frank Frazetta paintings *Death Dealer II* and *Death Dealer V,* reproduced in in the context of now out-of-print book covers in Defendants' *Frazetta Book Cover Art – Complete Collection™ Definitive Reference™* (the "Book") [DIN 67-1], [DIN 67-1, p. 68 and 71].

*Frazetta Productions, LLC v. Vanguard Productions, LLC at al.*
*Case No. 8:22-CV-00581 WFJ-AEP*

2.     The Book, the third edition of the *Frazetta Definitive Reference*, is a 168-page biographical reference work divided into six chapters, arranged in chronological order, in a layout displaying the cover for the hardback edition (and paperback edition if it featured the same art), accompanied by a caption identifying the book's title, publisher, author, editor, publication date, title of the Frazetta painting, and designation of any Frazetta illustration included in that book.

3.     The Book is a reference work representing the phases of Frank Frazetta's thirty-year career as a book cover art painter and illustrator [DIN 67-1] and reproduces all 159 book covers for which Frank Frazetta was commissioned to create cover art, including 27 images reproduced in books featuring Frank Frazetta's art or illustrations, some of which were never published, totaling 186 images.

4.     The *Death Dealer II* and *Death Dealer V* color images reproduced in the exact form as the book covers originally published by TOR Books, and are <u>cropped versions</u> of the larger paintings Frazetta created for the publisher's use.

5.     Plaintiff has never disputed that the *Death Dealer II* and *Death Dealer V* images reproduced in the Book are the <u>original versions</u>.

6.     Defendants reproduced the *Death Dealer* images in both prior editions of *The Definitive Frazetta Reference* (2008) and *Frazetta: The Definitive Reference* (2010).

7.     <u>Plaintiff failed to provide a prima facie infringement claim for *Death Dealer II* until today, March 31, 2025</u>, depriving Defendants of any meaningful follow-up discovery.

8.  <u>Plaintiff provided half of a prima facie proof of ownership for *Death Dealer V* by filing the Deposit Copy on June 28, 2024.</u> [DIN 175-1].

9.  Defendants produced the certified copy of Plaintiff's Application for *Death Dealer V.* [DIN 193-1].

10. The parties entered into the *Frazetta Trademark Endorsement and Licensing Agreement* in which Frank Frazetta granted Defendants broad authority concerning publication of mutually anticipated future editions of the *Definitive Reference*:

> 4. LIST OF FRAZETTA BOOKS TO BE PUBLISHED UNDER THIS AGREEMENT
>
> A. One (1) book entitled "*The Definitive Frazetta Reference*" by James Bond and David Winiewicz, Ph.D. (which has been previously published by Licensee). No royalties or sales reports are due Licensor or the artist Frank Frazetta on this title. Licensee has the right to update, revise text, replace images, re-design and publish this FRAZETTA Book as Licensee sees fit. … …

[DIN 87-2, p. 18, ¶4]

11. The 2015 letter to Dark Horse, drafted by FRAZETTA PROPERTIES member William Frazetta and J. David Spurlock contemporaneous with a telephone call between the two, was intended to be sent to Dark Horse publishers and to Mr. Spurlock's knowledge, was sent. The wording of the letter was never disputed by any member of FRAZETTA PROPERTIES, LLC until today.

12. A certified copy of the U.S. Copyright Office's 2009 E-File Application Template, part of the records for *Death Dealer V,* Registration No. VA -1-688-405 [DIN 174-3], was filed by Defendants on June 26, 2024.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

13.    Summary judgment is appropriate "if the pleadings, the discovery and disclosure material on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

14.    A party seeking summary judgment must identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

15.    After the moving party has met its initial burden, the adverse party must identify specific facts in the record showing a genuine issue exists for trial. Fed. R. Civ. P. 56(e). The non-moving party cannot rest on "mere allegations or denials" in its responsive pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). No issue for trial exists unless the non-moving party can demonstrate the existence of specific, affirmative evidence in the record such that a reasonable jury could return a verdict in its favor. *Anderson*, 477 U.S. at 249.

16.    Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to

the district court that there is an absence of evidence to support the non-moving party's case." *Celotex*, at 325.

