UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRAZETTA PROPERTIES, LLC,

*Plaintiff*,

v.

VANGUARD PRODUCTIONS, LLC,
and JESSE DAVID SPURLOCK,

    *Defendants*.

_____/

CASE NO. 8:22-cv-00581-WFJ-AEP

## AFFIDAVIT OF J. DAVID SPURLOCK

I, J. DAVID SPURLOCK, individually and as sole proprietor of VANGUARD PRODUCTIONS, LLC ("VANGUARD"), do hereby depose and state as follows:

1. The statements contained in this affidavit are made from personal knowledge.

**The BOOK**

2. I am the author of VANGUARD's 2022 publication "*Frazetta Book Cover Art - Definitive Reference™*" (the "Book"), the third edition of the *Frazetta Definitive Reference*, a reference work cataloguing all 159 book covers for which Frank Frazetta was commissioned to create cover art, including 27 images reproduced in books featuring Frank Frazetta, his art, or his illustrations, a few of which were previously published in ads only, for a total of 186 images.

3. As the late 1980s/early 1990s series of *Death Dealer* books published by TOR Books featured then-new covers, not the earlier original (circa 1973) "*Death Dealer*" painting (the cover art for "*Flashing Swords #2*"), the title numbers of the *Death Dealer* paintings are 1 digit higher than the *Death Dealer* volume numbers in the series of novels. For example,

> *Death Dealer II* is featured on the cover of "*Prisoner of the Horned Helmet,*" Book I, published February 1988
>
> *Death Dealer III* is featured on the cover of "*Lords of Destruction,*" Book II, published January 1989
>
> *Death Dealer IV* is featured on the cover of "*Tooth and Claw,*" Book III, published November 1989; and
>
> *Death Dealer V* is featured on the cover of "*Plague of Knives,*" Book IV, published June 1990

4. The book covers reproduced in VANGUARD's Book are true and correct reproductions of the historic artifact book covers originally published by TOR Books in 1988 and 1990.

5. Plaintiff's allegedly copyrighted image entitled "*Death Dealer II*" **is NOT the image** reproduced in VANGUARD's Book. (See, comparing Plaintiff's Deposit Copy [DIN 175-1, pp. 1-2] to the *Death Dealer II* cover art reproduced in VANGUARD's Book [DIN 67-1, p. 68].

6. A side-by-side comparison of Plaintiff's *Death Dealer II* Deposit Copy [DIN 175-1, pp. 1-2] with the Book's *Death Dealer II* original cover art [DIN 67-1, p. 68] shows that they aren't the same paintings.

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
Case No. 8:22-cv-00581-WFJ-AEP

7. Plaintiff's allegedly copyrighted image entitled "*Death Dealer V*" **is NOT the image** reproduced in VANGUARD's Book. (See, Ex. 4, comparing Plaintiff's Deposit Copy [DIN 175-1, pp. 5-6] to the *Death Dealer V* cover art reproduced in VANGUARD's Book [DIN 67-1, p.71]).

8. A side-by-side comparison of Plaintiff's image [DIN 175-1, pp. 5-6] to the *Death Dealer V* cover art reproduced in VANGUARD's Book [DIN 67-1, p.71]) shows that they are clearly not the same paintings.

**The Frazetta Trademark and Endorsement Agreement**

9. The *Definitive Reference* books arose from a 2010 Settlement Agreement resolving litigation between Frank Frazetta, myself, and my publishing company, dba Vanguard Productions, concerning the 2008 publication of the first *Definitive Reference*.

10. Suit was resolved at mediation, where the attorneys for the parties negotiated the terms and conditions of settlement disposing of the litigation.

11. Frank Frazetta, and I, individually and for my dba VANGUARD PRODUCTIONS, entered into the agreement known as the "2010 SETTLEMENT AGREEMENT," containing two incorporated sub-agreements. [DIN 87-2, 2010 SETTLEMENT AGREEMENT and sub-parts].

