```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

FRAZETTA PROPERTIES, LLC,    )
                             )   8:22-cv-581-WFJ-AEP
        PLAINTIFF,           )   Tampa
                             )   August 14, 2024
        v.                   )   12:56 p.m.
                             )
VANGUARD PRODUCTIONS, LLC,   )
ET AL.,                      )
                             )
        DEFENDANTS.          )

        TRANSCRIPT OF TELEPHONIC MOTION HEARING
          BEFORE THE HONORABLE WILLIAM F. JUNG
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:
    MR. JACK WILLIAM MERRITT
    Merritt Law, PA
    690 South Tamiami Trail
    Osprey, FL 34229

For the Defendant:
    MS. LEIGH MCMILLAN WILLIAMS
    Leigh M. Williams Law Office, PLLC
    1701 West Kansas Avenue
    Midland, TX 79701-5909




Court Reporter:      Tracey Aurelio, CRR, RMR, RDR
                     Federal Official Court Reporter
                     801 N. Florida Avenue, 15th Floor
                     Tampa, Florida 33602
                     (813) 301-5448

        Proceedings recorded by mechanical stenography,
transcript produced by computer.
```

```
 1  _____
 2          (Proceedings commenced at 12:56 p.m.)
 3          THE COURT:  This is Judge Jung.  Good afternoon.  We
 4  are here on the Frazetta case, which is 22-cv-581, Frazetta
 5  Properties v. Vanguard, et al.
 6          May I have appearances first for the plaintiff?
 7          MR. MERRITT:  Good afternoon, Your Honor.  May it
 8  please the Court.  My name is Jack Merritt, and I represent
 9  the plaintiff.
10          THE COURT:  Thank you.
11          And how about defense?
12          MS. WILLIAMS:  Good afternoon, Your Honor.  Leigh
13  Williams for Defendants Vanguard Productions, LLC, and David
14  Spurlock.
15          THE COURT:  Let me just talk for a minute, talk to
16  Mr. Merritt first.  You know, as Frankfurter once said, we
17  shouldn't criticize wisdom just because it comes late.
18          Here is what is bothering me, Mr. Merritt.  This
19  document at 95-4, which is the January 13, 2015, whatever you
20  want to call it, letter, I'm not -- I'm quite certain I never
21  really focused on that before, and I'm not sure we even
22  addressed it.
23          So putting aside that, yes, there's been an order and
24  now we are on a second order for rehearing and all that, I
25  mean, did I just skip over that?  I don't really think it was
```

```
 1  very brightly highlighted by the defense at all, but it
 2  bothers me.  So let's hear from you first, because obviously I
 3  set this hearing because I was concerned about it.
 4          This was in response to Frank Frazetta, Jr., I guess
 5  he's the brother or something, he was trying to set up his own
 6  store or something.  So what's your take on that, Mr. Merritt,
 7  and then we will hear from Ms. Williams?
 8          MR. MERRITT:  Thank you, Your Honor.  The letter
 9  itself was in response to a criminal lawsuit by Mr. Spurlock,
10  and I presume Vanguard as well in connection to a publication
11  by Frank Frazetta, Jr., as I believe memoirs of his father.
12  Ms. Spurlock is very litigious.  And my clients were victims
13  frankly in the cases.  And it's my understanding that there
14  are fees in the New York case which involve Mr. Spurlock for
15  in excess of $60 million.  And I'm going to say that because I
16  do not have proof of that, Your Honor.  I know it was a large
17  amount of money.
18          That document itself, by itself is meaningless in
19  this context.  It was designed and it was agreed to by the
20  siblings to send that letter to prevent litigation by
21  Mr. Spurlock.  That letter does not lock them into anything.
22  If that were something that was binding, I'm certain it would
23  have been drafted like an agreement as other documents between
24  Mr. Spurlock and the Frazetta family as well as Frazetta
25  Properties, but it wasn't.  It was basically please stop it,
```

```
 1  Frank.  That's essentially what it was.
 2          That document has never been ruled on as even being a
 3  contract, and yet it is being forwarded as same.  The letter
 4  technically isn't a contract.  And we brought that up in the
 5  state court case.  And that agreement in connection with this
 6  was signed only by Frank Frazetta, Jr.  None of the other
 7  siblings -- to my recollection none of the other siblings
 8  signed it.
 9          THE COURT:  Which agreement?  I'm looking at the one
10  in January of 2015.
11          MR. MERRITT:  I'm so sorry to ask you this.  I don't
12  know what that is.
13          THE COURT:  So there is a letter.  It was attached to
14  the rebuttal affidavit by the defense at 95.
15          MR. MERRITT:  Oh, I'm sorry.
16          THE COURT:  It's signed January 13, 2015, signed by
17  the three managers, claim to be the three managers of Frazetta
18  Properties, LLC, and signed by Spurlock.
19          MR. MERRITT:  Your Honor, I apologize.  I do
20  understand what that is.  I believe that was the letter that
21  is purported -- that was highlighted basically in the second
22  motion to reconsider.  And that document, I believe, is the
23  15th -- that document, Your Honor, is not a contract.  It is a
24  plea to Frank, Jr., to stop doing it.
25          Moreover, they could have brought counterclaims for a
```