17.    Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

18.    Summary judgment is appropriate if the non-moving party fails to make a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 324; see also, *Anderson*, 477 U.S. at 249-50 ("Summary judgment may be granted if the evidence presented by the non-movant is merely colorable or is not significantly probative of the issues."). A "mere scintilla" of evidence is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 252.

## III.    LEGAL STANDARD TO PROVE COPYRIGHT INFRINGEMENT

19.    "To establish a claim of copyright infringement, a plaintiff must prove, first, that he owns a valid copyright in a work and, second, that the defendant copied original elements of that work." *Leigh v. Warner Bros., Inc.,* 212 F. 3d 1210, 1214 (11th Cir. 2000), citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991) .

20.    A copyright owner's cause of action for copyright infringement is unenforceable until compliance with the formalities of registration, including

payment of fees and deposit of copies of the work, is shown. See, *Lifetime Homes, Inc.*

*v. Residential Dev. Corp.*, 510 F.Supp. 2d 794, 800 (M.D. Fla. 2007).

21.    The registration requirements of 17 U.S.C. § 408 require FRAZETTA

PROPERTIES to submit two best copies of each *Death Dealer* image as published as a

Deposit Copy. See, *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488

(11th Cir. 1990).

22.    The *Death Dealer II* and *Death Dealer V* artwork appeared as cover art on

the covers of *Prisoner of the Horned Helmet* and *Plague of Knives,* the Death Dealer series

of novels by author James Silke. [DIN 1, ¶ 37], upon which Frank Frazetta painted a

© but no record shows that these original versions were ever registered with the U.S.

Copyright Office. Defendants dispute the images submitted by Plaintiff as Deposit

Copies are original versions because the Applications omitted required publication

information and the deposit Copies were simply scanned images, not best copies of

the images as first published in the form they were published, i.e. book covers.

23.    Where parties dispute whether deposit copy was bona fide, or was

impermissible reconstruction, district court should first determine whether that

question implicates merits of case; if it does not, court should weigh evidence that is

submitted and make factual finding on copy/reconstruction issue; if jurisdictional

facts and merits are intertwined, court should treat Fed. R. Civ. P. 12(b)(1) motion as

summary judgment motion and resolve it accordingly. *Torres-Negron v. J & N Records,*

*LLC,* 504 F.3d 151, 2007 U.S. App. LEXIS 23056 (1st Cir. 2007).

### B. No Presumption of Validity Attaches to Copyright Certificates for Images First Published More Than Five Years Ago

24.     Presumption of validity only attaches to works registered within five

years of the date of first publication.

> In any judicial proceedings a certificate of registration made
> before or within five years after first publication of the work
> shall constitute prima facie evidence of the validity of the
> copyright and of the facts stated in the certificate. The
> evidentiary weight to be accorded the certificate of a registration
> made (after five years from publication) shall be within the
> discretion of the court.

17 U.S.C. § 410(C).

25.     Plaintiff's registration certificates lack a presumption of validity because

the images were not registered within five years of the first publication. See, *Stuart*

*Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 863 (11th Cir. 2008) (17

U.S.C. § 410(c)'s provision that a valid certificate of registration satisfies

jurisdictional requirement and that "prima facie evidence of validity of copyright and

facts stated in the certificate" applies only when registration is filed within five years

after the work's first publication).

26.     FRAZETTA PROPERTIES, because their 2009 certificates state the deposit

Copy images were first published in 1988 and 1990, respectively, were required to

establish a valid copyright by providing certified copies of the Registration Certificate

and the Deposit Copies as an initial burden of proof. See, *Urbont v. Sony Music Ent.*,

831 F.3d 80, 88-89 (2d Cir. 2016); *Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d

411, 414 (2d Cir. 1985).

27.    A court does not have discretion to deem registration certificates valid pursuant to 17 U.S.C. § 410(c) until a showing of compliance with registration requirements has been made. See, *Lifetime Homes, Inc. v. Residential Development Corp.*, 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) (Copyright ownership is demonstrated through compliance with the formalities of registration).

### C.    Registration of Derivative Works Without Registering the Original Version is Insufficient to Prove Infringement of an Original, Uncopyrighted Version

28.    "A work consisting of editorial revisions, annotations, elaborations, or other modifications [to a preexisting work that], as a whole, represent an original work of authorship, is a 'derivative work.'" *Montgomery v. Noga*, 168 F.3d 1282, 1290 (11th Cir. 1990) (quoting 17 U.S.C. § 101) (A "non-infringing and sufficiently original" derivative work "qualifies for a separate copyright.").