12. Part B of the 2010 SETTLEMENT AGREEMENT, entitled "FRAZETTA ENDORSEMENT AND TRADEMARK LICENSE AGREEMENT" ("Endorsement

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
Case No. 8:22-cv-00581-WFJ-AEP

Agreement") [DIN 87-2, pp. 17-23], acknowledged Ellie Frazetta's signed 2000 contract with the original primary editor J. A. Bond to publish the book [DIN 87-1, p. 22], and in recognition of Frank Frazetta's prior endorsement of the "*Definitive Reference*" [DIN 87-1, p. 28], agreed that VANGUARD PRODUCTIONS could advertise the book as endorsed by Frank Frazetta.

13. The attorneys who represented Frank Frazetta represented the interests of FRAZETTA PROPERTIES, LLC ("FRAZETTA PROPERTIES") (created to hold Frank Frazetta's tangible and intangible assets), which entity was to be responsible to carry out the publishing duties for Frank Frazetta under sub-parts A and B of the 2010 Settlement Agreement. FRAZETTA PROPERTIES' attorneys diligently negotiated FRAZETTA PROPERTIES' desired terms and conditions and closely advised FRAZETTA PROPERTIES throughout the process of negotiating and drafting the Endorsement Agreement's language and terms.

14. The Agreement was not entered into with the previous primary editor James A. Bond. Frank Frazetta was represented by legal counsel, who negotiated the terms and language of the Agreement with Defendants at a face-to-face meeting.

15. The Endorsement Agreement provided, inter alia, for publication of two volumes of sketchbooks of drawings done by Frank Frazetta throughout his life, four volumes of public domain material, and the *Definitive Reference* book, including future editions, specifically granting VANGUARD "*the right to update,*

<u>*revise text, replace images, re-design and publish this FRAZETTA Book as Licensee sees fit*</u>." [DIN 87-2, p. 18].

16. The language of this broadly written proviso was agreed to by FRAZETTA PROPERTIES, whose manager at the time, Rob Pistella, was present during the entire time negotiation and drafting of the 2010 Settlement Agreement and its sub-parts.

17. In 2010, Frank Frazetta's adult children, with the exception of Frank Frazetta, Jr., had no involvement with Frank Frazetta's business dealings, but having been made members of FRAZETTA PROPERTIES by Frank Frazetta, they signed the Endorsement Agreement for FRAZETTA PROPERTIES, because manager Rob Pistella was not authorized to execute the settlement agreements.

18. The current members of FRAZETTA PROPERTIES, comprised of Frank Frazetta's adult children Holly Frazetta, Heidi Frazetta, and William Frazetta, were not present at mediation or settlement negotiations, but were advised of the facts of the litigation and of the parties' intent concerning the terms, language, and purpose of the Endorsement Agreement.

19. Frank Frazetta specifically desired VANGUARD's publication of a reference work cataloguing his images according to the preferences specified during the creation of the original "*Definitive Reference*" by Frank Frazetta's manager (and wife), Ellie Frazetta, who was closely involved with the drafting of the text

accompanying the images [DIN 87-1, p. 27] and instructed VANGUARD as to the permissible size of an image for royalty-free "fair use" status. [DIN 87-2, pp. 17].

20. Frank and Ellie Frazetta desired that VANGUARD publish the *Definitive Reference* and purposely granted broad authority to "*update, revise text, replace images, re-design and publish this FRAZETTA Book as Licensee sees fit*" because I am an expert on the life and artwork of Frank Frazetta, and had worked closely with the Frazettas for many years on several projects, and they trusted me to provide accurate information and VANGUARD to maintain quality control and publishing a consistently professional and aesthetically pleasing book design.