1  determination by the Court as to whether that document was an
2  agreement. And if it were an agreement, rather, then they
3  could argue it before Your Honor to make a determination as to
4  whether that actually is an agreement. But it's not an
5  agreement. It's a letter. So, Your Honor, that's not how
6  it's characterized in the second motion for reconsideration.
7  It has nothing in it stating that it's an agreement amongst
8  the parties.
9         And Your Honor, in order to be binding, presumably it
10 would have to have been. This is why they did not seek the
11 Court's ruling with regard to the termination because it's not
12 an agreement. It is basically a plea to Junior to go away
13 because they didn't want to be sued again by Junior.
14        I'm talking about there was an agreement that
15 resulted from that document. If that were the sole agreement
16 among the parties in regard to this, then they wouldn't have
17 needed another agreement, but that's not what occurred. This
18 was a letter, this was a request that he stop publishing the
19 book.
20        Mr. Spurlock in a subsequent agreement with regard to
21 this, the document was signed by only Frank, Jr, It is not
22 signed by the siblings. And in terms of that letter being an
23 agreement, it is mischaracterized as being any kind of
24 agreement that would be enforceable by anyone.
25        As I said before, defendants could have brought

```
 1  counterclaims.  They are not bringing it up in that context.
 2  They were bringing it up saying this is an agreement.
 3          THE COURT:  They are saying this shows the fact that
 4  it's a license.  That's what they're saying, because your
 5  client in this letter say there is a license, and they signed
 6  it.  That's what they're saying.
 7          MR. MERRITT:  They are saying that, but that letter,
 8  it is an agreement.  As I said, Your Honor, they could have --
 9  I'm so sorry, Your Honor.  First of all, I understand what
10  you're saying.  And I don't mean to overlook that.  I
11  apologize.
12          THE COURT:  Yeah.  They haven't sued on it in these
13  nine years.  They are saying Spurlock said there was a
14  license.  And here, you know, contested in the light most
15  favorable to the non-movant, this supports the contention.
16          Any other comments on this, Mr. Merritt?
17          MR. MERRITT:  Solely on this letter, Your Honor?
18          THE COURT:  I don't feel like I -- well, I don't want
19  to blame anybody, but I don't feel like I aired this out when
20  I said -- we did say in the order that the two, whatever you
21  want to call it, the two-book contract didn't extend to this
22  cover art book, but I did not address this, and I just
23  overlooked it.  I don't think it was particularly highlighted
24  in that affidavit, if at all, but it was attached at 95-4.
25          So anyway, tell me any other thoughts you have,
```

```
 1  Mr. Merritt, and then we will hear from Ms. Williams.
 2          MR. MERRITT:  Your Honor, the other thought that we
 3  have regarding that letter -- and I won't make any other
 4  arguments -- is that if you look at it closely, it is
 5  basically essentially not a contract.  There's no meeting of
 6  the mind there.  It is basically a plea to Junior to stop
 7  publishing the book.  And why he couldn't publish a book on
 8  his own, I don't know.  I don't know whether he got an
 9  attorney or not.  I had no involvement with regard to that.
10  There has been no agreement on it because the defendants did
11  not make any request that the Court review it.  It was brought
12  up at a very late date.
13          Thank you, Your Honor.
14          THE COURT:  Thank you, Mr. Merritt.
15          Ms. Williams, do I have that right?  It's your
16  contention -- putting aside contract or no contract, it is
17  your contention this letter is probably about the last thing
18  that's between the parties.  It shows the contested issue of
19  fact on the license, on the issue of license?
20          MS. WILLIAMS:  Yes, Your Honor.  The plaintiffs never
21  contended that this was a standalone agreement.  The motion,
22  the renewed motion for reconsideration consistently refers to
23  it as an acknowledgment letter of the parties' understanding
24  of the right of Vanguard to publish copyrighted work from
25  Frazetta Properties.
```

1     Now, Mr. Merritt has kind of repeatedly indicated
2  that the parties were litigious, they were after each other,
3  but we submitted affidavits by Mr. Spurlock saying that he had
4  a long and very cordial relationship with the late Frank
5  Frazetta and his wife Ellie who managed Frank's business. And
6  for the most part, Mr. Spurlock and Vanguard's relationship
7  with the siblings who make up Frazetta Properties has been
8  cordial as well for many years.
9     And this 2015 letter is evidence of that, that they
10 all were of one mind, that Vanguard did have the ability and
11 the authority granted by Frazetta Properties to publish
12 copyrighted works of Frank Frazetta. And that's all we are
13 saying. And we are saying that's a contested issue of fact,
14 and that at least it would be sufficient to defeat Frazetta
15 Properties's motion for summary judgment. And what would have
16 been more appropriate in our eyes was at least a trial or an
17 evidentiary hearing.
18     And my client did find his 2015 letter about the time
19 that he sent it to me for inclusion as Exhibit 95-4. So I
20 apologize for producing that late. But what bothered me and
21 what's been the contention of Vanguard and Spurlock all along
22 is the inherent lack of information, lack of disclosure. I
23 want to stop short of saying dishonesty, but there have been
24 so many misstatements of fact by Frazetta Properties.
25     THE COURT: Let's don't start pointing fingers.