29.    A later or derivative work qualifies for a separate copyright and will not protect the preexisting material employed in the derivative work. *Stewart v. Abend*, 495 U.S. 207, 223-24, 110 S.Ct. 1750, 1761-62, 109 L.Ed.2d 184 (1990), citing 17 U.S.C. § 103 (1994); 1 Nimmer §§ 3.01, 3.04[A]; and see, 1 Nimmer on Copyright § 3.04 (Derivative work is copyrightable on its own basis).

30.    The provisions of 17 U.S.C. § 411(a) of the Copyright Act provide that the registration requirement is a jurisdictional prerequisite to an infringement action: "no action for infringement . . . shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." *Oravec v. Sunny*

*Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1228-1229 (11th Cir. 2008), citation
omitted.

31.    The decision in *Oravec* held that strict application of the registration
requirement doesn't apply in cases where a party owns both a pre-existing work and
a derivative work that incorporates elements of the original, as the registration of the
derivative work is deemed sufficient to permit a claim based on the underlying work,
even if that work was not registered. *Oravec*, 527 F.3d at 1228-1229.

32.    However, the *Oravec* exception does not apply in this case because
Plaintiff's application to copyright register *Death Dealer II* and *Death Dealer V* purport
to register original versions first published the exact same years as the *Death Dealer II*
and *Death Dealer V* images published by those same years by TOR Books as cover art,
but Plaintiff's Applications fail to provide any information as to the alleged first
publications and their Deposit Copies are just scanned prints.

33.    Section 408(b)(2) of the Copyright Act "permits the deposit of "bona
fide copies of the original work only." *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209,
1212 (9th Cir. 1998) (A bona fide copy is a copy that is "virtually identical to the
original and must have been produced by directly referring to the original"), quoting
*Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th Cir. 1986).

34.    Neither a reconstruction of the work nor a later version of the work is
considered a bona fide deposit copy. *Kodadek*, 152 F.3d at 1212; *Torres-Negron v. J&N
Records, L.L.C.*, 504 F.3d 151, 163-64 (1st Cir. 2007); *Coles v. Wonder*, 283 F.3d 798,

*Frazetta Productions, LLC v. Vanguard Productions, LLC at al.*
Case No. 8:22-*CV*-00581 *WFJ-AEP*

802 (6th Cir. 2002) (Holding 1990 recording was not a copy, but a reconstruction,

therefore plaintiff did not have a valid copyright registration for 1982 version; Any

copy deposited as part of application for certificate of copyright registration must be

virtually identical to original and must have been produced by directly referring to

original); *Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000)

(Holding "later versions of source code" did not constitute complete copy of original

source code for purposes of copyright registration, and applicant who failed to

deposit two complete copies of its original software program, as required by 17

USCS § 408(b)(2), could not maintain infringement action).

### D.    Plaintiff Failed to Comply With 17 U.S.C. § 501 Copyright Registration Requirements

35.    A copyright may be registered at any time during its lifespan. *Arthur*

*Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531 (11th Cir. 1994) (citing

17 U.S.C. § 408). However, a different or derivative version of a work must be

registered separately.

36.    Registration of a published original visual artwork requires a claimant

to include two copies of the image as published as the Deposit Copy pursuant to 17

U.S.C. § 408 (b)(2), and provision of the publication information set forth in the

Application Template for the first publication. (See, Application Template DIN 174-

3, Sec.1). In the instant case, the Application contained NO publishing information,

and the Deposit Copy was a scanned image, not the book cover for the *Prisoner Of*

*Frazetta Productions, LLC v. Vanguard Productions, LLC at al.*
*Case No. 8:22-CV-00581 WFJ-AEP*

*The Horned Helmet* and the book cover for the *Plague Of Knives* or a best copy of the work in its published form.

> **i.    The *Death Dealer II* Application and Deposit Copy Fail to Show Compliance With U.S.C. §408 Registration Requirements**

37.    Plaintiff's Deposit Copy for *Death Dealer II*, Copyright Registration No. VA-0001-688-397, provides 1988 as the date of first publication, but Plaintiff's Deposit Copy is a digital copy of the later-painted image, with NO publication information. The image certainly differs from the version published in 1988 as cover art for *Death Dealer Book One: Prisoner Of The Horned Helmet,* TOR Books (1988).