21. The reason for publishing a definitive reference work was to provide an accurate listing of all of Frank Frazetta's works with insightful data and commentary, rather than by an amateur or fan of Frank Frazetta's. It is common for enthusiastic fans and inexperienced small publishers to compile and publish "checklists" or "indexes" cataloguing the output of popular science-fiction and/or comics artists, often with very poor-quality production standards. Frank and Ellie wanted to preserve Frank's legacy as an artist who popularized the fantasy genre of art and had tremendous impact on the style of an entire generation of upcoming artists and illustrators.

22. Frank Frazetta, Jr. lives on the Frazetta family property and was involved with the Frank Frazetta Museum and Frank Frazetta's business dealings prior to

Frank Frazetta's passing in late 2010 and is the only member of FRAZETTA PROPERTIES familiar with the development of the *Definitive Reference*. and his deposition was taken concerning the facts of the development of the Book and use of much of the Book's contents as content on the Frank Frazetta Museum website.

**The 2015 Dark Horse Letter**

23. The 2015 letter to Dark Horse, drafted by FRAZETTA PROPERTIES member William Frazetta and J. David Spurlock, was intended to be sent to Dark Horse publishers and to my knowledge, it was sent. The wording of the letter was never disputed by any other member of Frazetta Properties.

24. Vanguard's latest edition of the Book now contains all of Frank Frazetta's book cover art not reproduced in the prior *Definitive Reference* editions, finally rendering the *Definitive Reference* truly definitive, as intended. To hold that Defendants are now prohibited from reproducing Frank Frazetta's works in the context of out-of-print book covers in a reference work is totally at cross-purposes with the parties' 2010 Agreement to publish a definitive reference source for Frank Frazetta's work.

25. There is no reason to keep printing the same version of a reference work. To make the reference profitable, the Agreement permitted Defendants broad permission to revise text, replace images, and re-design the Book. All three

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
Case No. 8:22-cv-00581-WFJ-AEP

editions have "*Frazetta*" in large type at the top of the Books' covers and "*Definitive Reference*" placed at the bottom of the covers.

**Death Dealer II, Death Dealer V, and Their Derivative Versions**

26.     Plaintiff's alleged original *Death Dealer V* image differs significantly from the *Death Dealer V* image reproduced in *Frazetta Definitive Reference*. (Compare the Complaint [DIN 1, p. 12] to VANGUARD's Book [DIN 67-1, p. 71]; and see, Affidavit of J.D. SPURLOCK [DIN 87] describing the differences in the parties' *Death Dealer II* [DIN 87-4] and *Death Dealer V* [DIN 87-5]; and see, Aff. J.D. SPURLOCK [DIN 95].

27.     Plaintiff's *Death Dealer II* [DIN 1, p. 12] has a distinctly brighter, more saturated chroma than the original *Death Dealer II* reproduced as book cover art in the Book. [DIN 87-4 & DIN 67-1, p. 71)].

28.     Plaintiff's *Death Dealer V* is "night and day" different from Defendants' reproduction - the image is much, much brighter and has numerous additional details in the background and foreground, including: the *Death Dealer* character's dominant leg is depicted at a different angle; he wears less and different dorsal plate armor; he has a larger head and longer left arm; he isn't wearing an archer's bowguard on his wrist; he is standing taller on the ramparts; his kusarigama chain is now gold; background color has been added between his legs; the falling attacker has been given a face; and a middle attacker has either disappeared or

*Frazetta Properties, LLC, et al. v. Vanguard Productions, LLC & Spurlock*
Case No. 8:22-cv-00581-WFJ-AEP

gained a spiked helmet à la German Pickelhaube or a Mongolian Rmog (Compare [DIN 1, p. 12] to [DIN 67-1, p. 71 and DIN 87-5]); and see [DIN 95] (Aff. SPURLOCK).

I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE READ THE ABOVE STATEMENTS, AND THAT THE FOREGOING ARE TRUE AND CORRECT.

Executed on this 31st day of March, 2025.

/s/: _____
J. DAVID SPURLOCK
Individually, and as sole member of
VANGUARD PRODUCTIONS, LLC