1           So any other additional thoughts on this?

2           MS. WILLIAMS: I'm not trying to hair pull. What I'm
3  trying to say is that at any one time there has been more
4  evidence than what they have alleged, and that is problematic
5  I think to any Court. It certainly is problematic to my
6  client that they have to keep searching around and finding
7  things and bringing things forward that again dispute the very
8  basis of bringing this claim.

9           Not mentioned also is the fact that now that they are
10 finally being forced to bring forth the application packet for
11 the United States Copyright Office, it is showing that, yes,
12 indeed, they filed as originals the derivative copies. And
13 that's another issue that when they finally get the records
14 together -- again, that would be an additional reason to ask
15 for reconsideration.

16          THE COURT: All right. So on this piece, so here is
17 your ruling. I just didn't focus on this as I should have.
18 So I apologize to both lawyers, especially Mr. Merritt. I
19 think that whether it's under -- this is your ruling here.
20 I'm not going to put it in a big, long order.

21          Whether under Rule 60B or 59B, I think a justice of
22 the cause requires me to receive from and withdraw the prior
23 summary judgment ruling on license where I said there was no
24 license. That remains to be proven in this case. So the
25 issue of license, the prior agreement, whatever you want to

```
 1  call it, I withdraw that summary judgment ruling.  And that's
 2  open for discussion in trial.
 3          Now, I will let the parties -- so what I need y'all
 4  to do is confer.  And if you agree, we will have an
 5  evidentiary hearing that's set at your convenience.  If you
 6  disagree, we will have a jury trial, and I will work with you
 7  on calendaring that.  So that's your homework for Mr. Merritt
 8  and Ms. Williams.  We are going to have an evidentiary hearing
 9  or we are going to have a jury trial.  If anybody disagrees,
10  then it's a jury trial, of course, because I think you have
11  that right.  I think it has been prayed for.  If it hasn't,
12  it's been waived, but y'all let me know.  File what you want
13  and then file a potential calendar.  Obviously an evidentiary
14  hearing is a lot easier scheduling than a jury trial.  But
15  that's my ruling.
16          I'm sorry.  I just looked at this and I thought, oh,
17  my goodness, I didn't focus on that.  And it may or may not be
18  a contract, but it's signed by all the relevant parties.  And
19  it says, okay, it provides a sufficient contest to support the
20  defendant's contention that there was a license or a prior
21  agreement.
22          All right.  So why don't y'all put your heads
23  together.  Tell me what you want.  Let me know in 21 days.
24          MS. WILLIAMS:  Your Honor?
25          THE COURT:  Yes.
```

1    MS. WILLIAMS:  I'm sorry to interrupt.  Neither party
2  did ask for trial by jury, so that was waived.  For this
3  evidentiary hearing, when the application packets as to the
4  two purported copyrights of the works, I would ask for that
5  also to be heard in an evidentiary hearing.
6    THE COURT:  File a request for that because I don't
7  understand the facts.
8    MS. WILLIAMS:  All right.
9    MR. MERRITT:  Will we be permitted to take
10 depositions if we do not agree?  And we may agree, but if we
11 do not agree, Your Honor, will we be permitted to take
12 depositions without regard to another evidentiary hearing?
13   THE COURT:  Why don't y'all see if you can agree on
14 that.  And I know these parties have been fighting, and they
15 are going to spend way more in attorneys' fees.  I read the
16 Sarasota docket this morning.  They are going to spend way
17 more in legal fees than this case is worth.  In 21 days tell
18 me what you want.  And if somebody wants depos or second
19 issues, tell me.  I will look at your joint or your separate
20 filing due in 21 days.  So please accept my apology for not
21 sniffing this out earlier.
22       Okay, Counsel?
23   MR. MERRITT:  Thank you.
24   MS. WILLIAMS:  Thank you.
25      (Proceedings concluded at 1:14 p.m.)

```
 1  UNITED STATES DISTRICT COURT   )
                                   )
 2  MIDDLE DISTRICT OF FLORIDA     )

 3
                    REPORTER TRANSCRIPT CERTIFICATE
 4
         I, Tracey Aurelio, Official Court Reporter for the United
 5  States District Court, Middle District of Florida, certify,
    pursuant to Section 753, Title 28, United States Code, that
 6  the foregoing is a true and correct transcription of the
    stenographic notes taken by the undersigned in the
 7  above-entitled matter (Pages 1 through 12 inclusive) and that
    the transcript page format is in conformance with the
 8  regulations of the Judicial Conference of the United States of
    America.
 9
10                                  /s    Tracey Aurelio
                                    _____
11                                  Tracey Aurelio, RMR, RDR, CRR
                                    Official Court Reporter
12                                  United States District Court
                                    Middle District of Florida
13                                  Tampa Division
                                    Date:  April 9, 2025
14
15
16
17
18
19
20
21
22
23
24
25
```