38.    Plaintiff's Application for *Death Dealer II* was required to (i) name the publisher (ii) the publication (iii) the format (iv) and the title and ISBN designation if it was published as cover art for a book and provide two copies of the publication.

39. The Application Template [DIN 174-3] clearly provides the blanks to fill in regarding publication and allows an applicant to skip this information **only if** the work has not been published. [DIN 174-3, Section 1].

40.    If Plaintiff intended to copyright the original version, the required information must include the publication information, i.e., book's title ("*Death Dealer Book One: Prisoner Of The Horned Helmet*"), the publisher (TOR Books), the year first published (1988), the format (hardcover and softcover), the designation (ISBN-10: 0812513339 (aka) ISBN-13: 9780812513332), and the Deposit Copies (i.e., the book covers as published by TOR Books [DIN 174-3, Section 1] or copies of whatever format the image was first published.

*Frazetta Productions, LLC v. Vanguard Productions, LLC at al.*
*Case No. 8:22-cv-00581 WFJ-AEP*

41.     Alternatively, if Plaintiff intended to copyright a derivative version, the
Application must disclose that this a derivative version and provide the publication
information for the original version, i.e., the title, "*Death Dealer Book One: Prisoner Of
The Horned Helmet,*" published 1988 by TOR Books, ISBN-10: 0812513339 (aka)
ISBN-13: 9780812513332. (See, [DIN 174-3, Section 4]. In the instant case, only the
year of first publication was provided with nothing else.

### ii.    The *Death Dealer V* Application and Deposit Copy Show Non-Compliance With Registration Requirements

42.     Plaintiff's Deposit Copy for *Death Dealer V,* Copyright Registration No.
VA-001-688-405, date of first publication 1990, differs substantially from the original
version reproduced in the Book, the undisputed original version.

43.     Plaintiff's Application with their version of *Death Dealer V,* also claimed
to have been first published in 1990, failed to provide the publication information,
i.e., (i) name of the publisher (ii) the title of the publication (iii) the format (iv) and
the ISBN designation if it was published as cover art for a book. No information at
all was supplied as to Plaintiff's alleged first publication.

44.     Alternatively, if Plaintiff intended to copyright a derivative version, the
Application must state that this is a derivative version of *Death Dealer V* and must
provide the original version's first publication information: (i) the name of the
publisher (TOR Books); (ii) the formats published (hardback and softcover); (iii) the
title ("*Death Dealer Book Four: Plague Of Knives*") and (iv) the international standard
book number: ISBN No. 10: 0812503325 (aka) ISBN-13: 9780812503326. (Compare

2009 Application Template [DIN 174-3] with Plaintiff's certified 2009 *Death Dealer V*

e-File Application [DIN 193-1]).

45.    For the foregoing reasons, Plaintiff's non-compliance with 17 U.S.C. §

408(a) registration requirements warrants summary judgment in Defendants' favor

**D.    The Parties 2010 Agreement Bars Infringement Claims**

46.    Defendants relied on the mutually negotiated agreed-upon terms in

reproducing the images in the prior two editions of the Book and continued to rely

on the Agreement's broad grant of authority to "*update, revise text, replace images, re-*

*design and publish this FRAZETTA Book as Licensee sees fit.*"

47.    That Plaintiff now disagrees with Frank Frazetta's clear expression of

authority granted to Defendant is irrelevant to construing the plain language of the

Agreement. That Plaintiff now belatedly asks the court to intervene to effectively re-

do the Agreement by re-interpreting plain language is improper and invites clear

error. It is unjust to ask that Defendants' reliance on the mutually agreed-upon terms

now be held to have been to their detriment, especially in light of the heretofore

undisputed 2015 Dark Horse Letter.

48.    Defendants relied on the mutually negotiated agreed-upon terms in

reproducing the images in the prior two editions of the Book and continued to rely

on the Agreement's broad grant of authority to "*update, revise text, replace images, re-*

*design and publish this FRAZETTA Book as Licensee sees fit.*"

**E.    The Book is a Reference Work Entitled to the Fair Use Defense**

*Frazetta Productions, LLC v. Vanguard Productions, LLC at al.*
*Case No. 8:22-cv-00581 WFJ-AEP*

49.     Fair use is determined in a case-by-case analysis, where the factors are
"explored, and the results weighed together, in light of the purposes of copyright."
*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994) (citing U.S. Const. art.
I, § 8) (Copyright law's goal of promoting the Progress of Science and useful Arts).

### i.      Fair Use on Summary Judgment

50.     Where there are no genuine issues of material fact as to the issue of fair
use, the court may resolve the affirmative defense of fair use at the summary
judgment stage. *Bill Graham Archives v. Darling Kindersley Ltd.*, 448 F.3d 605, 608 (2d
Cir. 2006) (Affirming summary judgment finding fair use concerning biographical
work whose use of protected material was held to be transformative).

### ii.      Analysis of the "Fair Use" Factors

51.     Fair use balances the two goals of copyright law: incentivizing creativity
and promoting scientific and artistic progress. *Andy Warhol Foundation for the Visual
Arts, Inc. v. Goldsmith,* 598 U.S. 508, 528 (2023).

52.     The four factors of the defense of "fair use" to copyright infringement
are "for purposes such as criticism, comment, news reporting, teaching …
scholarship, or research," are as follows:

(1)   the purpose and character of the use

(2)   the nature of the copyrighted work

(3)   the amount and substantiality of the portion used in relation
to the copyrighted work as a whole; and

(4)   the effect of the use upon the potential market for, or value
of, the copyrighted work

17 U.S.C. § 107

53.    Analysis of fair use "involves a case-by-case determination using four non-exclusive, statutorily provided factors in light of the purposes of copyright." *Harper & Row, Pub., Inc. v. Nation Enters.*, 471 U.S. 539, 549 (1985)).

54.    No one factor is dispositive, and the inquiry is not "a mechanical 'add up the factors' approach." *Cambridge Univ. Press v. Patton[1], 769* F.3d 1232, 1260 (11th Cir. 2014).

### a.    Factor 1: Purpose and Character

55.    Most important to the analysis of the first factor is the "transformative" nature of the work, i.e., "whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Acuff-Rose Music*, 510 U.S. 569, 579.

56.    This first factor asks whether the secondary use of the copyrighted work "has a further purpose or different character," i.e., if it is transformative. *Andy Warhol Found.*, 598 U.S. at 525. This inquiry is not a yes/no question; instead, it is a "matter of degree," asking not only "whether" but also "to what extent" the purpose or character of the secondary use is different. *Id.* at 528-29 ("Central question" is "whether the new work merely supersedes the objects of the original creation ('supplanting' the original").

---

[1] This case is inapposite because the copying was not done for a transformative scholarly reference or criticism purpose but to save students the costs of buying the textbook, entirely defeating the purpose of fair use and is certainly not the case here.

57.    Under the first factor, educational purpose is not dispositive and must be weighed alongside other characteristics. See *Andy Warhol Found.*, 598 U.S. at 531 n.6; and see, *Cambridge Univ. Press*, 769 F.3d at 1262–64.

58.    A use that "serve[s] as a substitute for the original or its plausible derivatives" is less likely to be fair use than one that "has a distinct purpose." *Andy Warhol Found.*, 598 U.S. at 531.

59.    The images featured as cover art do not reproduce the entire paintings. The book covers preproduced are close to the size of the original paperbacks published, but the size of the image reproduced isn't a negative factor. See, e.g., *Hofheinz v. A & E Television Networks, Inc.*, 146 F.Supp.2d 442, 446-47 (SDNY 2001) (Unauthorized inclusion of copyrighted film clips in actor Peter Graves' biographical program made for broadcast on A&E was a protected fair use because the biography, despite not having been made for a scholarly purpose, but as a commercial television program, "was not shown to recreate the creative expression reposing in plaintiff's [copyrighted] film, [but] for the transformative purpose of enabling the viewer to understand the actor's modest beginnings in the film business.").

60.    Despite the fact that the Book made a small profit, and is thus a commercial venture, monetary gain does not prohibit a finding of fair use because "nearly all of the illustrative uses listed in the preamble paragraph of § 107 … are generally conducted for profit …" *Acuff-Rose Music*, 510 U.S. at 584).

61.    The courts focus on whether the purpose of the use was to exploit the copyrighted material without paying the customary price. See, *Harper*, 471 U.S. at

*Frazetta Productions, LLC v. Vanguard Productions, LLC at al.*
*Case No. 8:22-CV-00581 WFJ-AEP*

562.   The court in *Harper* found that The Nation's stated purpose was to scoop the forthcoming hardcover and Time abstracts, and as such "The Nation's use had not merely the incidental effect but the intended purpose of supplanting the copyright holder's commercially valuable right of first publication." *Id.*, at 562 (citing *Meredith Corp. v. Harper & Row, Publishers, Inc.*, 378 F.Supp. 686, 690 (SDNY) (purpose of text was to compete with original), aff'd, 500 F.2d 1221 (CA2 1974).

62.   Additionally, the *Harper* court found that The Nation knowingly exploited a purloined manuscript in noting that "relevant to the "character" of the use is "the propriety of the defendant's conduct: *Harper*, at 562 (citing 3 Nimmer § 13.05[A], at 13-72). "Fair use presupposes 'good faith' and 'fair dealing.'" *Harper*, at 562-63 (quoting *Time Inc. v. Bernard Geis Associates*, 293 F.Supp. 130, 146 (SDNY 1968) (citation omitted). That is absolutely **not** the case here, as the prior two editions of the Book contained several book covers featuring Frazetta art.

### b.    Factor 2: Nature of Plaintiffs' Work

63.   The nature of the copyrighted work provided in 17 U.S.C. § 107 (2) requires the court consider "the protection of the reasonable expectations of one who engages in the kinds of creation/authorship that the copyright seeks to encourage." *Acuff-Rose Music*, 510 U.S. at 586 ("[C]reative expression for public dissemination falls within the core of the copyright's protective purposes.").

64.   However, if "the creative work was being used for the same decorative purpose as the original," then there is no transformative purpose, and the fair use

defense will not apply. See, *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70 (2d
Cir. 1997).

65.    The second factor "calls for recognition that some works are closer to
the core of intended copyright protection than others, with the consequence that fair
use is more difficult to establish when the former works are copied." *Campbell*, 510
U.S. at 586. However, Frank Frazetta's *Dearth Dealer* images were created
specifically for the novels and Frank Frazetta would not have painted them but for
being commissioned to create the images for book cover art.

66.    When the creative work of art is found to have been used for a
transformative purpose, the second factor is accorded a limited weight because it is of
limited usefulness when the purpose of the use is to emphasize the images' historical
rather than creative value, as is the case for the Book, as the reproduction of the
images in the context of book covers in the exact same form as originally published
constitutes the transformative purpose of demonstrating Frank Frazetta's work as
part of his biography as an artist. See, e.g., *Acuff-Rose Music*, 510 U.S. at 586.

### c.    Factor 3: Amount and Substantiality Used

67.    Determination of fair use also depends on the amount and
substantiality of the portion of the copyrighted work reproduced in relation to the
copyrighted work as a whole. 17 U.S.C. § 107 (3), and see, *Acuff-Rose Music*, 510 U.S.
at 586 (Quantitative and qualitative aspects of the portion of the copyrighted material
taken must be examined).

68.    "[C]opying the entirety of a work is sometimes necessary to make a fair
use of the image," thus "the extent of permissible copying varies with the purpose
and character of the use." *Acuff-Rose Music,* 510 U.S. at 586-87; and citing *Kelly,* 336
F.3d at 821 (Images used by search engine database were necessarily copied in their
entirety for the purpose of recognition); and see, *Nunez v. Caribbean Int'l News Corp.*,
235 F.3d 18, 24 (1st Cir. 2000) (Copying any less than the entire image would have
made the picture useless to the story).

69.    This factor weighs less when applied to certain visual works "where all
or most of the work often must be used in order to preserve any meaning at all," as
compared to "a work such as a text or musical composition, where bits and pieces
can be excerpted without losing all value." *Katz v. Google, Inc.*, 802 F.3d 1178, 1183–
84 (11th Cir. 2015) (citation omitted).

### d.    Factor 4: Effect on Potential Market Value

70.    Determination of the "effect of the use upon the potential market for, or
value of, the copyrighted work" under 17 U.S.C. § 107 (4) is made under a two-part
inquiry: (i) the market harm caused by the infringement and (ii) whether widespread
use of the protected material will adversely affect the potential market for that
copyrighted work. *Harper*, 471 U.S. at 568; *Am. Geophysical Union v. Texaco, Inc.*, 60
F.3d 913, 929 (2d Cir. 1994) (Impact of unauthorized use on potential licensing
revenues copyright holders are generally entitled to as compensation for licensing use
of the copyrighted work is a proper consideration when assessing the fourth factor).

71.    It is not a foregone conclusion in all infringement cases that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use, because this would consistently result in the copyright holder's favor, completely negating the purpose of the fourth fair use factor. *Texaco*, 60 F.3d at 930, n. 17).

72.    The final factor is a two-part inquiry into: "(1) the extent of the market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market." *Cambridge Univ. Press*, 769 F.3d at 1275 (quotations omitted).

73.    Courts ask whether the secondary use, "if everybody did it" would cause substantial economic harm, reducing the incentive to create. *Id.* at 1276. The market effects factor is related to the purpose and character inquiry. The less transformative the use, the more likely it "will serve as a substitute for the original or its plausible derivatives, shrinking the protected market opportunities of the copyrighted work." *Andy Warhol Found.*, 598 U.S. at 531 (quotation omitted).

74.    Many people are unaware of the fact that *Death Dealer II* and *Death Dealer V* were created specifically for use as book cover art. Weighing "the benefit the public will derive if the use is permitted" against "the personal gain the copyright owner will receive if the use is denied," Plaintiff suffers no harm, as no one is collecting prints of book covers as merchandise or posters; Plaintiff has shown no such type harm has occurred, and there is no evidence showed that Defendants'

reproduction of the two images in the context of out-of-print book covers might

possibly impact or impair Plaintiff's primary market, the sale of the poster images.

### iii.    Consideration of All Fair Use Factors

75.    As to the first factor, the purpose of "*Frazetta Book Cover Art - Definitive

Reference*" is a biographical retrospective of Frazetta's art commissioned for use on

the covers of books. All of the images are of the entire book covers, presented as

historic artifacts using smaller versions of the now non-existent original Frazetta

paintings.

76.    The Book contains numerous pages of text and graphics, captions with

descriptions, commentary, historical information, and quotes. The Book's purpose

clearly meets the criteria enumerated as fair use factors in 17 U.S.C. § 107 as a

biographic and reference resource, and it is the only one of its kind.

77.    The second factor weighs in Defendants' favor, as the reproduction of

the book cover images was not used for the same decorative purpose as the original,

but as historical artifacts constituting a transformative purpose. The second factor is

accorded limited weight due to the Book's purpose and use of a cropped version of

the original painting on book covers, emphasizing the original's historical rather than

creative value.

78.    The fourth factor, the effect on potential market value of sales of prints

of Plaintiffs' images or licensing of images of the original, weighs in Defendants'

favor, as Plaintiffs' potential market is not affected. The Book is a reference work and

does not compete with the poster market.

*Frazetta Productions, LLC v. Vanguard Productions, LLC at al.*
*Case No. 8:22-CV-00581 WFJ-AEP*

79.    Additionally, the Book is the only one of its kind – there are no other reference works focusing on out-of-print book covers featuring Frank Frazetta art that exists nowhere else. Plaintiff sells art prints of later-created versions. The Book is a reference work that reproduces non-existent original versions, they do not substitute for, compete with, or impair Plaintiffs' ability to license images of any version of the allegedly copyrighted images.

80.    Weighed together, the Book meets the criteria of all four fair use factors, even if Plaintiff's images prove to have been properly registered.

## IV.    CONCLUSION

FOR THE FOREGOING REASONS, Defendants respectfully request the court issue their Order granting summary judgment in Defendants' favor, finding no copyright infringement and for an award of costs and attorney's fees as the prevailing party pursuant to 17 U.S.C. § 505.

Dated: MARCH 31, 2025

Respectfully submitted,

LEIGH M. WILLIAMS LAW OFFICE, PLLC

/s/:    *Leigh Williams*
_____
Leigh M. Williams, Esq.
Florida Bar No. 624543
1701 W. Kansas Ave., Midland, Texas 79701
mcmillan.esq@gmail.com
leigh@williamslegal.org
Tel. 432 901-2141
*Attorney for Defendants*